**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 25-90138** |
| **Geden Holdings, Ltd.** [1] | § | |
| | § | **Chapter 15** |
| Debtor in a Foreign Proceeding | § | |

**DECLARATION OF FOREIGN REPRESENTATIVE PURSUANT TO 11 U.S.C. § 1515
AND RULE 1007(A)(4) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
AND IN SUPPORT OF VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN
MAIN PROCEEDING, (II) RECOGNITION OF FOREIGN REPRESENTATIVE (III)
EMERGENCY PROVISIONAL RELIEF FOR ISSUANCE OF THE AUTOMATIC
STAY, AND (IV) RELATED RELIEF UNDER CHAPTER 15
OF THE BANKRUPTCY CODE**

Pursuant to 28 U.S.C. § 1746, I, Dr. Reuben Balzan, a licensed advocate in Malta with the

law firm Valletta Legal, hereby submits this declaration (this "Declaration") under penalty of

perjury:

1.       I am over the age of 18 and, if called upon, could testify to all matters set forth in

this Declaration based upon my own personal knowledge except for those portions specified as

being otherwise. I am making this declaration in accordance with section 1515 of title 11 of the

United States Code (the "Bankruptcy Code") and Rule 1007(a)(4) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules").

2.       Presently, I serve as the Maltese court appointed liquidator for the above-captioned

debtor, Geden Holdings, Ltd. (the "Debtor" or "Geden"), organized under the laws of Malta subject

to a foreign liquidation proceeding (the "Malta Proceeding") before the First Hall of the Civil

Court (the "Maltese Court").  I have served in my current capacity as the liquidator of the Debtor

---

[1] Geden Holdings, Ltd. was ordered to be wound up by the Maltese Court (the "Windup Order") a copy of the Maltese order is attached hereto as Exhibit "A".  My  office, Valletta Legal, is located at No. 4 St Andrews Street, Valletta VLT 1341, Malta, and is Geden's and my service address in this Chapter 15 Case.

since December 4, 2023.  A copy of the Maltese Court order ordering my appointment (the "Balzan Appointment Order") is attached hereto as **Exhibit "B."[2]** I am the foreign representative (the "Foreign Representative") of the Debtor and am authorized by the Maltese Court to commence this chapter 15 case (the "Chapter 15 Case"). A copy of the Maltese Court order (the "Chapter 15 Proceeding Order") authorizing me to proceed in the United States is attached hereto as **Exhibit "C."** The Chapter 15 Proceeding Order granted the motion I submitted to the Maltese Court on October 9, 2024 requesting that I be authorized to file a petition for recognition under chapter 15 of the Bankruptcy Code in the United States.

3.      I submit this Declaration in support of: (i) the official form chapter 15 petition for the Debtor; (ii) *the Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative (III) Emergency Provisional Relief For Issuance of the Automatic Stay, and (IV) Other First Day Relief Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Verified Petition"); (iii) *Debtor's Emergency for Entry of an Order (I) Granting Emergency Provisional Relief for Issuance of the Automatic Stay, and (II) for Related Relief* (the "Provisional Relief Motion"); and (iv) the *Debtor's Emergency Motion for Entry of an Order (I) Scheduling Recognition Hearing and (II) Specifying Form and Manner of Service of Notice* (the "Scheduling Motion.).

4.      This Declaration is intended to provide an overview of Geden's history and its need to commence the Chapter 15 Case. Section I provides a detailed background of Geden and the

---

[2] For self-authentication purposes, it is my understanding that a certified Maltese Court Order meets the requirements of Fed. R. Evid. 902(11), (12) including, but not limited to, the requirement that the certification . . . must be signed in a manner that, if falsely made, would subject the maker to a criminal penalty in the country where the certification is signed."  *See Maltese Criminal Code*, at ch. 9, § 170.(1).

pending litigation. The remaining sections support the relief requested in the Verified Petition, issuing the automatic stay on a provisional basis, and the Scheduling Motion.

## I.    Background

5.      Geden has a long history of litigation and liquidation proceedings which raise numerous and complex questions that this Chapter 15 Case should help answer.  One issue, central to this Chapter 15 Case is that Geden has been in liquidation in Malta since 2017.  Despite the pending Maltese liquidation, Geden has been actively defending itself in litigation brought by Eclipse (defined below) since 2020 without the knowledge of the Maltese Court or a court-appointed liquidator.  Under Maltese law, once Geden entered court ordered liquidation, all authority to direct Geden was stripped from its officers and directors and such corporate authority vested with the court-appointed liquidator.

