## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 15 |
| GEDEN HOLDINGS, LTD., | Case No. 25-90138 |
| Debtor in a Foreign Proceeding. | |

## OBJECTION OF ADVANTAGE AWARD SHIPPING, LLC TO VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDING, (II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE

Advantage Award Shipping, LLC ("**Advantage Award**")[1] files this Objection to the *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 Of The Bankruptcy Code* (the "**Verified Petition**") [Docket No. 2] and to recognition of the Malta Proceeding (as defined below) as a foreign main proceeding or, in the alternative, a foreign nonmain proceeding under chapter 15 of title 11 of the United States Code (the "**Bankruptcy Code**"). In support of its Objection, Advantage Award respectfully states:

### INTRODUCTION

1.       Purporting to act in his capacity as foreign representative of an alleged liquidation proceeding in Malta (the "**Malta Proceeding**") for Geden Holdings, Ltd. ("**Geden**"), Dr. Reuben Balzan (the "**Liquidator**") has asked the Bankruptcy Court to recognize the Malta Proceeding as

---

[1] Under Local Rule 9027-3, Advantage does not consent to entry of final orders or judgments by the bankruptcy judge. Advantage appears in this matter for the sole purpose of opposing recognition. By so appearing, Advantage: (a) does not submit to the jurisdiction of this Court or the U.S. District Court for the Southern District of Texas under one or more of 28 U.S.C. §§ 157, 1334, and 1452 (together, the "**Bankruptcy Court**"); (b) does not waive any argument that the Bankruptcy Court lacks jurisdiction over Advantage or any disputes between Advantage on the one hand and the Liquidator (as defined below) and any other party to this proceeding on the other hand; and (c) does not waive any argument regarding the referral of any matter from the United States District Court to the United States Bankruptcy Court, or any argument for or against removal, remand, or abstention.

a foreign main proceeding almost a decade after it was commenced and only now that Eclipse Liquidity, Inc. ("**Eclipse**") has agreed to fund the Liquidator's activities (if there are any) in Malta and, ostensibly, in the Bankruptcy Court. Despite the Liquidator's taking the nominal lead in the Bankruptcy Court, it is only too clear that Eclipse is the real party in interest urging this Court's recognition of the Malta Proceeding.

2.      Eclipse has winched Geden's sunken Malta Proceeding from the seabed — the original liquidator never assumed control; the Malta Proceeding drifted, derelict, for years before Eclipse opportunistically resurrected it and installed the Liquidator to do its bidding — and now (through the agency of an "independent" Liquidator) darkens this Court's door, having already worn out its welcome in federal and state courts throughout the United States and failed to attach liability to an Advantage-affiliated party on any legal theory. Eclipse has received essentially no relief in at least a *dozen* lawsuits in federal and state courts over the course of ten years, yet would have this Court grant the extraordinary relief of recognizing a foreign liquidation proceeding that Eclipse has essentially hijacked for its own parochial purposes, all so Eclipse can obsessively continue to endlessly pursue its white whale, the Advantage companies.

3.      This Court should have none of it.

## FACTUAL BACKGROUND

### ECLIPSE'S DECADE OF UNSUCCESSFUL LITIGATION

4.      Although the Liquidator is the nominal party seeking recognition of the Maltese liquidation in this Chapter 15 case, the real party behind everything is Eclipse. The Liquidator admits, as he must, that Eclipse "is funding the liquidation in Malta including, but not limited to, the payment of my fees and who I wish to hire as my professionals."[2] The Liquidator further admits

---

[2] *Declaration of Foreign Representative,* Docket No. 6 (the "**Liquidator Decl.**") at 7 n.4.

to accepting uncritically Eclipse's view of its history with Geden: "I have relied on … Eclipse regarding Geden's 'restructuring' and any associated allegations made in the Pennsylvania State Court Action."[3] (Oddly, the Liquidator has chosen to shunt his admissions about his being controlled by Eclipse into footnotes in the Liquidator Declaration, as if hoping no one would notice them. Paraphrasing the author David Foster Wallace, footnotes are an irritant requiring extra work, so they had better be germane. The Liquidator's footnotes are certainly germane.) More tellingly, the Liquidator reports (in his Declaration on pages 9–10) that the principal basis for the Liquidator seeking Chapter 15 recognition is almost exclusively Eclipse's unproved allegations against Geden — allegations that evidence adduced in prior litigation disproved.

5.       By funding the Liquidator's activities in Malta (if any such activities exist) and in the Bankruptcy Court (and presumably in Eclipse IIIa and Eclipse IIIb (as defined below)), by causing the Liquidator to engage Eclipse's long-time counsel as *Geden's* counsel in Eclipse IIIa and Eclipse IIIb (despite Eclipse seeking a new money judgment against Geden in Eclipse IIIb), and by causing the Liquidator to adopt Eclipse's many unsubstantiated allegations against Geden and others as presumptively true, Eclipse appears to have turned the Liquidator into Eclipse's agent to open up what would be yet another front in a vexatious campaign of self-serving litigation that Eclipse and its affiliates have waged for some ten years, only to be rebuffed by every judge who has ever reviewed the relevant evidence.

6.       A brief history of Eclipse's ceaseless (and completely unsuccessful) litigation is instructive.[4] About ten years ago, Geden — a Malta-registered company headquartered, managed, and operated in Turkey — owned over 50 single-purpose subsidiaries ("**SPEs**"), each of which

---

[3] Liquidator Decl. at 8 n.7.
[4] Relevant filings in some 12 lawsuits commenced by Eclipse and its affiliates are attached as exhibits to *Advantage's Request for Judicial Notice* filed contemporaneously with this Objection (the "**RJN**"). Advantage has little confidence that this history is complete. Eclipse has commenced so many actions in so many courts throughout the United States that Advantage suspects its research to date has not uncovered them all.

owned a tanker ship. In the face of financial distress emerging in 2013 and 2014, Geden's SPEs sold ships or turned them over to secured lenders with liens on them. In 2015, Geden's SPEs sold 11 tankers to various subsidiaries of Advantage Tankers LLC ("**Advantage Tankers**") in arms-length transactions for fair market value, as determined by a reputable and independent third-party appraiser, not the parties to the transaction. The banks that had financed the tankers further substantiated the adequacy of the value Advantage Tankers paid for these 11 vessels.

7.       Eclipse alleged that it had exercised a put option guaranteed by Geden on April 13, 2015, which the principal obligor did not honor. Eclipse obtained an English arbitration award against the obligor in December 2016 then subsequently sued Geden on the guarantee and obtained a judgment in 2017. Eclipse domesticated that foreign judgment against Geden in 2017 in Pennsylvania, Court of Common Pleas, Case No. 171000196 ("**Eclipse I**"). After considerable litigation and discovery in Eclipse I, Eclipse was unable to locate any Geden assets in Pennsylvania to satisfy the judgment. Eclipse then began years of litigation attempting to impose liability for Geden's foreign judgment debt on various foreign third parties not connected to the put option or the subject matter of that judgment.

