**<u>EXHIBIT 7</u>**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| TANK PUNK, INC. | § | |
| Plaintiff, | § | No. 4:15-CV-_____ |
| | § | |
| v. | § | ADMIRALTY |
| | § | |
| SPIKE SHIPPING LTD.; ADVANTAGE | § | |
| ANTHEM SHIPPING, LLC; GENEL | § | |
| DENIZCILIK NAKLIYATI A.S. A/K/A GEDEN | § | |
| LINES; ADVANTAGE TANKERS, LLC; | § | |
| ADVANTAGE HOLDINGS, LLC; and | § | |
| FORWARD HOLDINGS, LLC, | § | |
| | § | |
| Defendants. | § | |

## ORIGINAL VERIFIED COMPLAINT

COMES NOW Plaintiff, TANK PUNK, INC., by and through undersigned counsel, for its

Original Verified Complaint against Defendants: SPIKE SHIPPING LTD.; ADVANTAGE

ANTHEM SHIPPING, LLC; GENEL DENIZCILIK NAKLIYATI A.S. A/K/A GEDEN LINES;

ADVANTAGE TANKERS, LLC; ADVANTAGE HOLDINGS, LLC, and FORWARD

HOLDINGS, LLC alleges and pleads as follows:

### I. JURISDICTION, VENUE AND PARTIES

1.      This is an admiralty and maritime claim within the meaning of rule 9(h) of the

Federal Rules of Civil Procedure, in that it involves claims for the breach of a maritime contract

*i.e.* an executed bareboat charter party for the employment of a seagoing cargo vessel and a

principal obligor's performance guarantee. This case also falls under this court's admiralty and

maritime jurisdiction pursuant to 28 U.S.C. § 1333, and is brought under the provisions of Rule B

of the Supplemental Rules For Certain Admiralty and Maritime Claims, and the Federal Arbitration Act, 9 U.S.C. §§ 4, 8 in aid of maritime arbitration.

2.      At all times material hereto Plaintiff, TANK PUNK, INC. (hereinafter "TANK" or "Plaintiff"), was a corporation organized under the laws of the Republic of the Marshall Islands and the registered owner of the Motor Tanker SPIKE, a crude oil tanker vessel registered in Malta.

3.      At all times material hereto Defendant, SPIKE SHIPPING LTD. (hereinafter "SPIKE SHIPPING"), was and is a foreign company organized under the laws of Malta and the bareboat charterer of the M/T SPIKE under a bareboat charter party contract dated March 26, 2010 ("the bareboat charter"). A copy of the bareboat charter is attached hereto as **EXHIBIT 1.**

4.      At all times material hereto Defendant, ADVANTAGE ANTHEM SHIPPING, LLC (hereinafter "ANTHEM SHIPPING") was, and is a corporate entity organized under the laws of the Republic of the Marshall Islands, and the registered owner of Motor Tanker ADVANTAGE ANTHEM, a tanker vessel registered in the Marshall Islands, with IMO No. 9419448 and international call sign V7K27.

5.      At all times material hereto Defendant, GENEL DENIZCILIK NAKLIYATI A.S. A/K/A GEDEN LINES (hereinafter "GEDEN") was, and is a foreign corporate entity organized under the laws of Turkey, and the Manager and ISM Manager of the SPIKE and the ADVANTAGE ANTHEM, and the guarantor of the performance of the SPIKE under the bareboat charter (s*ee* **EXHIBIT 1**, at box 4); *see* also attached copies of the GEDEN webpage hereto attached as **EXHIBIT 2**.

6.      At all times material hereto, ADVANTAGE TANKERS, LLC (hereinafter "ADVANTAGE TANKERS") was a foreign limited liability company organized under the laws

2

of a country other than the United States, and as a holding company owns 100% of defendant ANTHEM SHIPPING.

7.      At all times material hereto ADVANTAGE HOLDINGS, LLC (hereinafter "ADVANTAGE HOLDINGS") was a foreign limited liability company organized under the laws of a country other than the United States, and as a holding company owns 100% of defendant ADVANTAGE TANKERS.