6.      Accordingly, I seek to use this Chapter 15 Case to, among other things, determine who has been controlling Geden in the Pennsylvania State Court Litigation (defined below), for what purpose Geden was being controlled, and determine whether Geden has any assets, claims, or causes of action that may be pursued in the United States.

7.      This Chapter 15 Case will assist me in executing my duties including, but not limited to, locating assets and distributing such assets among creditors *pro rata*, in my capacity as the Malta Court appointed liquidator.

   a.      The Malta Proceeding

      i.      The Corporate History of Geden and its Liquidation in Malta

8.      Geden is a company registered in Malta on October 14, 2002. *See* Windup Order, at pg. 2.  According to a declaration filed by Geden on October 14, 2016 with the Malta Business Registry, the last recorded directors of Geden were Mehmet Bulent Ergin, Memet Mat, and Ali

Tugrul Tokgoz.  Upon information and belief, as of October 14, 2018, Mehmet Emin Karamehmet ("Karamehmet") was the ultimate beneficial owner of Geden through his indirect ownership of shares/voting rights of more than twenty five percent (25%) through Buselten Finance AS (Panama).  Upon information and belief, Karamemet caused this representation to be made to the Company Business Registry of Malta.

9.     Until June 15, 2017 was controlled by Karamehmet through various holding companies and subsidiaries. According to the Windup Order, (defined in footnote 1), Geden's principal activity was

> to purchase and subscribe shares in its own name in its various subsidiary companies which operate ships in the international shipping market through the chartering of vessels which belong to them as well as by chartering vessels of third parties in order to carry oil products and other type of cargo (dry cargo); Geden also act[ed] as a treasurer of the companies within the group for which it act[ed] as a parent company and [did] this by borrowing money from banks and financial instution[s] in order to lend and finance its subsidiaries from the money it would have acquired in virtue of these loan facilities.

Windup Order, at pg. 2.

10.     Additionally, Geden was previously registered as a foreign corporation in the State of Pennsylvania.

11.     On September 16, 2016, Samsung C&T Deutschland GMBH ("Samsung Deutschland") filed application number 810/2016,[3] identified as *Samsung C&T Deutschland GMBH vs Geden Holdings Limited*, requesting the Maltese Court to declare Geden insolvent and to have Geden dissolved and wound up under Maltese law. *See* Windup Order, at pg. 2.

---

[3] The application was filed by Samsung in its capacity as a creditor of Geden pursuant to 99(2)(a) and 99(4)(b) of the Regulations (defined below). The Regulations allow the Court on application of an interested party, including an unsatisfied creditor, to dissolve and wind up a company in Malta in the event that the company is unable to pay its debts.

4

12. On June 15, 2017, Geden was found unable to pay its debts and was ordered dissolved and to be wound up under Regulations [99-163] of the Merchant Shipping (Shipping Companies – Private Organisations), Regulations, 2004 (the "<u>Regulations</u>") by order of the Maltese Court. *See* Windup Order.

      ii.     The Effect of the Windup Order Under Maltese Law and the <u>Appointment of a Liquidator</u>

13. After a winding up order has been entered, a company is deemed to have been dissolved as of the date the windup application was filed, in Geden's case this was September 16, 2016. *See* Regulations, at § 105(2). Additionally, "[o]n the appointment of a liquidator all the powers of the directors shall cease without prejudice to the right of the directors to act in accordance with the provisions of this Sub-Part in so far as authorised by the memorandum and articles." Regulations, at § 129(2).

14. Under the laws of Malta, the liquidator is appointed to act on behalf of the "winding up" company to "take into his custody or under his control all the property and all rights to which he has reasonable cause to believe the company to be entitled." Regulations, at § 109. Additionally, under Maltese law, the liquidator shall have the power:

    a.     to bring or to defend any action or other legal proceeding in the name and on behalf of the company;

    b.     to carry on the business of the company so far as may be necessary for the beneficial winding up thereof;

    c.     to pay creditors according to their ranking at law;

    d.     to make any compromise or arraignment with creditors or persons claiming to be creditors, or having or alleging themselves to have any claim, present or future, certain or contingent, ascertained or which may be due in damages against the company or whereby the company may be rendered liable, and to refer such matter to arbitration;

e.    to represent the company in all matters and to do all such things as may be necessary for winding up the affairs of the company and distributing its assets.