8.       Eclipse or one of its affiliates under common ownership filed at least five actions in 2015 (in each action represented by the same counsel, who also represents Eclipse in this Chapter 15 case), the first three of which were filed in rapid succession in the United States District Court for the Southern District of Texas, the latter two filed nearly simultaneously in the United States District Court for the Eastern District of Texas:

> (1) – (5) *Eclipse Liquidity, Inc. v. Avor Navigation Ltd., et al.,* Case No. 4:15-cv-01645 (S.D. Tex.) ("**Eclipse II**"), consolidated with *Tank Punk, Inc. v. Spike Shipping Ltd.,* Case No. 4:15-cv-01675 (S.D. Tex.) ("**Tank I**"), and *Psara Energy, Ltd. v. Space Shipping, Ltd.,* Case No. 4:15-cv-01673 (S.D. Tex.) ("**Psara I**"); *Psara Energy, Ltd. v. Space Shipping, Ltd.,* Case No. 1:15-cv-00355 (E.D. Tex.) ("**Psara II**"); *Tank Punk, Inc. v. Spike Shipping Ltd.,* Case No. 1:15-cv-00461 (E.D. Tex.) ("**Tank II**") — The court's consolidation of the

first three actions (the "**Consolidated S.D. Tex. Action**")[5] indicate that Eclipse, Tank Punk, and Psara Energy are close affiliates of one another; Space Shipping and Spike Shipping were affiliates of Geden.[6]

- Eclipse alleged, among other things, that the defendants (which included Geden as well as several Advantage affiliates) were obligated to Eclipse for approximately $682,000 and alleged that Geden and the Advantage-affiliated defendants were all alter egos of one-another and had engaged in business as a single enterprise.

- The Honorable Magistrate Judge Stacy submitted her Memorandum and Recommendation on July 6, 2016, which recommended that the District Court dismiss the Consolidated S.D. Tex. Action with respect to all defendants.[7] The Magistrate noted that the evidence amply showed — contrary to Eclipse's breathless accusations in its complaints — that the Advantage parties had paid nearly $200 million to Geden in arm's-length purchases of tankers and that there was no evidence to support Eclipse's allegations of alter ego or common control.[8] Concluding that Eclipse (and its affiliated plaintiffs in the consolidated cases, Tank Punk and Psara Energy) had "no substantive claim against the Advantage Defendants," all claims against the Advantage Defendants "should be dismissed."[9]

- On November 23, 2016, United States District Judge Werlein entered the court's Final Judgment dismissing the Consolidated S.D. Tex. Action with prejudice.[10] Tank II and Psara II were also dismissed.[11]

\* \* \*

---

[5] *Order*, attached as Exhibit 4 to the RJN.
[6] *See* Complaints in Eclipse II, Tank I, Psara I, Tank II, and Psara II, attached as Exhibits 1, 2, 3, 7, and 9, respectively, to the RJN.
[7] *Memorandum and Recommendation Granting Defendants' Amended Motion to Vacate Attachments and Dismiss,* attached as Exhibit 5 to the RJN.
[8] *Id.* at 21.
[9] *Id.* at 25.
[10] *Final Judgment,* attached as Exhibit 6 to the RJN.
[11] *See* Dismissal Orders in Tank II and Psara II, attached as Exhibits 8 and 10, respectively, to the RJN.

Eclipse soon after commenced two substantially identical new actions in the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the Eastern District of Louisiana:

(6) *Psara Energy, Ltd. v. Space Shipping, Ltd.,* Case No. 2:16-cv-04840 (E.D. Pa.) ("**Psara III**").[12]

(7) *Psara Energy, Ltd. v. Space Shipping, Ltd.,* Case No. 2:16-cv-01305 (E.D. La.) ("**Psara IV**").[13]

Nothing came of these actions. Psara Energy voluntarily dismissed Psara III in December 2016 and Psara IV in January 2017.[14]

\* \* \*

Unchastened by their failure to make anything stick in seven different actions in four different federal courts, Eclipse persisted with its vexatious campaign of frivolous litigation by commencing two more actions in the Eastern District of Texas and the Eastern District of Louisiana in 2018:

(8) *Psara Energy, Ltd. v. Space Shipping, Ltd.,* Case No. 1:18-cv-00178 (E.D. Tex.) ("**Psara V**").[15]

(9) *Psara Energy, Ltd. v. Space Shipping, Ltd.,* originally filed as Case No. 2:18-cv-04111 (E.D. La.),[16] then transferred to[17] Docket No. 1:18-cv-00364 (E.D. Tex.) ("**Psara VI**") and consolidated with Psara V.

With these two actions, Eclipse again sought Admiralty Rule B attachments against Geden, Advantage companies, and several other defendants, repeating the same unsubstantiated, fanciful allegations about would-be affiliation between Geden and Advantage companies and fraudulent transfers. Again, Eclipse prevailed in neither action. The court dismissed both actions with prejudice in February 2021.[18]

---

[12] *See* Complaint, attached as Exhibit 11 to the RJN.
[13] *See* Complaint, attached as Exhibit 13 to the RJN.
[14] *See* Dismissal Orders in Psara III and Psara IV, attached as Exhibits 12 and 14, respectively, to the RJN.
[15] *See* Complaint, attached as Exhibit 15 to the RJN.
[16] *See* Complaint, attached as Exhibit 17 to the RJN.
[17] *See* Order and Reasons, attached as Exhibit 18 to the RJN.
[18] *See* Dismissal Order, attached as Exhibit 16 to the RJN.

* * *

Still somehow uncowed, Eclipse commenced two more lawsuits in two more courts in 2020, one in yet another United States District Court and one in the Court of Common Pleas for Philadelphia County, First Judicial District of Pennsylvania (Trial Division – Civil) (the "**PA Trial Court**"):

(10) *Psara Energy, Ltd. v. Space Shipping, Ltd.*, originally filed as Case No. 3:20-cv-04102 (N.D. Cal.),[19] transferred to Case No. 1:20-cv-00293 (E.D. Tex.) ("**Psara VII**").[20]

This action, too, was dismissed with prejudice in February 2021.[21]

### PA STATE COURT LITIGATION

(11) – (12). *Eclipse Liquidity, Inc. v. Geden Holdings Ltd.*, Case No. 200300816 (Pa. Comm. Pleas Ct.),[22] which was initially removed to *Eclipse Liquidity, Inc. v. Geden Holdings Ltd.*, Case No. 2:20-cv-01847 (E.D. Pa.), then remanded back to the PA Trial Court ("**Eclipse IIIa**"):