8.      At all times material hereto, FORWARD HOLDINGS, LLC (hereinafter "FORWARD HOLDINGS") was a foreign limited liability company organized under the laws of a country other than the United States, and as a holding company owns 100% of defendant ADVANTAGE HOLDINGS.

9.      The jurisdiction of this Honorable Court is founded on the presence within the District of property of the Defendants that may be attached by process of maritime attachment and garnishment under the provisions of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, as pled more fully in Section V of this Original Verified Complaint.

## II. THE SUBSTANTIVE CLAIMS

10.     Under the bareboat charter party dated March 26, 2010 (**EXHIBIT 1**), Plaintiff chartered its vessel SPIKE for a period of five years plus or minus 30 days and a daily charter rate of USD 15,246.00 to "Geden Holdings Limited, Malta or nominee always guaranteed by Geden Line." GEDEN is a joint and several obligor of Plaintiff under the performance guarantee recited in the bareboat charter party. *See* **EXHIBIT 1**, box 4.

11.      Plaintiff delivered the vessel into the bareboat chartered service under the charter, and rendered, and continued to render the contractual performance required of it. However, Defendants, SPIKE SHIPPING and GEDEN, (hereinafter collectively referred to as "Charterers"),

failed and refused to perform their obligations under the bareboat charter party contract and are in default and indebted to Plaintiff for various sums, which are due and owing, as set out below.

12. The Charterers continued to employ the SPIKE under charter to third parties until the date of the vessel's redelivery on August 7, 2015.

13. In breach of their obligations under the bareboat charter party, the Charterers redelivered the vessel with several items of her machinery, appliances, and appurtenances damaged, which are identified in the joint redelivery survey, all of which Charterers failed to repair or replace same as required.

14. In breach of their obligations under the bareboat charter party, the Charterers redelivered the vessel without having applied a 60 month coating at the drydocking they performed during April 8-15, 2015 as they were obligated to do under clause 19 of the bareboat charter party.

15. Plaintiff's cost for effecting the repairs, drydocking, and applying the coating identified in ¶¶ 13 and 14 above is reasonably estimated to be in the amount of USD 1,070,000.00

16. In order for Plaintiff to rectify the damaged conditions of the machinery, appurtenances, and appliances and restore the vessel to the state in which she should have been redelivered to her owners at the time of redelivery, it will be necessary for the vessel's current bareboat charter employment to be interrupted for a minimum of 35 days and for her to be placed off hire during this period at a loss of  USD 35,000.00 daily (her current bareboat charter rate), which will result in a net loss to Plaintiff of USD 1,225,000.00 – an amount which the Owners of the SPIKE are claiming in London maritime arbitration.

17. Accordingly, the owners of the SPIKE are owed contract damages for the redelivery of the vessel in an unrepaired state, without the contractually agreed 60 month coating, and 35 days of anticipated off hire totaling USD 2,295,000.00, together with interest and legal costs.

18.     Plaintiff has filed points of claim in London arbitration, which is already underway, seeking to recover the said additional sum of USD 2,295,000.00.

### III. UNDERLYING PROCEEDINGS ON THE MERITS

19.     Box 35 and clause 30(a) of the bareboat charter party (**EXHIBIT 1**) provide for arbitration of all disputes arising out of the contract in London.  Plaintiff intends to claim the full outstanding amount in London arbitration.

20.     Plaintiff estimates the legal costs that will be incurred to pursue these claims in London maritime arbitration proceedings will be approximately USD 200,000.00.   As it is customary in London arbitration, legal costs, including lawyers' fees are awarded to the prevailing party.

21.     This action is an ancillary proceeding, brought in order to obtain jurisdiction over Defendant Charterers and to obtain security for Plaintiff's claims in the London proceedings.

### IV. DEFENDANTS' CORPORATE IDENTITY

22.     Notwithstanding their formal separate incorporation, the Defendants are in actual fact a single business enterprise pursuing functionally differentiated business objectives through nominally separate business structures, but always subject to the command and control of Defendant GEDEN, which is the parent company of Defendants SPIKE SHIPPING, ANTHEM SHIPPING, ADVANTAGE TANKERS, ADVANTAGE HOLDINGS, and FORWARD HOLDINGS, and is more specifically pled hereunder.