Regulations, at § 109.

15.    Moreover, the liquidation and the decisions of the court appointed liquidator "shall be subject to the control of the court, and any interested person may apply to the court with respect to any exercise or proposed exercise of any of those powers."  Regulations, at § 110(3).

iii.    The First Liquidator's Appointment and Resignation

16.    On June 15, 2017, Mr. Paul Darmanin (the "First Liquidator") was appointed as liquidator and obtained the rights and obligations stipulated by Regulations 107-116.

17.    To my knowledge, the First Liquidator did not receive any documents or other information from the adjudicated "dissolved and wound up" Geden.

18.    On September 12, 2018, the First Liquidator filed his application to resign (the "Application to Resign") attached hereto as **Exhibit "D",** with the Maltese Court to be relieved of his duties as the liquidator of Geden.  In the First Liquidator's application, he noted that he met with the ex-representatives of Geden in Malta.  The First Liquidator then stated in his Application to Resign "that the ex-representatives and the shareholders were not disposed to participate in the process and not even to cover the expenses."  *See* Application to Resign, at ¶ 4,5.  On September 19, 2018, the Maltese Court granted the First Liquidator's application and allowed the First Liquidator to resign.

19.    To my knowledge, after the resignation of the First Liquidator, no action was taken in the Maltese Court. However, the liquidation did not end upon the resignation of the First Liquidator.

iv.     My Appointment as the Liquidator

20.     On December 4, 2023, I was appointed by the Maltese Court (the "Liquidator")[4] as the liquidator of Geden.  It is my understanding that this appointment meets the definition of a "foreign representative" as defined in section 101(24) of the Bankruptcy Code for purposes of the Malta Proceeding.

21.     Upon my appointment as Liquidator, I learned that Geden had been actively defending itself in Pennsylvania state court (the "Pennsylvania State Court") for a number of years (described in detail below). Since Geden must be represented in legal proceedings by its liquidator under Section 110[5] of the Regulations, it is unclear who was directing Geden and for what purpose.

b.     Eclipse's History with Geden

22.     Before the Maltese liquidation was ordered, there were already creditors seeking to recover from Geden.  Specifically, Eclipse Liquidity, Inc. ("Eclipse"), has been seeking recovery on its judgement against Geden since July 28, 2017.  As detailed below, Eclipse is a creditor of Geden who filed suit in Pennsylvania State Court asserting, among other things, successor corporate liability, alter ego and fraudulent transfer. Through Eclipse's litigation, it discovered that Geden was and remains in liquidation in Malta.

23.     By way of general background with respect to Eclipse and its claims against Geden, Eclipse is a corporate entity established under the laws of the Republic of the Marshall Islands. Upon information and belief, Eclipse entered into a bareboat charter party contract that included a

---

[4] As is common in Malta, the judgement creditor Eclipse (defined below), through its insurance company, is funding the liquidation in Malta including, but not limited to, the payment of my fees and who I wish to hire as my professionals.  Eclipse, however, has stated that it does seek to recover costs of this funding from assets distributed through the Malta Proceeding.

[5] "The liquidator in a winding up by the court shall have the power, with the sanction either of the court or of any liquidation committee . . . to bring or to defend any action or other legal proceeding in the name and on behalf of the company."  Regulations, at § 110(1)(a).

4934-0709-4321, v. 13

purchase and sale agreement with one of Geden's wholly owned subsidiaries, Avor Navigation, Ltd. ("Avor"), for the purchase of the vessel named AVOR.

24.     Upon information and belief, on May 27, 2010, Geden executed a performance guaranty (the "Performance Guaranty") in favor of Eclipse guaranteeing the performance of Avor including, but not limited to, the purchase of the motor tanker AVOR, from Eclipse.

25.     Ultimately, Avor and Geden breached the contract and the Performance Guaranty, respectively, and Eclipse initiated arbitration in the United Kingdom. Eclipse first sought to recover against Avor, and on December 5, 2016, the United Kingdom arbitrator decided in Eclipse's favor.  Eclipse then sued Geden in the High Court of the United Kingdom for breach of its Performance Guaranty.  On July 28, 2017, Eclipse obtained a judgment against Geden in the High Court in the United Kingdom in the amount of $3,479,152.69.