- Discovery dragged on for three years — the discovery deadline was extended by the PA Trial Court seven times — yet Eclipse was unable to adduce any evidence to support its original legal theory. Instead, as the PA Trial Court noted in its appeal opinion in April 2024,[23] Eclipse's "theory has altered substantially over the course of the more than six years of litigation here, and it has grown to include many additional persons and entities not named in these actions. As a result, this court is unfavorably reminded of the old shell game."[24]

---

[19] *See* Complaint, attached as Exhibit 19 to the RJN.
[20] *See* Order Transferring Case, attached as Exhibit 20 to the RJN.
[21] *See* Dismissal Order, attached as Exhibit 21 to the RJN.
[22] *See* Complaint, attached as Exhibit 22 to the RJN.
[23] *Appeal Opinion,* Case Nos. 2000816 and 2302605, Court of Common Pleas for Philadelphia County, First Judicial District of Pennsylvania, Trial Division—Civil, dated April 23, 2024 (the "**Appeal Opinion**"), attached as Exhibit 26 to the RJN.
[24] Appeal Opinion at 4.

- As described by the PA Trial Court in its opinion dated January 22, 2024, Eclipse alleged that "there was something improper about the transfer" of a tanker to Advantage Award and that the tanker should still be "deemed an asset of Geden's" under theories of merger and the Pennsylvania Uniform Fraudulent Transfer Act.[25]

- Simultaneously, the PA Trial Court dismissed Eclipse IIIa and a second parallel case, Case No. 230602605, that Eclipse commenced in 2023 ("**Eclipse IIIb**" — together with Eclipse IIIa, the "**PA State Court Litigation**") alleging similar claims against similar defendants, for lack of subject matter jurisdiction and an inability for Pennsylvania to exercise personal jurisdiction over the Advantage-affiliated defendants, who were not present in the United States.[26]

- Eclipse appealed to the Pennsylvania Superior Court (the "**PA Appellate Court**" hearing the "**PA Appeal**"). The PA Trial Court's January 2024 Opinion noted that "three years of discovery in this action has not enabled [Eclipse] to substantiate those claims."[27] The PA Trial Court ruled that Eclipse's "claim that Geden made a fraudulent transfer … to Advantage Award fails" and that Eclipse's "claim that Advantage Award is Geden's successor for judgment execution purposes due to the two entities' 'de facto merger' also fails,"[28] then dismissed both Eclipse IIIa and Eclipse IIIb in their entirety (even against Geden because another judgment against Geden would be "at best, a duplicate judgment").[29]

---

[25] *Opinion* dated January 22, 2024, of the PA Trial Court in Eclipse IIIa, attached to and incorporated into the Appeal Opinion (the "**January 2024 Opinion**")

[26] *See Order* dated January 22, 2024, of the PA Trial Court in Eclipse IIIb, attached to and incorporated into the Appeal Opinion.

[27] January 2024 Opinion at 2.

[28] *Id.* at 5.

[29] *Id.* at 7.

- The PA Trial Court also noted that "the discussion and determination of other issues, such as the lack of personal jurisdiction over Advantage Tankers, the lack of evidence for the fraudulent transfer claims against Advantage Award, and the deficiencies in the abuse of process claim … support the overarching theme that *it is fruitless for Eclipse to pursue this litigation in this forum any further*."[30]

- In addition to Eclipse, the Liquidator (purporting to act for Geden, which was a prevailing defendant in the PA Trial Court against whom all claims were dismissed) through the same counsel that was simultaneously representing Eclipse in the same action also filed notices of appeal. On April 26, 2024, the PA Appellate Court dismissed Geden (through the Liquidator) from the PA Appeals for lack of appellate standing because *Geden was the prevailing party in the PA State Court Litigation and, as such, was not aggrieved*.[31]

- The PA Appeal has been fully briefed — the Liquidator neither filed his own brief nor joined in Eclipse's brief — and oral argument was scheduled for mid-May 2025. Despite receiving authority in Malta to file the Chapter 15 petition in *November 2024,* the Liquidator waited *more than six months,* until the eve of appellate argument, before seeking "emergency" relief from this Court; the Liquidator created the very "emergency" he demanded this Court address expeditiously. The PA Appeal is currently stayed and oral argument is off calendar.

The following chart summarizes the foregoing description of these 12 actions:

---

[30] Appeal Opinion at 4 (emphasis added).
[31] The Liquidator's continued thrashing about in Pennsylvania appellate courts, including three petitions to the Pennsylvania Supreme Court — all denied — is detailed further in ¶¶ 38–39 below.

| Case | Year | Court | Case No. | Plaintiff | Defendant | Status |
|------|------|-------|----------|-----------|-----------|--------|
| Eclipse I | 2017 | Penn.St.Ct. | 171000196 | Eclipse Liquidity, Inc. | N/A | **No** assets located |
| Eclipse II | 2015 | S.D. Tex. | 4:15-cv-01645 | Eclipse Liquidity, Inc. | Avor Navigation Advantage Parties Geden Holdings | **Dismissed** with prejudice |
| Tank I | 2015 | S.D. Tex. | 4:15-cv-01675 | Tank Punk, Inc. | Spike Shipping Geden Holdings Advantage parties | **Dismissed** with prejudice |
| Psara I | 2015 | S.D. Tex. | 4:15-cv-01673 | Psara Energy, Ltd. | Space Shipping Geden Holdings Advantage parties | **Dismissed** with prejudice |
| Psara II | 2015 | E.D. Tex. | 1:15-cv-00355 | Psara Energy, Ltd. | Space Shipping Geden Holding Advantage parties | **Dismissed** |
| Tank II | 2015 | E.D. Tex. | 1:15-cv-00461 | Tank Punk, Inc. | Spike Shipping Geden Holdings Advantage parties | **Dismissed** |
| Psara III | 2016 | E.D. Pa. | 2:16-cv-04840 | Psara Energy, Ltd. | Space Shipping Geden Holdings Advantage parties | **Dismissed** |
| Psara IV | 2016 | E.D. La. | 2:16-cv-01305 | Psara Energy, Ltd. | Space Shipping Geden Holdings Advantage parties | **Dismissed** |
| Psara V | 2018 | E.D. Tex. | 1:18-cv-00178 | Psara Energy, Ltd. | Space Shipping Geden Holdings Advantage parties | **Dismissed** with prejudice |
| Psara VI | 2018 | E.D. La. E.D. Tex. | 2:18-cv-04111 1:18-cv-00364 | Psara Energy, Ltd. | Space Shipping Geden Holding Advantage parties | **Dismissed** with prejudice |
| Psara VII | 2020 | N.D. Cal. E.D. Tex. | 3:20-cv-04102 1:20-cv-00293 | Psara Energy, Ltd. | Space Shipping Geden Holdings Advantage parties | **Dismissed** with prejudice |
| Eclipse IIIa | 2020 | Penn.St.Ct. | 200300816 | Eclipse Liquidity, Inc. | Geden Holdings, Advantage parties | **Dismissed** with prejudice Appeal pending, stayed |
| Eclipse IIIb | 2023 | Penn.St.Ct. | 230602605 | Eclipse Liquidity, Inc. | Geden Holdings, Advantage parties | **Dismissed** with prejudice Appeal pending, stayed |