23.     When Plaintiff entered in the bareboat charter party with Defendant SPIKE SHIPPING guaranteed by its parent GEDEN, and subsequently throughout the years of performance, GEDEN represented itself as the owner and operator for profit of a fleet of tanker

5

and dry cargo vessels and the operator for profit of non-owned chartered-in ships.  *See e.g.*
**EXHIBIT 2**; *see also* representations made at p. 40, of a true and correct copy of an initial public
offering prospectus dated June 19, 2012, attached hereto as **EXHIBIT 3** and hereinafter referred
to as "the GEDEN Prospectus."

      24.     Under the GEDEN Prospectus, the company holding the shares of the GEDEN fleet
of tankers was a Maltese holding company, Geden Holdings, Ltd.  The fleet of vessels owned by
GEDEN included, among others, the Motor Tanker POWER (*Id*., **EXHIBIT 3**[1] at pp. 77, 85, 86;
87).  (*See* also pp. 12 and 17 in copy of a restructuring proposal prepared in 2013 for Defendant
Genel Denizcilik Nakliyati A.S. by Alix Partners relating to changing the  ownership structure of
Genel Denizcilik Nakliyati A.S in 2013 attached hereto as **EXHIBIT 4**).  This document was filed
in the record of the case *Icon Amazing, LLC v. Amazing Shipping, LTD. et al* in the Southern
District of Texas as ECF Doc. 33-6 in Civil Action 13-cv-01449.  The M/T POWER was registered
in the name of a single ship owning corporate entity, Barbaros Maritime, Ltd. (**EXHIBIT 3** at p.
85), which was entirely owned by GEDEN.  *Id*. at p. 29.

      25.     Ultimately, the M/T POWER and all other vessels of the GEDEN fleet of tankers
and dry cargo vessels, were controlled by Defendant GEDEN (**EXHIBIT 3** at pp.77-78;
**EXHIBIT 4** at pp. 2, 10), which in turn was controlled by Cukurova Group, a leading Turkish
conglomerate, ultimately and beneficially owned by members of the Karamehmet family. *See*
**EXHIBIT 3** at pp. 76-77.

      26.     GEDEN publicly held out the vessels it owned through one-ship-companies,
including the M/T POWER, as its own assets. *See* **EXHIBIT 3** at p. 29 and **EXHIBIT 4** generally.

---

[1]  The entire prospectus is approximately 230 pages.  For this Original Verified Complaint, Plaintiff has included the
introductory pages of the prospectus and relevant excerpts referred to herein.  Plaintiff will provide the complete
prospectus should this Honorable Court request a copy of same.

Even though each vessel in the fleet of GEDEN, which had not been chartered-in or leased-in from a third party, was registered in the name of an individual one-ship-company[2]; GEDEN, beneficially owned and operated these vessels as assets of a single business enterprise. The purported corporate independence of the respective "SPV" vessel owners was simply fictitious, as they were entirely subjugated to GEDEN's business goals and policies, which were implemented by GEDEN management and staff.

27.     In this process, the GEDEN SPV's were mere limbs and organs of a larger corporate organism, as evidenced by the common business strategy GEDEN had pursued in order to cope with the current shipping market crisis, and the - unsuccessful - attempt to spin off an initial public offering in which the assets of the "subsidiaries" were identified as assets of the GEDEN group. *See* **EXHIBIT 3** at p. 40.

28.     According to the information publicly disclosed by GEDEN, BARBAROS MARITIME, LTD., which owned the M/T POWER, was entirely owned by GEDEN. *See* **EXHIBIT 2** generally.

29.     Throughout the portion of the bareboat charter term already performed, SPIKE SHIPPING, remained as spelled out in the charter, a "nominee" (*See* **EXHIBIT 1**, box 4) performing a merely nominal role with all of Plaintiff's business under the charter actually being transacted with GEDEN, for and on behalf of GEDEN and SPIKE SHIPPING.