26.     On October 2, 2017, Eclipse filed an action in Pennsylvania State Court to have its judgment against Geden recognized under Pennsylvania law.  To my knowledge, Geden defended the Pennsylvania State Court judgement recognition action.[6]  The Pennsylvania trial court recognized the judgement and the trial court's ruling was upheld by the Superior Court of Pennsylvania on December 7, 2018. *See Eclipse Liquidity*, *Inc. v. Geden Holdings, Ltd.*, 200 A.3d 507 (PA Super, 2018).

    c.     Geden's "Restructuring"[7]

27.     As described above, on June 15, 2017, the Maltese Court entered the Windup Order. The Windup Order, among other things, provides as follows:

---

[6] While I was not appointed liquidator during this time, Geden had already been adjudicated insolvent under Maltese law more than 3 months prior.

[7] I have relied on the public pleadings in Malta and of Eclipse regarding Geden's "restructuring" and any associated allegations made in the Pennsylvania State Court Action (defined below). I have not taken a position on whether the

Therefore the Court decides to uphold the requests of the plaintiff company and declare that the defendant company is not in a position to pay its debts and orders the commencement of the procedure for the dissolution and winding up of the said defendant company in terms of articles 99(2)(a) and 99(4)(b) of the Legal Notice 223/2004

Windup Order, at pg. 20.

28.    According to Eclipse's Complaint (defined below) filed in the 2020 Action (defined below) and the Abuse of Process Action (defined below), Geden transferred substantially all of its assets to an entity or entities controlled by Karamehmet's daughter Gulsun Nazli Karamehmet Williams ("Williams"), the only child of Karamehmet, for less than reasonably equivalent value.

29.    Specifically, Eclipse alleges in its Complaint (defined below) that Value Shipping, Ltd. ("Value Shipping"), an entity controlled by Geden, transferred the vessel, ADVANTAGE AWARD, to Advantage Award Shipping, LLC ("Award")[8] at some point in 2015.  Eclipse further alleges that Award is 100% owned by Advantage Tankers, LLC ("Tankers").

30.    Tankers and Award claim in their *Brief of Appellees Advantage Tankers, LLC and Advantage Award Shipping, LLC* filed in Appeal One (defined below) that these transfers were arm's length transactions made for reasonably equivalent value, as fixed by independent third-party appraisals and agreed to by the banks that had financed these vessels.

_____

facts and allegations are true, but they do raise concerns that are of interest to me as the liquidator of Geden. Additionally, Samsung asserted similar allegations against Geden as listed in the Windup Order.

Geden is insolvent because it is not in a position to pay its debts; this fact is known or ought to be known by the Directors of Geden.  Samsung Deutschland recently got to know that behind its back, various subsidiary companies of Geden sold or transferred a number of vessels in their ownership of a substantial value.

Windup Order, at p. 3.

[8] Award is a limited liability company organized under the laws of the Bahamas and is also registered and qualified as a foreign corporate entity in the Republic of the Marshall Islands.  Additionally, Award was registered as a foreign corporation in the State of Pennsylvania.

9

31.     I have significant questions regarding the transfer of substantially all of the assets of Geden and how Geden has continued to defend itself in litigation in spite of its court-ordered liquidation in Malta.  Eclipse has alleged certain claims and causes of action that raise questions regarding how the assets of Geden have been sold and distributed potentially to the detriment of creditors and contrary to the primary purpose of the Malta Proceeding.

d.     The Pending Litigation in the United States Against Geden and Procedural Posture

i.     The 2020 Action

32.     On March 6, 2020, Eclipse, as judgment creditor of Geden, filed the Original Complaint (the "Original Complaint"), attached hereto as **Exhibit "E"**, in the Pennsylvania State Court naming Geden, Tankers, and Award, as defendants (the "2020 Action").

33.     Of note, at the time the answer to the Original Complaint was filed, the Malta Proceeding was still pending and although I had not yet been appointed Geden's liquidator, the Maltese court docket does not reflect that any authority to answer on behalf of Geden or retain counsel in Pennsylvania was ever sought or granted.

34.     Among other things, the Original Complaint alleges (i) that Award and Tankers are liable to Eclipse as successor corporations of Geden; (ii) that Eclipse should be allowed to pierce the corporate veils of Tankers and Award because they have committed fraud to the detriment of Geden's creditors; and (iii) that the transfer of Geden's assets to Award is a fraudulent transfer under the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA").