9.     The relentless and uniformly futile litigation that Eclipse has unsuccessfully pursued all over the country for a full decade exposes this would-be Chapter 15 proceeding for what it really is: a craven attempt by Eclipse to try, try again to make something stick against the Advantage-affiliated parties. Eclipse has wrested control of the moribund Malta liquidation proceeding — and, remarkably, the Liquidator — in a vain attempt to use the Bankruptcy Court and the extraordinary relief provided under Chapter 15 to continue its decade-long crusade of withering litigation against Advantage Award and its affiliates. Eclipse has nothing to show from

at least a *dozen* lawsuits in federal and state courts throughout the country,[32] yet now, exploiting its relationship with the Liquidator, asks this Court to provide a new venue for yet more rudderless litigation. This Court should not countenance such an abuse of this Court's scarce judicial resources. Ten years of harassing litigation is surely enough.

10.     The Liquidator Declaration parrots the various unsubstantiated allegations in ten years' worth of Eclipse-authored complaints against Geden and Advantage companies without ever mentioning that Eclipse has *never* proved *any* of the allegations contained in those complaints — including the spurious allegations of "fraudulent transfer" that the Liquidator seems still to be "concerned about" — or that *all* of those actions have concluded (save for the PA Appeal, to which neither Geden nor the Liquidator is a participant). One reasonably wonders why the Liquidator believes he can re-litigate any of this.

**THE MALTA PROCEEDING AND THE CHAPTER 15 CASE**

11.     On September 16, 2016, Samsung C&T Deutschland GmbH filed an application with the First Hall of the Civil Court (the "**Maltese Court**"), requesting that the Maltese Court declare Geden insolvent and to have Geden wound up under Maltese law.[33] On June 15, 2017, the Maltese Court adjudicated Geden insolvent and appointed Paul Darmanin as Geden's liquidator.[34] Mr. Darmanin never accepted his appointment as Geden's liquidator; on September 19, 2018, the Maltese Court confirmed as such.[35]

---

[32] Eclipse's penchant for never-ending litigation, its senseless persistence in the face of loss after dispositive loss, may remind the Bankruptcy Court of cases in which serial litigants have been deemed "vexatious litigants" subject to pre-filing injunctions and other relief designed to relieve federal courts of the gratuitous burdens imposed by such litigants. Eclipse may have made itself even more susceptible to such injunctive relief with this latest attempt to enlist yet another federal court in its crusade against Advantage.

[33] Liquidator Decl. at ¶ 11.

[34] Petition at ¶ 11.

[35] *Id.* at ¶ 12.

12.     Over the next five years, the Malta Proceeding was essentially scuttled. Geden was apparently legally "in liquidation" in Malta without any liquidator and without anyone taking any action to liquidate any Geden assets.

13.     When Eclipse learned early in the Eclipse IIIa litigation that the Malta Proceeding existed and, therefore, Geden was at most a nominal party in the PA State Court Litigation, Eclipse continued onward, taking discovery for three years. After the PA Trial Court denied Eclipse's *eighth* request for an extension of discovery deadlines and was poised to rule imminently on the Advantage parties' motion for summary judgment, Eclipse decided to opportunistically seize on the Malta Proceeding as a basis to further extend its decade-long war or vituperative litigation against Advantage Award and its affiliates, despite that the Malta Proceeding had stagnated for more than five years by that point.

14.     Eclipse, having suffered litigation defeat after litigation defeat in its quest against Advantage Award, and spotting yet another impending defeat, tried something new. On December 1, 2023, Eclipse filed an application with the Maltese Court to appoint a new liquidator.[36] Eclipse evidently represented that it only discovered the Malta Proceeding's existence during the course of the PA State Court Litigation sometime shortly before it orchestrated the Liquidator's appointment in December 2023.[37] But, in truth, Eclipse learned of the Malta Proceeding, at the latest, *more than three years earlier* when the Advantage parties included information regarding the Malta Proceeding in its *Answer and New Matter* filed in Eclipse IIIa.[38]

---

[36] *Id.* at ¶ 13.
[37] *See* Liquidator Decl. at ¶ 38.
[38] *See* Exhibit 23 to the RJN at ¶ 55 ("Defendants admit that Geden Holdings is in receivership in Malta . . .").

15.     On October 9, 2024, the Maltese Court granted the Liquidator's application for authority to file a chapter 15 recognition proceeding;[39] it is unclear why the Liquidator waited over six months from obtaining this relief, until just days before the PA Appeal was to be argued, to file this chapter 15 case.

16.     On April 28, 2025, the Liquidator filed a *Chapter 15 Petition for Recognition of a Foreign Proceeding* [Docket No. 1] (the "**Petition**") with the Bankruptcy Court, seeking recognition of the Malta Proceeding as a foreign main proceeding or, in the alternative, a foreign nonmain proceeding. Eclipse is funding the Liquidator's fees and costs in the Malta Proceeding, and presumably in this chapter 15 case.[40]

## OBJECTION

### RECOGNITION SHOULD BE DENIED

17.     Geden's Malta Proceeding should not be recognized because nobody (including the Liquidator) has taken any substantive action in eight years to progress it.[41] Before liquidation, Geden's business activities were based out of Turkey; Malta was just a "letterbox" jurisdiction. The Liquidator's failure to undertake any meaningful activity in Malta means that Geden's center of main interest ("**COMI**") is not in Malta and the Malta Proceeding is not entitled to recognition as a foreign main proceeding. Nor is it entitled to recognition as a foreign nonmain proceeding.

---

[39] Liquidator Decl. at ¶ 2.
[40] Liquidator Decl. at n.4.
[41] *See* Liquidator Decl. ¶¶ 12, 19, 20.