30.     Defendants GEDEN and SPIKE SHIPPING (as well as Geden Holdings Ltd.) have had common officers, common directors, common parent companies, and common beneficial owners as follows: Mr. M. Bülent Ergin, was director of GEDEN, Geden Holdings Ltd., and Çukurova Holding A.S; Mr. A. Tugrul Tokgöz was on the board of directors of GEDEN, Geden

---

[2] Referred to by the said defendant as an "SPV" *i.e.* a "special purpose vehicle." *See* EXHIBIT 4 pp. 29, 170

Holdings Ltd., and Çukurova Holding A.S;  Mr. Mehmet Mat was the chief financial officer of GEDEN and Geden Holdings Ltd. (*See* **EXHIBIT 3** at pp. 100-101).  The ownership of GEDEN; Geden Holdings Ltd.; and Cukurova Holding AS was entirely in the hands of the Karamehmet family in Turkey.  *Id*., **EXHIBIT 3** at pp. 5, 76-77; 151.

31.    According to the shipping database EQUASIS, under the history of the M/T POWER,  though  her listed ownership was in Barbaros Maritime, Ltd.,  GEDEN always held and continues to hold the International Safety Management Code Document of Compliance for M/T POWER (*See*: copy of EQUASIS database record hereto attached as **EXHIBIT 5;** copy of the vessel's record of ISM certification hereto attached as **EXHBIT 6**); and also holds the certificate of financial responsibility (COFR) for the same vessel. (*See* Record of Certificate of Financial Responsibility issued by the U.S. Coast Guard hereto attached as **EXHIBIT 7**).

32.    Beginning in March 2013, hire payments to Plaintiff and to other vessel owners who had similar bareboat chartering arrangements became at intervals, erratic and often late.

33.    By making diligent enquiries in the shipping market and closely following the performance of the Geden Group, Plaintiff learned that GEDEN was contemplating and considering in consultation with its financing banks to radically change the corporate ownership structure of its shipping business in a manner likely to involve wholesale repudiation of charter parties and shifting of its assets under new corporate ownership that would severely compromise its ability to honor its obligations under its performance guarantee and similarly the ability of  its wholly  owned  subsidiaries',  including  the  ability  of  SPIKE  SHIPPING,  to  render  their performance.

34.    More specifically, the record in a civil action previously filed in the United States District Court for the Southern District of Texas disclosed a document authored by business

Consultants of Geden (**EXHIBIT 4**) which outlined a restructuring plan, which among other things would:

    A.    Expropriate Geden of its shipping assets (vessels) from its subsidiaries that owned them "into appropriate newcos" (new corporate entities) for the purpose of making the assets unreachable by creditors to whom Geden and respective subsidiaries had undertaken important obligations, a process that Geden and its consultants have characterized as "Ring-fence potential sources of disruption, holdouts, or nuisance (such as arrests or sister-ship arrests)". **EXHIBIT 4** at p 7;

    B.    Establish the successor corporate entities ("newcos") of Geden with such a shareholding structure as to minimize the risk of the assets being arrested by unpaid creditors. **EXHIBIT 4** at p. 40;

    C.    Relegate creditors who have extended non-financing credit to the Geden group of companies to a "Group D" status outside the "privileged" creditors of the "newco" groups. Such creditors included Plaintiff and other owners within the Stealth group who have bareboat chartered vessels to the Geden Group. **EXHIBIT 4** at p. 7.

35.    With the improvement of the tanker market in early 2015, Defendant GEDEN, with the cooperation of its financing banks, set out to implement its plan of changing the ownership structure of their business by taking the following specific actions.

36.    Defendant GEDEN caused the SPV's which controlled nine (9) of its largest and most profitable tankers to sell them to a new set of one – ship - companies ("newco's"), as it had planned and contemplated to do under its re-structuring scheme noted in the foregoing, and as detailed in **EXHIBIT 3** and **EXHIBIT 4**, and had these vessels re-named and reflagged – from the Maltese to the Marshall Islands flag. Thus the ownership/flag/name of the ships was changed

as follows:

FORMER NAME: **PROFIT**
NEW NAME: **ADVANTAGE SOLAR**
FORMER OWNER: **PROFIT SHIPPING LTD**
NEW OWNER: **ADVANTAGE SOLAR SHIPPING LLC**
-----------------------------------------------------------------
FORMER NAME: **TARGET**
NEW NAME: **ADVANTAGE ARROW**
FORMER OWNER: **TARGET SHIPPING LTD.**
NEW OWNER: **ADVANTAGE ARROW SHIPPING LLC**
-------------------------------------------------------------------
FORMER NAME: **TRUE**
NEW NAME: **ADVANTAGE AVENUE**
FORMER OWNER: **TRUE SHIPPING LTD.**
NEW OWNER: **ADVANTAGE AVENUE SHIPPING LLC**
---------------------------------------------------------------------
FORMER NAME: **BLUE**
NEW NAME: **ADVANTAGE SKY**
FORMER OWNER: **BLUE SHIPPING LTD.**
NEW OWNER: **ADVANTAGE SKY SHIPPING LLC**
--------------------------------------------------------------------
FORMER NAME: **PINK**
NEW NAME: **ADVANTAGE SUMMER**
FORMER OWNER: **PINK SHIPPING LTD.**
NEW OWNER: **ADVANTAGE SUMMER SHIPPING LLC**
--------------------------------------------------------------------

FORMER NAME: **BLANK**
NEW NAME: **ADVANTAGE START**
FORMER OWNER: **BLANK SHIPPING LTD.**
NEW OWNER: **ADVANTAGE START SHIPPING LLC**
--------------------------------------------------------------------
FORMER NAME: **REEF**
NEW NAME: **ADVANTAGE SPRING**
FORMER OWNER: **REEF SHIPPING LTD**
NEW OWNER: **ADVANTAGE SPRING SHIPPING LLC**
------------------------------------------------------------------
FORMER NAME: **BRAVO**
NEW NAME: **ADVANTAGE ATOM**
FORMER OWNER: **BRAVO SHIPPING LTD.**
NEW OWNER: **ADVANTAGE ATOM SHIPPING LLC**
------------------------------------------------------------------
FORMER NAME: **POWER**
NEW NAME: **ADVANTAGE ANTHEM**
FORMER OWNER: **BARBAROS MARITIME LTD.**

NEW OWNER: **ADVANTAGE ANTHEM SHIPPING LLC**
-------------------------------------------------------------------------

37.    At the same time, Defendant GEDEN transferred the legal and equitable title to the ownership of the said vessels from Geden Holdings, Ltd. to another new holding company *i.e.* Defendant ADVANTAGE TANKERS.

38.    ADVANTAGE TANKERS is 100% owned by another holding company, *i.e.* Defendant ADVANTAGE HOLDINGS, which in turn is 100% owned by Defendant FORWARD HOLDINGS.

39.    FORWARD HOLDINGS is 85% owned by Mrs. Gulsun Nazil Karamehmet , Williams and 15% by Mr. Ali Tugrul Tokgoz.  Mrs. Karamehmet Williams is the daughter of the principal owner of the business group Mr. Mehmet Emin Karamehmet.

40.    Attached hereto and marked as **EXHIBIT 8,** is a diagrammatic representation of the ownership / control structure of  the GEDEN-owned SPV's following the change of holding companies - as noted in the foregoing - captioned "SCHEDULE II – Organizational Chart",  which is extracted from the Marshall Islands Vessel Register record of a Mortgage dated April 2, 2015 "in respect of the vessel M.V. "ADVANTAGE ARROW" ex "TARGET"", and a "Loan Facility Agreement relating to the financing of  MV "TRUE" (tbr "ADVANTAGE AVENUE" and MV "TARGET" (tbr "ADVANTAGE ARROW").[3]

41.    With specific reference to the M/T POWER, analogous changes were made to the registration and ownership structure of the vessel as follows:  the vessel was sold by her previous owner Barbaros Maritime Ltd., to her present owner Advantage Anthem Shipping, LLC and was renamed ADVANTAGE ANTHEM (*See* Loan Agreement Document extract from p. 24 of loan agreement dated May 13, 2015 excerpts of which are hereto attached as **EXHIBIT 9**).  The holding

---

[3]  For the sake of brevity extracts from this record will be referred to as "Mortgage Record Extract".

company of the corporate owner of the vessel became AVANTAGE TANKERS LLC, which also became the loan agreement guarantor (*Id.* at p. 12), and the commercial manager remained Genel Denizcilik Nakliyati A.S. *i.e.* Defendant Geden Lines *Id.* at p. 5, which also remained the vessel's technical manager. *See* Extract from mortgage on the ADVANTAGE/ ANTHEM dated May 13, 2015, hereinafter referred to as **EXHIBIT 10, at p 14 ¶ 6.27.** Under the mortgage agreement, the ADVANTAGE ANTHEM is cross-collateral for loans extended to Advantage Anthem Shipping, LLC; Advantage Atom Shipping, LLC; and Advantage Award Shipping LLC.