35.     Ultimately, the Pennsylvania State Court granted summary judgment in favor of Tankers, Award, and Geden on all of Eclipse's counts on the following grounds: (i) Eclipse did not provide enough evidence to prove that a fraudulent transfer occurred, and (ii) that Eclipse failed

10

to join "indispensable parties" and thus the court did not have subject matter jurisdiction over the matter.  As described below, Eclipse has appealed this order.

        ii.        <u>The Abuse of Process Action</u>

36.      On or about June 27, 2023, Eclipse filed a new complaint (the "<u>Abuse of Process Complaint</u>" in the Pennsylvania State Court (the "<u>Abuse of Process Action</u>" and together with the 2020 Action, the "<u>Pennsylvania State Court Litigation</u>") naming Gulsun Nazli Karamehmet Williams and her husband, Brian Williams, as defendants, in addition to the defendant parties in the 2020 Action.

37.      The Abuse of Process Complaint references all the allegations in the Original Complaint.  In addition, the Abuse of Process Complaint asserts, among other things, that the two individual defendants, Williams and her husband, Brian Williams, along with the corporate defendants named in the 2020 Action (collectively, the "<u>AP Defendants</u>"), are liable for the alleged fraudulent transfers made by Geden.  The Abuse of Process Complaint also asserts that the AP Defendants committed the tort of abuse of process which holds accountable parties in litigation who abusively use the process of the court to accomplish results other than those for which the process was designed to accomplish (e.g. the Abuse of Process Complaint alleged that the process was used by the AP Defendants to frustrate Eclipse's discovery and delay it to the point that it was rendered useless as a tool of obtaining admissible evidence.).

        iii.        <u>The Discovery of the Malta Proceeding</u>

38.      Upon information and belief, during the pendency of the Pennsylvania State Court Litigation, Eclipse learned of the Malta Proceeding.  It is my understanding that Eclipse moved the Pennsylvania State Court to order the attorneys purporting to represent Geden to prove their

11

authority to act on behalf of Geden.  The Pennsylvania State Court stated that Eclipse's request was moot.

39.     On or about December 4, 2023, Eclipse sought the appointment of a new liquidator in Malta.  I was appointed as the liquidator of Geden by the Malta Court.

   iv. Appeal One: Eclipse Liquidity, Inc., v. Geden Holdings, LTD.; Advantage Tankers, LLC; Advantage Award Shipping, LLC ("Appeal One")

40.     Eclipse alleges that the Pennsylvania State Court erroneously dismissed the 2020 Action based on lack of subject matter jurisdiction for failure to join indispensable parties.  The Pennsylvania State Court explained that Eclipse did not seek redress against these other "defendants" that it deemed indispensable. Accordingly, the Pennsylvania State Court found that it did not have subject matter jurisdiction. Eclipse alleges that the following errors were made: (i) the court of common pleas erroneously granted *sua sponte* summary judgement dismissing Eclipse's claim against Tankers for lack of personal jurisdiction; (ii) the court, contrary to the standards governing summary judgment, shut off developing discovery probative of plaintiff's claims to allow defendants to pursue summary judgment; and (iii) the court committed reversible error in not ordering appellees' counsel to prove their authority to represent Geden.

   v. Appeal Two: Eclipse Liquidity, Inc. v. Gulsun Nazli Karamaehmet-Williams; Courtney-Bryan Williams; Geden Holdings, Ltd.: Advantage Tankers, LLC; Advantage Award Shipping, LLC ("Appeal Two" and together with Appeal One, the "Appeals")

41.     This is a separate legal action based on the common law tort of abuse of process. The Pennsylvania State Court dismissed Eclipse's second action that alleged that the AP Defendants systematically abused the discovery process within the 2020 Action.  Among other things, Eclipse asserts that the Pennsylvania State Court: (i) erroneously dismissed with prejudice

12

the abuse of process claims; (ii) did not order Geden's counsel to prove their authority to represent Geden; (iii) erroneously dismissed for lack of subject matter jurisdiction Eclipse's action for non-joinder of indispensable parties; and (iv) deprived Eclipse of its day in Court.