A.    **General Requirements for Recognition**

18.    Section 1517 of the Bankruptcy Code provides:

> an order recognizing a foreign proceeding shall be entered if —
> (1) such foreign proceeding for which recognition is sought is a foreign main
> proceeding or foreign nonmain proceeding within the meaning of section 1502;
> (2) the foreign representative applying for recognition is a person or body; and
> (3) the petition meets the requirements of section 1515.[42]

"Such foreign proceeding shall be recognized — (1) as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests; or (2) as a foreign nonmain proceeding if the debtor has an establishment within the meaning of section 1502 in the foreign country where the proceeding is pending."[43]

19.    "Upon recognition of a foreign main proceeding, Section 1520 provides certain automatic, nondiscretionary relief, including an automatic stay of all proceedings against the debtor in the United States. A discretionary stay is also available under section 1521 of the Code, regardless of whether a foreign main proceeding is recognized."[44] The court continued:

> Finally, section 1506 provides an 'overriding public policy exception to all of Chapter 15 . . . . Section 1506 provides that: "Nothing in this chapter prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States."[45]

20.    The Fifth Circuit has held that "recognition under Section 1517 of the Bankruptcy Code is not a rubber stamp exercise. Even in the absence of an objection, courts must undertake their own jurisdictional analysis and grant or deny recognition under Chapter 15 as the facts of each case warrant. The ultimate burden of proof on the requirements of recognition is on the foreign representative."[46]

---

[42] 11 U.S.C. § 1517(a).
[43] 11 U.S.C. § 1517(b).
[44] *In re Creative Fin., Ltd. (In Liquid.)*, 543 B.R. 498, 514 (Bankr. S.D.N.Y. 2016) (footnote omitted) (quoting *Morning Mist Hldgs. Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 133 (2d Cir. 2013)).
[45] *Id.*
[46] *Lavie v. Ran (In re Ran)*, 607 F.3d 1017, 1021 (5th Cir. 2010) (citations and internal quotation marks omitted).

## B.      Foreign Main Proceeding

21.      A central focus of the availability of recognition and relief available is whether the

proceeding at issue is a foreign main proceeding, a foreign nonmain proceeding — or neither. A

foreign main proceeding

> is a foreign proceeding pending in the country where the debtor has the *center of
> its main interest*. The phrase 'center of main interest' ('COMI') is a term of art,
> which the Bankruptcy Code does not define explicitly. Chapter 15, however, does
> provide that [i]n the absence of evidence to the contrary, the debtor's registered
> office, or habitual residence in the case of an individual, is presumed to be the center
> of the debtor's main interests. This presumption can be rebutted by evidence to the
> contrary.[47]

Most courts to have considered the issue, including the Fifth Circuit Court of Appeals, have held

that COMI is determined on the date of filing of the petition for recognition.[48] But "[t]he Fifth

Circuit left open the possibility (albeit in dicta) of looking at a broader time frame in order to

frustrate possible bad-faith COMI manipulation."[49] The Second Circuit continued:

> We therefore hold that a debtor's COMI should be determined based on its activities
> at or around the time the Chapter 15 petition is filed, as the statutory text suggests.
> But given the EU Regulation and other international interpretations, which focus
> on the regularity and ascertainability of a debtor's COMI, a court may consider the
> period between the commencement of the foreign insolvency proceeding and the
> filing of the Chapter 15 petition to ensure that a debtor has not manipulated its
> COMI in bad faith.[50]

---

[47] *Id.* at 1022 (citations and internal quotation marks omitted, citing *In re Tri-Continental Exch.*, 349 B.R. 627, 634 (Bankr. E.D. Cal. 2006)).

[48] *Ran*, 607 F.3d at 1025.

[49] *In re Fairfield Sentry Ltd.*, 714 F.3d 127, 135 (2d Cir. 2013); *see also In re Ran*, 607 F.3d at 1026 ("Lastly, we note that this case does not involve a recent change of domicile by the [debtor] in question. A similar case brought immediately after the party's arrival in the United States following a long period of domicile in the country where the bankruptcy is pending would likely lead to a different result").

[50] *In re Fairfield Sentry*, 440 B.R. at 65–66 (internal citations omitted); *see also In re Mega Newco Ltd.*, No. 24-12031 (MEW), 2025 WL 601463, at *3 (Bankr. S.D.N.Y. Feb. 24, 2025) ("Courts and commentators have long worried about instances in which a debtor might try to manipulate its COMI"); *In re Sunac China Holdings Ltd.*, 656 B.R. 715, 724 (Bankr. S.D.N.Y. 2024) (quoting *Fairfield Sentry* for the ability to "look at the time period between the initiation of the foreign liquidation proceeding and the filing of the Chapter 15 petition" to "offset a debtor's ability to manipulate its COMI"; *In re Mod. Land (China) Co., Ltd.*, 641 B.R. 768, 782 (same); *In re Pirogova*, 612 B.R. 475, 481 (S.D.N.Y. 2020) (same); *In re Creative Fin. Ltd.*, 543 B.R. 498, 518-19 (Bankr. S.D.N.Y. 2016) ("Though the relevant time for the determination of COMI is the time of the chapter 15 petition, it is 'subject to an inquiry as to whether the process has been manipulated.' That caveat was important enough to get across that the *Fairfield Sentry* court mentioned it, one way or another, *seven times*").

22.     "Though . . . the Code establishes a presumption, under section 1516(c), for the determination of COMI that can be used in easy cases, that presumption is rebuttable, and the Court's hands are not tied when the issues are sufficiently material to warrant further inquiry. Thus reliance on the presumption is especially inappropriate in a case where there is a substantial dispute."[51]

23.     The Fifth Circuit has used "a 'totality of circumstances' test and recognized the following list of non-exhaustive factors to be considered when a debtor's COMI is in dispute: (i) the location of the debtor's headquarters; (ii) the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); (iii) the location of the debtor's primary assets; (iv) the location of the majority of the debtor's creditors or a majority of the creditors who would be affected by the case; and/or (v) the jurisdiction whose law would apply to most disputes."[52]

## C.      Foreign Nonmain Proceeding

24.     The Fifth Circuit held that a "foreign nonmain proceeding is a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an *establishment*. Section 1502(2) defines an establishment as *any place of operations* where the debtor carries out a *nontransitory economic activity*. In contrast to COMI, [t]he existence of an establishment is essentially a factual question, with no presumption in its favor."[53] "As one court noted, 'the bar is rather high' to prove that a debtor has an establishment in a particular location."[54]

---

[51] *Creative Fin.*, 543 B.R. at 516–17 (footnote omitted).

[52] *In re Think3 Inc.*, No. 11-11925-HCM, 2011 Bankr. LEXIS 5349, at *17 (Bankr. W.D. Tex. Sep. 12, 2011) (citing *Lavie*, 607 F.3d at 1023).

[53] *Lavie*, 607 F.3d at 1026 (citations and internal quotation marks omitted, quoting *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 338 (S.D.N.Y. 2008)).

[54] *Id.* at 1026–27 (quoting *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 131 (Bankr. S.D.N.Y. 2007)).