42.     By restructuring the corporate ownership of its most valuable assets, siphoning them out to other nominee companies, and "ring-fencing" them with various layers of corporate shells for the express purpose of making them inaccessible as a source of recourse to creditors to whom GEDEN and its wholly owned subsidiaries are indebted, GEDEN and its co-defendants actively abused the corporate form for the express wrongful purpose of defeating legitimate claims of creditors whose assets GEDEN and its co-defendants have used, and are continuing to use to enrich themselves.

43.     The M/T ADVANTAGE ANTHEM is one of the assets which is beneficially owned by Defendant GEDEN, and the said Defendants have tried to "ring-fence" out unpaid creditors, including Plaintiff by means of transferring her legal ownership, and changing her registration in order to prevent said creditors from attaching her as a source of security. But notwithstanding appearances, ownership, and control over the said vessel, it remains with the same beneficial owners as and when she was named POWER and was registered in Malta.

44.     By reason of the relationship of complete dominion and control Defendant GEDEN has exercised over their subsidiaries ANTHEM SHIPPING and SPIKE SHIPPING, taking into consideration the foregoing facts and circumstances, it would be just, equitable, and proper for

the Court to exercise its equitable powers to pierce the corporate veil of ANTHEM SHIPPING as

an alter ego of GEDEN, SPIKE SHIPPING, ADVANTAGE TANKERS, ADVANTAGE

HOLDINGS, and FORWARD HOLDINGS so that the vessel M/T ADVANTAGE ANTHEM or

any substitute security standing in its place may be attached with process of maritime attachment

and garnishment as a source of security for Plaintiff's claims in maritime arbitration.

## V. APPLICATION FOR ATTACHMENT UNDER SUPPLEMENTAL ADMIRALTY RULE B

45.     None of the Defendants are present or can be found in the District within the

meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Law Claims.

*See Attorney Declaration of George Gaitas attached hereto as* **EXHIBIT 11**.   Nevertheless,

Defendants have within the District tangible or intangible personal property in the hands of parties

who may be named garnishees in the process of maritime attachment and garnishment consisting

of debts, credits, or effects.

46.     More particularly, there is on deposit in the registry of the Court, the sum of USD

1,183,088.00 as substitute security in Civil Action 1:15-cv-00355-RC for the claims of the plaintiff

in said civil action.

47.   The said amount of USD 1,183,088.00 is property of Defendants ADVANTAGE

ANTHEM SHIPPING, LLC; GENEL DENIZCILIK NAKLIYATI A.S. A/K/A GEDEN LINES;

ADVANTAGE TANKERS, LLC; ADVANTAGE HOLDINGS, LLC; and FORWARD

HOLDINGS, LLC that may be attached as security in respect of the claims of Plaintiff TANK

PUNK, INC. in London maritime arbitration, which have not been already secured.

48.     Defendant GEDEN used and is continuing to use its purported corporate

separateness, and the purported separate incorporation of its surrogate subsidiaries, SPIKE

SHIPPING, ANTHEM SHIPPING, ADVANTAGE TANKERS, ADVANTAGE HOLDINGS,

and FORWARD HOLDINGS abusively, to wit: to engage in fraudulent corporate restructuring and asset allocation practices to avoid paying agreed and accrued hire, for the M/T SPIKE and to repudiate with impunity their obligations under the bareboat charter party.