42.     The Appeals are set for oral argument on May 13, 2025.

      vi.     <u>The Liquidator's Participation in the Appeals</u>

43.     Upon learning that Geden was actively participating in the litigation pending in Pennsylvania without the knowledge of its liquidator, I endeavored to become involved.  First, I went to the Superior Court in Pennsylvania and attempted to appeal the Pennsylvania State Court's trial order on the 2020 Action and the Abuse of Process Action.  The Superior Court issued a show cause order stating that I was a "prevailing party" and that I was not allowed to appeal those orders. I then petitioned the Pennsylvania Supreme Court under 42 P.A. C. S. 726 to assume plenary power to decide the issue of whether I could appeal.  This petition was denied.

## II.     Appointment as the Foreign Representative, Filing of the Verified Petition, and Foreign Recognition

      a.     <u>Purpose of this Chapter 15 Case</u>

44.     As more fully set forth above, unbeknownst to me until early 2024, Geden was defending itself in a lawsuit pending in the Pennsylvania State Court along with Award and Tankers.  It is unclear at this time whether Geden has additional assets, tangible or intangible, in the United States.  The purpose of this Chapter 15 Case is to (i) stay the Appeals in order to avoid any loss of rights by Geden due to an unauthorized party acting on its behalf; (ii) determine who has been controlling Geden since it has been in liquidation in Malta since 2017; (iii) determine what, if any, assets may be in the United States; and (iv) determine whether there are any claims and causes of action to be brought in the United States.

4934-0709-4321, v. 13

45.     To my knowledge, Geden has property in the United States in the form of a retainer paid to Okin Adams Bartlett Curry, LLP held at Frost Bank in Houston, Texas.  Additionally, because of Geden's involvement in the Pennsylvania State Court Litigation, I believe it is possible that additional information and potential assets may be located in the United States.

46.     I filed the Verified Petition pursuant to sections 1504 and 1515 of the Bankruptcy Code commencing this Chapter 15 Case in Bankruptcy Court.  I believe recognition of myself as Geden's "foreign representative" and recognition of the Malta Proceeding—whether as a "foreign main proceeding" or, in the alternative, a "foreign nonmain proceeding"—will allow Debtor the ability to utilize certain portions of the Bankruptcy Code to determine (i) who has been controlling Geden since 2017, and (ii) whether there are any claims and causes of action that may be appropriate to bring in the United States.

b.     The Foreign Representative

47.     As stated in Section 1(a)(iv) of this Declaration, on December 4, 2023, the Maltese Court entered an order appointing me as the liquidator of Geden.  It is my understanding that for these reasons, I satisfy the definition of a "foreign representative" as that term is defined in section 101(24) of the Bankruptcy Code.

48.      On October 20, 2024, I applied to the Maltese Court for authority to proceed with this action in the United States and seek recognition of the Malta Proceeding as a foreign main proceeding or, in the alternative, as a foreign non-main proceeding under chapter 15 of the Bankruptcy Code.

49.     On November 20, 2024, the Maltese Court entered the order approving my application to proceed with this action in the United States.  *See* Chapter 15 Proceeding Order.

14

4934-0709-4321, v. 13

c.      Center of Main Interests

50.     I have been informed that the Bankruptcy Code provides for recognition of a foreign proceeding as a "foreign main proceeding" if such foreign proceeding is a "foreign proceeding" pending in a country where the debtor has "the center of its main interests" ("COMI"). I have also been informed that the Bankruptcy Code provides for recognition of a foreign proceeding as a "foreign non-main proceeding" if such foreign proceeding is a "foreign proceeding" pending in a country where the debtor has "an establishment."

51.     I believe that the Debtor has its COMI in Malta. The Debtor is organized under Malta law and its registered office was located at 85 Saint Johns Street, Valletta, Malta. In addition, because of my appointment as Liquidator, Geden is controlled in Malta and all of Geden's decision-making is made in Malta.

52.     I have been informed that "in the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests."  11 U.S.C. § 1516(c).

53.     Based on these facts, I believe that recognition of the Malta Proceeding as a foreign main proceeding is warranted.

d.      The Malta Proceeding is a "Foreign Proceeding"

54.     I have also been informed that the Malta Proceeding is a "foreign proceeding" as it is a collective judicial proceeding authorized and supervised by the Malta Court under the Regulations. As described in Section 1(a)(i)-(ii), the Malta Proceeding provides a statutory framework that constrains a company's actions and that regulates the final distribution of a company's assets.