25.      "While recognition of a foreign proceeding as a foreign nonmain proceeding may provide the same relief as recognition as a foreign main proceeding, the relief is not automatic; rather, whether any such relief is appropriate is determined by the bankruptcy court after notice and a hearing, at the court's discretion, and subject to the requirement that all creditors be sufficiently protected."[55] "For the finding of an 'establishment' that is a requirement for finding a nonmain proceeding, . . . the existence of an 'establishment' must be established by evidence, with the petitioner . . . having the burden."[56]

26.      "'Establishment,' unlike COMI, is . . . defined in the Code. 'Establishment' means any place of operations where the debtor carries out a nontransitory economic activity. 'Establishment' has been described as a 'local place of business.'"[57] "To have an establishment in a country, the debtor must conduct business in that country. The location should constitute a seat for local business activity for the debtor. The terms 'operations' and 'economic activity' require a showing of a local effect on the marketplace, more than mere incorporation and record-keeping and more than just the maintenance of property."[58]

---

[55] *Id.* at 1026 (citing 11 U.S.C. § 1521).
[56] *Creative Fin.*, 543 B.R. at 515.
[57] *Id.* at 520 (Bankr. S.D.N.Y. 2016) (footnote omitted, quoting *In re Brit. Am. Ins. Co.*, 425 B.R. 884, 914 (Bankr. S.D. Fla. 2010)).
[58] *Id.* (citations and internal quotation marks omitted).

**D.    Geden's Malta Proceeding Is Not Entitled To Recognition As
A Foreign Main Proceeding Or A Foreign Nonmain Proceeding**

27.      As applied here, Malta was not Geden's COMI at the date of filing the Petition,
April 28, 2025. Although a Malta-registered company until it ceased operations in or about 2016,[59]
Geden's nerve center was in Turkey,[60] and there is no evidence that Geden *ever* had any operations,
creditors, or assets in Malta. More critically, there is no evidence that Geden has had any
meaningful operations in Malta since at least the commencement of its liquidation *in 2016*.

28.      Thus, at the time the Petition was filed, the Liquidator had essentially nothing in
the Malta Proceeding — certainly not enough to move Geden's COMI to Malta from Turkey,
where it had always existed. Geden was based in and operating from Turkey at all times before it
ceased operations. Eclipse repeatedly acknowledged this fact by identifying Geden in Eclipse's
many complaints as "a foreign company organized under the laws of Malta *with its operating office
at the office facilities of GEDEN LINES at Buyukdere Cad,. Yapi Kredi Plaza, A Blok K:12 34330
Levent-Istanbul-Turkey. Though GEDEN HOLDINGS is incorporated in Malta, its business is
actually carried on entirely by GEDEN LINES from its office facilities at Buyukder Cad., Yapi
Kredi Plaza, A Blok K:12 34330 Levent-Istanbul-Turkey.*"[61]

29.      *In re Creative Fin.* is instructive. In *Creative Fin.*, the British Virgin Islands court
appointed a liquidator for the company; the appointment of the liquidator divested the directors of
the company of "power or duties."[62] The Liquidator claims that the same is true in Malta.[63]

---

[59] *See* Liquidator Dec. ¶ 8.
[60] *See, e.g.,* Attachment to Liquidator Dec., Docket No. 6-5, at 33 (mailing address in Istanbul).
[61] *See, e.g.,* Exhibit 15 to the RJN, as well as the *Performance Guarantee* attached thereto as Exhibit 2.
[62] *Creative Fin.,* 543 B.R. at 508.
[63] *See* Liquidator Decl. ¶ 13.

30.     *Creative Fin.* stressed how important it is for a liquidator to have undertaken meaningful acts in the location claimed to be the debtor's COMI.[64] There, the court described the liquidator's lassitude:

> After his appointment, and before the filing of the Chapter 15 petitions in this Court, the Liquidator never collected any assets of the Debtors, nor did he liquidate any assets. He did not shut down any businesses of the Debtors, pay any taxes, or bring any causes of action on behalf of the Debtors' estates. Nor did he conduct any investigation, despite circumstances crying out for investigation here. Likewise, with the exception of coming to an agreement with Marex's UK counsel on the fee component of Marex's claim, the Liquidator did not pay or even settle any claims.[65]

The court found that the liquidator had not established that the venue of the liquidation, the British Virgin Islands, was the company's COMI:

> For reasons set forth below, the Court rules — consistent with principles articulated by the Second Circuit in *Fairfield Sentry*—that while the Debtors' COMI *could have* changed to the British Virgin Islands ("**BVI**") after the filing there and before the chapter 15 filing in the U.S., it did not do so here. By reason of the minimal activities by the Liquidator in the BVI, as orchestrated by the Debtors' principals, the Debtors' COMI never changed; the Liquidator never developed a COMI in the jurisdiction in which he was appointed; and chapter 15's statutory requirements for recognition as a foreign main proceeding were not satisfied. And for slightly different reasons, the Debtors never had even an "establishment" in the BVI, precluding recognition as a foreign nonmain proceeding either. As to each type of proceeding, recognition must be, and is, denied.[66]

The court found that the liquidators' conduct of minimal activities to "comply with statutory duties" of the liquidation, as opposed to actively undertaking to gather and analyze records or pursue assets, were not sufficient to shift the debtors' COMI to the BVI — and was not excusable.[67]

31.     It is much the same here. The first liquidator, Mr. Darmanin, never accepted the appointment, having done nothing.[68] Nothing happened in the Malta Proceeding for over five years

---

[64] *Creative Fin.,* 543 B.R. at 501 ("And while a COMI can (and not infrequently does) change from the jurisdiction in which a foreign debtor actually did business to a 'letterbox' jurisdiction, it can do so only where material activities have been undertaken in the jurisdiction in which the foreign proceeding was filed — thus providing a meaningful basis for the expectations of third parties").

[65] *Id.* at 510.

[66] *In re Creative Fin.,* 543 B.R. at 501.

[67] *Id.* at 511.

[68] Liquidator Dec. ¶¶ 16-18.

thereafter,[69] and the Liquidator was not named until 2023.[70] There is no indication in the record that any liquidator (including the Liquidator) has collected any assets of Geden, paid any taxes, brought any causes of action, conducted any investigation, or paid or settled any claims in the Malta Proceeding. The only thing that appears to have happened since the Malta Proceeding was commenced is that the Liquidator, in return for payment of his fees by Eclipse, has attempted to insinuate himself into the PA State Court Litigation on behalf of Geden (a *prevailing* party in that litigation), which Eclipse has pursued unsuccessfully for years, when that litigation was finally on the brink of final resolution. The Liquidator's intercession in a case where Geden had not asserted and could not assert any claims is entirely unrelated to any attempt to recover assets for Geden. It served solely to assist Eclipse — who orchestrated the Liquidator's appointment and is paying his fees — in perpetuating its vexatious litigation in the face of ten-year losing streak. In any event, the Liquidator's intervention in a Pennsylvania proceeding would be a *Pennsylvania* activity, not a Maltese activity. The Bankruptcy Court should deny recognition on the basis that the Malta Proceeding is not a foreign main proceeding because, like in *Creative Fin.*, the Liquidator's minimal activities in Malta (if any even exist) are insufficient to establish Malta as Geden's COMI.