49. Defendant GEDEN has contracted with Plaintiff using its completely dominated surrogate shell entities SPIKE SHIPPING, ANTHEM SHIPPING, ADVANTAGE TANKERS, ADVANTAGE HOLDINGS, and FORWARD HOLDINGS as alter egos, intending to reap all the benefits but pay none of the costs. Defendants are accordingly, using the corporate form abusively, *i.e*. to perpetrate fraud and commit other injustice. It would be, accordingly, fair and equitable to pierce (or reversely pierce) the corporate veil of GEDEN, SPIKE SHIPPING, ANTHEM SHIPPING, ADVANTAGE TANKERS, ADVANTAGE HOLDINGS, and FORWARD HOLDINGS in order to reach the full amount of the substitute security the Defendants have deposited in the registry of the Court.

50. Alternatively, Defendants having operated, at all relevant times, as a single enterprise, and being the *alter ego* of each other in the circumstances set in the above and foregoing Original Verified Complaint, it would be fair and equitable for any asset of this enterprise to be subject to the claims of judgment creditors of the enterprise, such as Plaintiff, and for any such assets to be attached as security for Plaintiff's maritime claims.

51. Plaintiff has maritime claims against the Defendants arising out of maritime contract (*i.e*. – the bareboat charter party with GEDEN and SPIKE dated March 26, 2010 and the performance guarantee of GEDEN of the same date).

52. The amount of Plaintiff's claim as reasonably as it can be estimated is as follows:

| | | |
|---|---|---|
| A. Repairs, drydocking, and 60 month coating | $ | 1,070,000.00 |
| B. Off hires 35 days @ $ 35,000 | $ | 1,225,000.00 |

      C. Interest at 6% compounded quarterly for 1 year..........$      140,829.00

      D. Recoverable Legal Fees and Costs.......................$      200,000.00

      **Total Claim…………………………………………… $      2,635,829.00**

53.      Therefore, Plaintiff's total claim for breach of the maritime contracts against Defendants is in the aggregate sum of **USD 2,635,829.00.**

54.      Plaintiff seeks to attach the entire sum of the cash deposit in the registry of the United States District Court for the Eastern District of Texas in civil action 1:15-cv-00355-RC in the amount of USD 1,183,088.00 as security for its above noted claim in London maritime arbitration.[4]

55.      Plaintiff is informed that the said amount, which is posted as substitute security for the release of the MT ADVANTAGE ANTHEM is the property of and is claimed by GEDEN, SPIKE SHIPPING, ANTHEM SHIPPING, ADVANTAGE TANKERS, ADVANTAGE HOLDINGS, and FORWARD HOLDINGS.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff prays as follows:

A.      That process in due form of law, according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction be issued against Defendants and said Defendants be cited to appear and answer the allegations of this Original Verified Complaint;

B.      That since the Defendants cannot be found within this District pursuant to Supplemental Rule B, all of the assets of the Defendants presently within this District, or assets expected in this District during the pendency of this action, including, but not limited to, the entire

---

[4] There is also a cash deposit in the registry of the court in consolidated civil actions 4:15-cv-1673 and 4:15-cv-1675 in the United States District Court for the Southern District of Texas in the amount of $1,517,200 owned/claimed by the same Defendants (except for Anthem Shipping, LLC), which Plaintiff has also applied to attach for the claims stated in this suit.

sum of USD 1,183,088 on deposit in the registry of the Court, and/or any assets within the possession, custody or control of any other garnishee upon whom a copy of the Process of Maritime Attachment and Garnishment issued in this action may be served, be attached and garnished in an amount sufficient to answer Plaintiff's claim;

C.       That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

D.       That judgment be entered against each of the Defendants in the sum of **USD 2,635,829.00** together with interest and costs, and the proceeds of the assets attached be applied in satisfaction thereof;

E.       That the Court grant such other and further relief as it deems, just, equitable and proper.

Respectfully submitted,

Date:  November 20, 2015             CHALOS & CO, P.C.
       Houston, TX

                            By:     /s/George A.Gaitas
                                    George A. Gaitas
                                    State Bar No. 24058885
                                    Federal Bar No. 705176
                                    Houston, Texas 77055
                                    Telephone: 713-936-2427
                                    Fax: 866-702-4577
                                    E-mail:gaitas@chaloslaw.com

                                    *Attorneys for Plaintiff*
                                    TANK PUNK, INC.