15

55.     It is my understanding that this statutory structure is substantially similar to certain provisions of the Bankruptcy Code.  Specifically, the Regulations both constrain a company's actions and regulate the final distribution of a company's assets.  Accordingly, the Malta Proceeding meets the definition of "foreign proceeding" as defined in section 101(23) of the Bankruptcy Code.

56.     For the reasons set forth in the Verified Petition, I submit that recognition of the Malta Proceeding is necessary and appropriate for the benefit of the Debtor, its creditors, and other parties in interest.

### III.     The Emergency Provisional Issuance of the Automatic Stay

57.     I am informed that Section 1519(a) of the Bankruptcy Code permits the Court to grant certain forms of provisional relief in the gap period between the chapter 15 petition filing and recognition hearing "where relief is urgently needed to protect the assets of the debtor or the interests of creditors." 11 U.S.C. § 1519(a).

58.     In satisfaction of section 1519(a) of the Bankruptcy Code, I submit this Declaration describing that the issuance of the automatic stay is urgently needed to protect the assets of the Debtor or the interests of its creditors.  Further, I submit this declaration describing that (i) there is a likelihood of success on the merits (i.e. the request for recognition); (ii) there is "an imminent irreparable harm" to Geden if the preliminary injunction is not issued; (iii) the balance of harms tips in favor of Geden, and (iv) the public interest weighs in favor of an injunction.

59.     First, with respect to the "reasonable likelihood of success" factor, I believe that the Malta Proceeding meets the requirements for foreign recognition.  For the reasons set forth above, Maltese law meets the requirements of 11 U.S.C. § 1517.  Among other things, the Malta Proceeding generally involves the appointment of a liquidator for the purposes of liquidating the

16

assets and winding up the affairs of Geden for the benefit of creditors. Accordingly, I believe the Malta Proceeding is likely to be recognized as a foreign proceeding as defined by section 101(23) of the Bankruptcy Code, and further recognized as a foreign main proceeding or, in the alternative, a foreign nonmain proceeding.

60.     Second, with respect to the "imminent irreparable harm" factor, as the liquidator of Geden, I have not had the opportunity to fully analyze, take discovery, or understand the issues surrounding Geden's involvement in the Pennsylvania State Court Litigation. I am in the perplexing position of having not been aware of the 2020 Action and the actions taken by Geden to defend itself. Moreover, while the 2020 Action and the Abuse of Process Action were prosecuted by Eclipse, some or all of those claims or causes of action may be vested with Geden pursuant to the Malta Proceeding. Allowing the Appeals to go forward at this time may have severe repercussions on my ability to execute my duties as the liquidator of Geden before I have had a chance to even understand the positions, facts, and circumstances. Put simply, at this time, I do not know the extent and damage that may be caused by having these Appeals go forward without first having a chance to understand the full picture of Geden's involvement in the 2020 Action and potentially elsewhere.

61.     Third, with respect to the "balance of harms in favor of the moving party" factor, I, as the liquidator of Geden, have a far greater risk of potentially losing valuable assets or information if the Appeals are allowed to go forward than Tankers and Award have by simply waiting a bit longer for a resolution.

62.     Fourth, with respect to the "public interest weighs in favor of an injunction" factor, granting a preliminary injunction is also in the public interest. The public goal of chapter 15 is the "fair and efficient administration of cross-border insolvencies that protects the interests of all

creditors." 11 U.S.C. § 1501(a)(3). Issuing the automatic stay on a provisional basis will ensure that I have time to understand how, who, and why Geden took the positions it did in the 2020 Action without my express authorization or that pf the Maltese court.

63.     In addition, my understanding is that section 1522 of the Bankruptcy Code "states that relief can be granted, modified or terminated under section 1519, as the case may be, only if the interests of creditors and other interested parties are sufficiently protected." *Id.* (quoting 1 COLLIER ON BANKRUPTCY ¶ 13.06 (16th ed. 2022)).

64.     Here, the risk of harm to Tankers and Award that the Appeals go forward is minimal. The 2020 Action has been pending for over four (4) years and the Appeals have been pending since October of 2024. Issuing the automatic stay will merely seek to preserve the status quo and not limit my rights before I have had a chance to conduct a more thorough investigation. Moreover, Tankers and Award may still seek to return to this Court and seek to lift the automatic stay before the full hearing on foreign recognition.