32.     The Malta Proceeding is also not entitled to recognition as a foreign nonmain proceeding. To qualify as a foreign nonmain proceeding, a foreign representative must show, without the benefit of any presumption, that the debtor has an "establishment" in Malta. That is, the Liquidator must show that Malta is a "place of operations" where Geden carries out a nontransitory economic activity. But it is clear from the Liquidator's declaration that Geden has

---

[69] *Id.* ¶ 19.
[70] *Id.* ¶ 20

had no economic activity since at least 2017, and the Liquidator nowhere suggests otherwise.[71]

Indeed, a foreign insolvency proceeding alone is insufficient to find an "establishment":

> [T]his court observes that recognition based on the existence of the bankruptcy proceeding and debts, alone, poses two key problems. First, by definition, an insolvency proceeding is a transitory action. Transitory actions are tied to the person, rather than a location. In stark contrast, the concept of establishment is location-oriented, in that it focuses on the "place of operations" in which the activity occurs. It would seem an odd result to permit a transitory action to suffice as the basis for finding nontransitory economic activity. Second, if the proceeding and associated debts, alone, could suffice to demonstrate an establishment, it would essentially rule out the possibility that any proceeding would fall into the third, more nebulous category of proceedings that are neither foreign main nor foreign nonmain. But, this third category was clearly envisioned by the drafters. Therefore, such an interpretation would be contrary to statutory intent and thus violate a key canon of statutory interpretation.[72]

## IF THE COURT GRANTS RECOGNITION OF THE MALTA PROCEEDING, IT SHOULD CIRCUMSCRIBE THE RELIEF GRANTED TO THE LIQUIDATOR

33.     Section 1520(a) of the Bankruptcy Code provides that, upon recognition of a foreign proceeding as a foreign main proceeding, among other things, section 362 of the Bankruptcy Code "appl[ies] *with respect to* the debtor and the property of the debtor that is within the territorial jurisdiction of the United States."[73] Section 1521 of the Bankruptcy Code sets forth types of discretionary relief a bankruptcy court may grant upon the recognition of either a foreign main proceeding or a foreign nonmain proceeding, including "staying the commencement or continuation of an individual action or proceeding *concerning* the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a)"[74] and "providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities."[75]

---

[71] *See* Liquidator Decl. ¶¶ 16–19.
[72] *Lavie v. Ran*, 406 B.R. 277, 286-87 (S.D. Tex. 2009) (internal citations omitted), *aff'd* 607 F.3d 1017 (5th Cir. 2010).
[73] 11 U.S.C. § 1520(a)(1) (emphasis added).
[74] *Id.* at § 1521(a)(1) (emphasis added).
[75] *Id.* at § 1521(a)(4).

34.      If the Bankruptcy Court recognizes the Malta Proceeding (it should not), whether as a foreign main proceeding or a foreign nonmain proceeding (it is neither), it should circumscribe the relief granted to the Liquidator. Specifically, if the PA Appeal is not stayed by virtue of section 1520 of the Bankruptcy Code, the Bankruptcy Court should decline to apply a discretionary stay under section 1521.

35.      Section 1521 of the Bankruptcy Code provides that, "[u]pon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief . . ."[76] Section 1522 of the Bankruptcy Code provides that "[t]he court may grant relief under section 1519 or 1521, or may modify or terminate relief under subsection (c), only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected"[77] and further provides that "[t]he court may subject relief granted under section 1519 or 1521, or the operation of the debtor's business under section 1520(a)(3), to conditions it considers appropriate."[78]

36.      As the Fifth Circuit has noted, the test for whether to grant the discretionary relief provided for in sections 1521 and 1522 of the Bankruptcy Code involves a balancing test that assesses the effect of the requested relief on all parties who would be affected by it.[79] "In judging whether relief should be modified pursuant to § 1522(a), courts have engaged in a balancing of the

---

[76] 11 U.S.C. § 1521(a).

[77] *Id.* at § 1522(a).

[78] *Id.* at § 1522(b).

[79] *See Ad Hoc Grp. of Vitro Noteholders v. Vitro SAB De CV (In re Vitro SAB De CV)*, 701 F.3d 1031, 1067 n.42 (5th Cir. 2012) (quoting *In re Int'l Banking Corp. B.S.C.*, 439 B.R. 614, 627 (Bankr. S.D.N.Y. 2010)) ("For the same reasons we conclude that, even if § 1521 did provide the broad relief Vitro seeks, enforcement of this Plan would be precluded under § 1522 for failing to provide an adequate 'balance between relief that may be granted to the foreign representative and the interests of the persons that may be affected by such relief'"); *see also In re Sivec SRL*, 476 B.R. 310, 323 (Bankr. E.D. Okla. 2012) ("To ensure a party's interests are 'sufficiently protected,' the bankruptcy court should balance the relief sought by the foreign representative against the interests of those affected by the relief, without unduly favoring one group of creditors over another").

relative hardships to the parties when considering whether the interests of interested parties are sufficiently protected."[80] For instance, "a court may refuse to recognize specific orders in a foreign proceeding when those orders unjustifiably harm an interested party."[81]

37.     The court in *Jaffé* described the balancing test thus:

> Section 1522(a) requires the bankruptcy court to ensure the protection of both the creditors and the debtor. 11 U.S.C. § 1522(a). The provision thus requires the court to ensure that the relief a foreign representative requests under § 1521 does not impinge excessively on any one entity's interests, implying that each entity must receive at least some protection. And because the interests of the creditors and the interests of the debtor are often antagonistic, as they are here, providing protection to one side might well come at some expense to the other. The analysis required by § 1522(a) is therefore logically best done by balancing the respective interests based on the relative harms and benefits in light of the circumstances presented, thus inherently calling for application of a balancing test.[82]

38.     Although Geden is a named appellee in the PA Appeal, because Geden was an original defendant in the PA State Court Litigation, Geden (whether through the Liquidator or otherwise) is not appearing in the PA Appeal because it is not permitted to. Geden's standing to participate in the PA Appeal as an *appellant* has already been fully and finally litigated. On February 20, 2024, Geden (acting through the Liquidator) filed notices of appeal in both Eclipse IIIa and Eclipse IIIb purporting to appeal from the judgment *in Geden's favor*. On March 25, 2024, the Pennsylvania Superior Court issued sua sponte an Order to Show Cause, noting that Geden had prevailed below and ordering Geden (through the Liquidator) to show cause why the appeals should not be dismissed for lack of appellate standing.[83] On April 26, 2024, the Superior Court dismissed both appeals sua sponte, holding that "[a]lthough [Geden (through the Liquidator)] filed a response to the show-cause order, the response is legally insufficient to support … standing to