## IV.     Statement Pursuant to Section 1515 of the Bankruptcy Code.

65.     I am informed that section 1515 of the Bankruptcy Code provides, in pertinent part, as follows:

(a)     A foreign representative applies to the court for recognition of a foreign proceeding in which the foreign representative has been appointed by filing a petition for recognition.

(b)     A petition for recognition shall be accompanied by—

(1)      a certified copy of the decision commencing such foreign proceeding
         and appointing the foreign representative;

(2)     a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or

18

(3)     in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.

(c)     A petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative.

66.     In satisfaction of section 1515(b) of the Bankruptcy Code, I submit this declaration describing the existence of the Malta Proceeding and my authorization therein to act as the Foreign Representative of Geden. In addition, I understand that the Malta Proceeding is a "foreign proceeding" as such term is defined in section 101(23) of the Bankruptcy Code, and there are no other foreign proceedings pending against the Debtor.

## V.     Disclosure and Corporate Ownership Statement Pursuant to Bankruptcy Rule 1007(a)(4).

67.     I am informed that Bankruptcy Rule 1007(a)(4) provides, as follows:

In addition to the documents required under § 1515 of the Code, a foreign representative filing a petition for recognition under chapter 15 shall file with the petition: (A) a corporate ownership statement containing the information described in Rule 7007.1; and (B) unless the court orders otherwise, a list containing the names and addresses of all persons or bodies authorized to administer foreign proceedings of the debtor, all parties to litigation pending in the United States in which the debtor is a party at the time of the filing of the petition, and all entities against whom provisional relief is being sought under § 1519 of the Code.

68.     I am further informed that Bankruptcy Rule 7007.1 provides in pertinent part that a corporate ownership statement:

. . . identif[y] any corporation, other than a governmental unit, that directly or indirectly owns 10% or more of any class of the corporation's equity interests, or states that there are no entities to report under this subdivision.

4934-0709-4321, v. 13

69.     Pursuant to rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the following are corporations, other than a government unit, that directly or indirectly own 10% or more of any class of the debtor's equity interest:[9]

| Shareholder | Approximate Percentage of Shares Held |
|---|---|
| Buselten Finance, S.A. | 99.9% |

70.     In compliance with the requirements of Bankruptcy Rule 1007(a)(4)(B), I (in my capacity as the legal representative of Geden under Maltese law) shall maintain control of and be authorized to administer the Malta Proceeding.  My service address in this Chapter 15 Case is Vallpretta Legal, No. 4 Saint Andrews Street, Valletta VLT 1341, Malta; Attn: Dr. Reuben Balzan.

71.     I am not aware of any other persons or bodies authorized to administer the Malta Proceeding on behalf of Geden.

**VI.     Parties to Litigation Pending in the United States**

72.     Counsel has informed me that Geden is a party to certain litigation (the "Litigation") pending in the United States at the time of the commencement of this Chapter 15 case.  In accordance with Bankruptcy Rule 1007(a)(4), a list of the known Litigation and the names and addresses of the parties thereto is set forth below[10];

-     Advantage Tankers, LLC,

-     Advantage Award Shipping, LLC

-     Gulsun Nazli Karamehmet-Williams

---

[9] Information as of June 8, 2012.  Note that due to the Foreign Representative's lack of information from the debtor, this information is being provided upon information and belief.

[10] Each of the parties listed is represented in the 2020 Action and in the Abuse of Process Action by Neil Quartaro, email: nquartaro@cozen.com, and Jared Bayer, email: jbayer@cozen.com, with Cozen O'Connor, One Liberty Place, 1650 Market Street, Suite 2800, Philadelphia, PA 19103

- Courtney Bryan Williams

**VII.   Scheduling the Recognition Hearing and Notice**

73.     Because of the May 13, 2025 date for oral argument on the Appeals, it is imperative that the hearing for provisional relief and the imposition of the automatic stay be heard on an emergency basis at the Court's earliest convenience.

74.     Additionally, in an effort to be as efficient and expeditious as possible, I'm seeking authority to provide notice of the Verified Petition and other relevant chapter 15 pleadings through both the mail and electronic mail. Executed on this 28th day of April, 2025

*/s/ Ruben Balzan*
Dr. Reuben Balzan, in his capacity as the Court Appointed Liquidator of Geden Holdings, Ltd.

21