---

[80] *In re Sanjel (USA) Inc.*, No. 16-50778-CAG, 2016 Bankr. LEXIS 2771, at *16 (Bankr. W.D. Tex. July 28, 2016) (citing *Jaffé v. Samsung Elecs. Co.*, 737 F.3d 14, 27–28 (4th Cir. 2013)).
[81] *Id.* (citing *In re Qimonda AG*, 462 B.R. 165, 182–83 (Bankr. E.D. Va. 2011)).
[82] *Jaffé*, 737 F.3d at 27–28.
[83] *See* Order, attached as Exhibit 27 to the RJN.

appeal the order …"[84] Geden (through the Liquidator) filed petitions in the Pennsylvania Supreme Court for permission to appeal[85] as well as a separate petition for the Pennsylvania Supreme Court to exercise extraordinary jurisdiction over the matter.[86] The Pennsylvania Supreme Court denied both of them.[87]

39.      Nonetheless, Geden (through the Liquidator) was then still free to participate in Eclipse's distinct appeals as an appellee. Under Pa.R.A.P. 908, "[a]ll parties to the matter in the court from whose order the appeal is being taken shall be deemed parties in the appellate court, unless the appellant shall notify the prothonotary of the appellate court of the belief of the appellant that one or more of the parties below have no interest in the outcome of the appeal." That did not occur. "All parties in the appellate court other than the appellant shall be appellees…."[88] If the Liquidator had wished to appear and support Eclipse's position, the Liquidator was required to file its brief "not later than … 40 days after the date on which the record is filed, if no other date is so fixed."[89] Yet the Liquidator never filed a brief or even joined Eclipse's brief. Under Pa.R.A.P. 2188, "[i]f an appellee fails to file his brief within the time prescribed by these rules, or within the time as extended, he will not be heard at oral argument except by permission of the court." At most, if a brief is filed slightly late, "[c]ounsel filing briefs late shall not be permitted to argue but shall be available to answer any questions the Court may ask."[90] The Liquidator cannot merely decide to appear and participate at oral argument because he never filed a brief, despite having had the opportunity to do so.

---

[84] *See* Order, attached as Exhibit 30 to the RJN.
[85] *See* Exhibit 31 to the RJN.
[86] *See* Exhibit 33 to the RJN.
[87] *See* Exhibits 32 and 34 to the RJN.
[88] Pa.R.A.P. 908.
[89] Pa.R.A.P. 2185(a)(1); *see also* Pa.R.A.P. 908 ("appellees who support the position of the appellant shall meet the time schedule for filing papers which is provided in these rules for the appellant").
[90] 210 Pa. Code § 65.34(B).

40.      If the PA Appeal is not stayed by section 1520 of the Bankruptcy Code — whether because section 1520(a)(1) does not apply to the PA Appeal (but the Bankruptcy Court recognizes the Malta Proceeding as a foreign main proceeding)[91] or the Bankruptcy Court recognizes the Malta Proceeding as a foreign nonmain proceeding — the Court should decline to apply section 1521(a)(1) to stay it.

41.      The PA Appeal, in which neither Geden nor the Liquidator are participating or can participate, is the coda to a nearly decade-long litigation by Eclipse against the Advantage parties. Despite that the Liquidator obtained an order of the Malta Court months ago that permitted it to commence a Chapter 15 case with respect to Geden, the Liquidator curiously waited just days before the PA Appeal was to be heard by the Pennsylvania appellate court to file this Chapter 15 case and obtain an order[92] granting a provisional stay of the oral argument on the PA Appeal because "it is unclear how the Liquidator is expected to proceed in the [PA Appeal]" and does not know "whether he or his professionals must appear at oral argument on behalf of Geden."[93] (Advantage Award struggles to understand how the Liquidator can make such a claim when Pennsylvania appellate courts — including the highest court of the Commonwealth of Pennsylvania on two occasions — have *three times* made clear that the Liquidator is not entitled to appeal the judgments in Geden's favor).

---

[91] Although both sections 1520(a)(1) and 1521(a)(1) both concern the application of a stay, the verbiage used in each section is different. *Compare* 11 U.S.C. § 1520(a)(1) (applying the automatic stay "*with respect to* the debtor and the property of the debtor") (emphasis added) *with id.* at § 1521(a)(1) (providing for the discretionary stay of proceedings "*concerning* the debtor's assets, rights, obligations or liabilities" (emphasis added). Advantage has been unable to find any caselaw or legislative history illuminating the difference in statutory text but submits that because Geden is not a party to the PA Appeal, such appeal is not "with respect to" Geden but could be seen as "concerning" Geden.

[92] *See Order Granting Debtor's Emergency Motion for Entry of an Order (I) Granting Emergency Provisional Relief for Issuance of the Automatic Stay, and (II) Related Relief* [Docket No. 13].

[93] *Debtor's Emergency Motion for Entry of an Order (I) Granting Emergency Provisional Relief for Issuance of the Automatic Stay, and (II) Related Relief* [Docket No. 4] (the "**Provisional Relief Motion**") at ¶¶ 15–16.

42.     On balance, the interests of Advantage Award and other parties to the PA Appeal in allowing the appeal to proceed far outweigh Geden's (and the Liquidator's) interest in delaying a proceeding in which it is not participating and cannot participate. The Bankruptcy Court does not need to, and should not, enable Eclipse to manipulate another entity's liquidation to stave off its own inevitable defeat.

## CONCLUSION

43.     Based on the reasons set forth above, the Bankruptcy Court should deny the Foreign Representative's Petition for Recognition, or in the alternative not stay the Pennsylvania State Court Proceeding, and grant such other, further and different relief as to it seems just and proper.

Dated: May 28, 2025

Respectfully submitted,

**PACHULSKI STANG ZIEHL & JONES LLP**

By: */s/ Steven W. Golden*
        Michael D. Warner (TX Bar # 00792304)
        Steven W. Golden (TX Bar # 24099681)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone: (713) 691-9385
mwarner@pszjlaw.com
sgolden@pszjlaw.com

and

        Jordan A. Kroop (pro hac vice forthcoming)
        Jeffrey M. Dine (pro hac vice forthcoming)
1700 Broadway, 36th Floor
New York, NY 10019
Telephone: (212) 561-7734
jkroop@pszjlaw.com
jdine@psjzlaw.com

*Counsel for Advantage Award Shipping, LLC*

**CERTIFICATE OF SERVICE**

I CERTIFY that on May 28, 2025, a true and correct copy of the above and foregoing pleading was caused to be served electronically through this Court's CM/ECF noticing system on parties registered to receive electronic notices in this case under the Electronic Filing Procedures in this District, including the United States Trustee and counsel for the Foreign Representative.

*/s/ Steven W. Golden*
Steven W. Golden