**<u>EXHIBIT 19</u>**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **PSARA ENERGY, LTD.** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **SPACE SHIPPING, LTD.; GEDEN HOLDINGS** | : | No. 2:18-cv-4111 |
| **LTD.; ADVANTAGE START SHIPPING,** | : | |
| **LLC; GENEL DENIZCILIK NAKLIYATI A.S.** | : | |
| **A/K/A GEDEN LINES; ADVANTAGE** | : | |
| **TANKERS, LLC; ADVANTAGE HOLDINGS,** | : | **ADMIRALTY** |
| **LLC; FORWARD HOLDINGS, LLC;** | : | |
| **MEHMET EMIN KARAMEHMET;** | : | |
| **GULSUN NAZLI KARAMEHMET -** | : | |
| **WILLIAMS; and TUĞRUL TOKGÖZ** | : | |
| | : | |
| **Defendants** | : | |

## PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT

Plaintiff PSARA ENERGY, LTD., by and through undersigned counsel, for its Verified Complaint against Defendants: SPACE SHIPPING LTD.; GEDEN HOLDINGS, LTD.; ADVANTAGE START SHIPPING, LLC; GENEL DENIZCILIK NAKLIYATI A.S. A/K/A GEDEN LINES; ADVANTAGE TANKERS, LLC; ADVANTAGE HOLDINGS, LLC; FORWARD HOLDINGS, LLC; MEHMET EMIN KARAMEHMET; GULSUN NAZLI KARAMAEHMET - WILLIAMS; and TUĞRUL TOKGÖZ alleges and pleads as follows:

## I. JURISDICTION, VENUE, AND PARTIES

1.     This is an admiralty and maritime claim within the meaning of rule 9(h) of the Federal Rules of Civil Procedure in that it involves claims for the breach of a maritime contract, *i.e.* an executed bareboat charter party for the employment of a seagoing cargo vessel. This case also falls under this court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333, and is brought under the provisions of Rule B of the Supplemental Rules for Certain Admiralty or

Maritime Claims, and Asset Forfeiture Actions (hereinafter "Supplemental Rule B") and the Federal Arbitration Act, 9 U.S.C. §§ 4, 8 in aid of maritime arbitration.

2.     At all times material hereto Plaintiff, PSARA ENERGY, LTD. (hereinafter "PSARA" or "Plaintiff"), was a corporation organized under the laws of the Republic of the Marshall Islands and the registered owner of the Motor Tanker CV STEALTH (hereinafter "CV STEALTH" or "Vessel"), a crude oil tanker vessel registered in Malta.

3.     At all times material hereto Defendant, SPACE SHIPPING, LTD. (hereinafter "SPACE"), was and is a foreign company organized under the laws of Malta and the bareboat charterer of the M/T CV STEALTH under a bareboat charter party contract dated February 23, 2010 ("the bareboat charter"). A copy of the bareboat charter and addenda thereto are attached to this Original Verified Complaint as **EXHIBIT 1**. Though SPACE is incorporated in Malta, the business of SPACE is actually carried on entirely by Defendant GENEL DENIZCILIK NAKLIYATI A.S. a/k/a GEDEN LINES from the office facilities of GEDEN LINES at Buyukdere Cad., Yapi Kredi Plaza, A Blok K:12 34330 Levent-Istanbul-Turkey.

4.     At all times material hereto GEDEN HOLDINGS, LTD. (hereinafter "GEDEN HOLDINGS"), was and is a foreign company organized under the laws of Malta with its operating office at the office facilities of GEDEN LINES at Buyukdere Cad., Yapi Kredi Plaza, A Blok K:12 34330 Levent-Istanbul-Turkey. Though GEDEN HOLDINGS is incorporated in Malta, its business is actually carried on entirely by GEDEN LINES from its office facilities at Buyukdere Cad., Yapi Kredi Plaza, A Blok K:12 34330 Levent-Istanbul-Turkey.

5.     At all times material hereto Defendant, ADVANTAGE START SHIPPING, LLC (hereinafter "ADVANTAGE START SHIPPING"), was and is a limited liability company organized under the laws of the Republic of the Marshall Islands, and the registered owner of the

Motor Tanker ADVANTAGE START, a tanker vessel registered in the Marshall Islands, with IMO No. 9466570 and international call sign V7KY9. Though ADVANTAGE START SHIPPING is incorporated in the Marshall Islands, its business is actually carried on entirely by Defendant GEDEN LINES from its office facilities at Buyukdere Cad., Yapi Kredi Plaza, A Blok K:12 34330 Levent-Istanbul-Turkey.

6.     At all times material hereto Defendant GENEL DENIZCILIK NAKLIYATI A.S. a/k/a GEDEN LINES (hereinafter "GEDEN LINES"), was and is a foreign corporate entity organized under the laws of Turkey with its principal place of business located at Buyukdere Cad., Yapi Kredi Plaza, A Blok K:12 34330 Levent-Istanbul-Tukey.

7.     At all times material hereto ADVANTAGE TANKERS, LLC (hereinafter "ADVANTAGE TANKERS"), was a foreign limited liability company organized under the laws of the Marshall Islands.  ADVANTAGE TANKERS, LLC is a holding company that owns 100% of Defendant ADVANTAGE START SHIPPING. Though ADVANTAGE TANKERS is incorporated in the Marshall Islands, its business is actually carried on entirely by Defendant GEDEN LINES from its office facilities at Buyukdere Cad., Yapi Kredi Plaza, A Blok K:12 34330 Levent-Istanbul-Turkey.

8.     At all times material hereto ADVANTAGE HOLDINGS, LLC (hereinafter "ADVANTAGE HOLDINGS"), was a foreign limited liability company organized under the Laws of the Marshall Islands.  ADVANTAGE HOLDINGS, LLC is a holding company that owns 100% of Defendant ADVANTAGE TANKERS. Though ADVANTAGE HOLDINGS is incorporated in the Marshall Islands, its business is carried on entirely by Defendant GEDEN LINES from its office facilities at Buyukdere Cad., Yapi Kredi Plaza, A Blok K:12 34330 Levent-Istanbul-Turkey.

3

9. At all times material hereto FORWARD HOLDINGS, LLC (hereinafter "FORWARD HOLDINGS"), was a foreign limited liability company organized under the laws of the Marshall Islands. FORWARD HOLDINGS, LLC is a holding company that owns 100% of Defendant ADVANTAGE HOLDINGS. Though FORWARD HOLDINGS is incorporated in the Marshall Islands, its business is actually carried on entirely by Defendant GEDEN LINES from its office facilities at Buyukdere Cad., Yapi Kredi Plaza, A Blok K:12 34330 Levent-Istanbul-Turkey.

10. At all times material hereto, MEHMET EMIN KARAMEHMET (hereinafter "EMIN KARAMEHMET") is an individual person and a citizen and resident of the Republic of Turkey and, respectively, through a Panamanian corporation that he entirely controls - Buselten Finance, S.A - is the 100% shareholder of GEDEN HOLDINGS and SPACE SHIPPING. Through another Turkish business entity he controls - Cukurova Holdings - he is 100% shareholder of Defendant GEDEN LINES.

11. At all times material hereto Tuğrul Tokgöz (hereinafter "TOKGÖZ"), is an individual person and a citizen of the Republic of Turkey and a resident of Turkey. TOKGÖZ is the Chief Executive Officer of ADVANTAGE START SHIPPING; ADVANTAGE TANKERS; and a director of GEDEN HOLDINGS and GEDEN LINES and, through the intermediary holding companies FORWARD HOLDINGS and ADVANTAGE HOLDINGS, is 15% controlling shareholder of ADVANTAGE TANKERS.

12. At all times material hereto, GULSUN NAZLI KARAMEHMET–WILLIAMS (hereinafter "KARAMEHMET WILLIAMS") is an individual person and a dual citizen of the Republic of Turkey and the Swiss Confederation, and a resident of the United Kingdom. KARAMEHMET WILLIAMS is the adult daughter and only child of EMIN KARAMEHMET,

4

and through the intermediary holding companies FORWARD HOLDINGS, ADVANTAGE HOLDINGS, she is the 85% controlling shareholder of ADVANTAGE TANKERS.

13.     The jurisdiction of this Honorable Court is founded on the presence within the District of property of the Defendants, to wit:  the M/T ADVANTAGE START that may be attached by process of maritime attachment and garnishment under the provisions of Rule B of the Supplemental Rules as pled more fully in Section **V** of this Verified Complaint.

## II. THE SUBSTANTIVE CLAIMS

14.     Under the bareboat charter party dated February 23, 2010 and addenda thereto dated:  June 2, 2010; June 21, 2010; and January 29, 2010, Plaintiff chartered its vessel CV STEALTH for a "a term of 5 years straight period +/- 30 days in Charterer's option plus 1 or 2 years optional year(s) declaration by Charterers 5 months prior end of the firm period" to "Geden Holdings Limited,[1] Malta or nominee always guaranteed by Geden Line."  *See* **EXHIBIT 1**, box 21.  The vessel was delivered to the service of the nominee of GEDEN HOLDINGS, *i.e.* SPACE, and to GEDEN LINES, and was used and operated for profit by them as part of GEDEN LINES' non-owned, chartered-in fleet.

15.     By subsequent addendum to the bareboat charter, GEDEN HOLDINGS became the performance guarantor of SPACE.  *See* **EXHIBIT 1**.  *See also* Addendum dated June 2, 2010, and performance guarantee of GEDEN HOLDINGS, dated March 4, 2010 hereto attached as **EXHIBIT 2.**

16.     Under Part II Clause 10 of the bareboat charter, SPACE was obligated to maintain the vessel in a good state of repair, with all of her class certificates up to date.

---

[1] Geden Holdings Limited (hereinafter "Geden Holdings") was a holding company incorporated in Malta. It held 100% of the shares of SPACE and 100% of the shares of several one-ship-companies as is more specifically pled in this Original Verified Complaint.

17.     Under Part II Clause 15 of the bareboat charter, SPACE was obligated to redeliver the vessel at the end of the bareboat charter party term "…in the same or as good structure, state, condition and class as that in which she was delivered, fair wear and tear not affecting class excepted."  Moreover, the same clause provides that "…upon redelivery shall have her survey cycles up to date and trading and class certificates valid for at least the number of months agreed…"

18.     Under Part II Clause 17 of the bareboat charter, SPACE was obligated "to indemnify the Owners against any loss, damage or expense incurred by the Owners arising out of or in relation to the operation of the vessel by the Charterers..." and under Rider Clause 9,  SPACE as charterer undertook to indemnify the owners of the vessel "against, all costs charges, expenses, claims proceedings (whether civil or criminal), liabilities, losses, penalties, duties and fees…and taxes thereon suffered or incurred by the Owners arising directly or indirectly in any manner out of the possession, management control, chartering, sub-chartering…use, operation, return, redelivery…of the Vessel…and regardless of when the same shall arise."

19.     Pursuant to clause 7 of a Settlement Agreement dated 8 December 2016, and entered into between Plaintiff as Owners, in settlement of interim disputes regarding an outstanding arbitration award in favor of Owners for unpaid charter hire, and Defendant SPACE as Charterers, and GEDEN HOLDINGS as performance guarantors, the hire amount payable under the Charterparty was amended to USD 9,875 per day from 1 January 2017 onwards.

20.      Plaintiff delivered the vessel into the bareboat chartered service and rendered the contractual performance required of it.  However, Defendant SPACE (hereinafter also referred to as "Charterer"), though possessing and using the CV STEALTH, has failed and refused to perform

its obligations under the bareboat charter party contract, and is in breach thereof as is further pled below.

21.    On April 10, 2014, SPACE time chartered the Vessel to ST Shipping & Transport Pte. Ltd. (hereinafter "ST"), a Singapore business entity, for a term of approximately twelve months. ST, operating out of its Stamford, Connecticut branch office, where it is registered as a foreign corporation and carries on business as a cargo ship operator, sub-chartered the vessel on a voyage charter party dated September 4, 2014 to lift a cargo up to 400,000 barrels of Venezuelan crude oil from Puerto La Cruz for discharge at a terminal in the U.S.A.

22.    The Vessel was directed by ST to Puerto la Cruz, Venezuela to load her cargo where after arriving, and tendering her notice of readiness to load, she was boarded by local police and prosecutorial authorities on or about September 13, 2014 and was detained by them on suspicion of attempting to carry a stolen cargo of crude oil.

23.    At Puerto La Cruz, the CV STEALTH was further detained by court order, and at the request of the prosecutorial authorities, for a period exceeding three years, which was beyond the agreed bareboat charter party contractual redelivery date.

24.    Under the terms of the bareboat charter, the latest date for the redelivery of the CV STEALTH to Plaintiff was on June 22, 2015.  However, SPACE, in breach of the bareboat charter, failed to redeliver her to Plaintiff - her lawful owner - and at the same time was failing to pay hire as the bareboat charter requires.

25.    Owners commenced London maritime arbitration to enforce their claims against SPACE for unpaid hires. The arbitration tribunal ruled in favor of Plaintiff, requiring SPACE to

keep paying monthly bareboat charter hire until the Vessel was released and was actually redelivered to Plaintiff.

26.     On October 3, 2017, SPACE claimed the Venezuelan authorities' detention of the CV STEALTH had terminated and gave PSARA notice of its intent to redeliver the Vessel within approximately 30 days. However, the Vessel was incapable of being redelivered as she was out of class with her attending classification society the American Bureau of Shipping. Moreover, the Vessel was so extensively damaged due to SPACE's neglect and lack of maintenance throughout her 3 years long detention that she was incapable of sailing under her own power and was in need of extensive repairs.

27.     Ultimately SPACE arranged to have the vessel towed from Puerto La Cruz, Venezuela to Port of Spain, Trinidad where she was redelivered and taken over by Plaintiff's personnel on or about March 24, 2018, out of class, and in the same heavily damaged condition as she was before she was towed by SPACE to Port of Spain.

### *Breach of Charterers' Maintenance/Redelivery Obligations*

28.     Pursuant to Clause 10(a) of Part II the bareboat charter, SPACE was under an obligation to keep the Vessel well maintained and in a good state of repair throughout the duration of the charter.  SPACE was also under an obligation to keep the Vessel's Class fully up to date and to maintain all other necessary certificates in full force at all times.

29.     Further, pursuant to Clause 15 of Part II of the bareboat charter, SPACE was obliged to:  redeliver the Vessel to Owners "in the same or as good structure, state, condition and class as that in which she was delivered, fair wear and tear not affecting class excepted"; with her survey cycles up to date and trading and class certificates valid.  Box 17 of part I of the bareboat charter required the Vessel to have passed her Special Survey dry docking without extensions.

30.     In breach of Clauses 10(a) and/or 15 of Part II and/or Box 17 of the bareboat charter, SPACE did not undertake any (or any non-negligible) maintenance on the Vessel, which since September 2014, failed to pass her Special Survey dry docking, and instead redelivered the Vessel in a severely damaged condition on 24 March 2018 with all Class and statutory certificates expired.

31.     The work needed in order for the Vessel to be restored to the required redelivery condition; to pass Special Survey; and to have all Class and statutory certificates reinstated, includes the following non-exhaustive list of works:

(i)     complete overhauling and/or repair and/or replacement of all machinery and equipment and extensive renewals of major and miscellaneous spares;

(ii)    extensive piping system renewals, overhauling of valves, sensors and gauges;

(iii)   full hull and deck blasting and extensive steel renewals and recoating;

(iv)    extensive renewal of outfitting, supports, ladders;

(v)     extensive steel renewals in cargo and ballast tanks;

(vi)    re-tubing and/or replacement of auxiliary boilers and exhaust gas boilers;

(vii)   overhauling and renewal of cargo system, cargo piping, cargo monitoring and cargo equipment and machinery;

(viii)  steam lines and heating coils renewals;

(ix)    deck machinery overhauling and renewal including cranes and their hydraulic systems;

(x)     electrical, electronics and automation system service, repair and renewal;

(xi)    extensive rewiring;

(xii)   bridge navigation and communication equipment service and renewals;

(xiii)  overhauling, repairs and renewal of steering and shafting system;

(xiv)  overhauling, service, repair and renewals of all safety equipment, firefighting systems and appliances including lifesaving equipment; and

(xv)  fitting of ballast water treatment system.

32.    As a consequence of the extensive damage to the Vessel, it would cost more to tow her to repair facilities and repair her than her (repaired) market value. Plaintiff, the Owner of the Vessel, has submitted in London Maritime arbitration a claim for damages in an amount equivalent to the (repaired) market value of the Vessel, which is USD 18,000,000.00 (EIGHTEEN MILLION U.S. DOLLARS).

### *Unpaid Bareboat Charter Hire*

33.    SPACE has failed to pay outstanding hire that was earned during the month of February 2018, for which PSARA has obtained an award from the London maritime arbitration tribunal - that has jurisdiction over the merits of the case - in the amount of USD 276,500. In addition to this amount, the arbitration tribunal has awarded PSARA Pounds Sterling 4,550.00 (USD 6,515.50)  by way of arbitration costs for this particular reference relating to the February 2018 charter hire, with annual interests on each of the two amounts at the rate of 5%, compounded quarterly.

34.    SPACE has also failed to pay Plaintiff the charter hire for the month of March 2018 in the amount of USD 233,708.33, which Plaintiff is claiming in the ongoing London maritime arbitration.

### **III. UNDERLYING PROCEEDINGS ON THE MERITS**

35.    Box 35 and clause 30(a) of the bareboat charter party (**EXHIBIT 1**) provide for arbitration of all disputes arising out of the contract in London.

36.    Plaintiff is claiming in London maritime arbitration the amount of USD

18,000,000.00 (EIGHTEEN MILLION U.S. DOLLARS) as the repaired value of the vessel; and

the unpaid hire for the month of March 2018 in the amount of USD 233,708.33, together with

interest and costs.

37.     Plaintiff is also owed charter hire for the month of February 2018 under the London

maritime arbitration award together with arbitration costs in the total amount of USD 283,015.50

38.     Plaintiff estimates the legal costs that will be incurred to pursue these claims in

London maritime arbitration proceedings will be approximately USD 400,000.00. As it is

customary in London arbitration, legal costs, including lawyers' fees, are awarded to the prevailing

party.

39.     This action is an ancillary proceeding, brought to obtain jurisdiction over Defendant

Charterer and to obtain security for Plaintiff's claims in the London maritime arbitration

proceedings.

### IV. IDENTITY OF THE CORPORATE AND INDIVIDUAL DEFENDANTS AND THEIR INTERRELATIONSHIPS

40.     In June of 2015, when SPACE had fallen substantially in arrears in its bareboat

charter hire payment obligations, and the contractual redelivery of the Vessel to Plaintiff was

approaching, Plaintiff became concerned and made enquiries regarding the status of the CV

STEALTH and the other crude oil tanker vessels that were being operated by Defendant GEDEN

HOLDINGS.  Plaintiff was astounded to discover the entire "owned" – as opposed to the

"chartered-in" fleet - of GEDEN HOLDINGS had been surreptitiously transferred to new owners,

as shown in **TABLE I** below:

**TABLE I**

| VSL FORMER NAME | FORMER OWNER | VSL NEW NAME | NEW OWNER |
|---|---|---|---|
| PROFIT | Profit Shipping, Ltd. | ADVANTAGE SOLAR | Advantage Solar Shipping, LLC |

| TARGET | Target Shipping, Ltd. | ADVANTAGE ARROW | Advantage Arrow Shipping, LLC |
|--------|----------------------|------------------|-------------------------------|
| TRUE | True Shipping, Ltd. | ADVANTAGE AVENUE | Advantage Avenue Shipping, LLC |
| BLUE | Blue Shipping, Ltd. | ADVANTAGE SKY | Advantage Sky Shipping, LLC |
| PINK | Pink Shipping, Ltd. | ADVANTAGE SUMMER | Advantage Summer Shipping, LLC |
| BLANK | Blank Shipping, Ltd. | ADVANTAGE START | Advantage Start Shipping, LLC |
| REEF | Reef Shipping, Ltd. | ADVANTAGE SPRING | Advantage Spring Shipping, LLC |
| BRAVO | Bravo Shipping, Ltd. | ADVANTAGE ATOM | Advantage Atom Shipping, LLC |
| POWER | Barbaros Maritime, Ltd. | ADVANTAGE ANTHEM | Advantage Anthem Shipping, Ltd. |
| VALUE | Value Shipping, Ltd. | ADVANTAGE AWARD | Advantage Award Shipping, LLC |
| ROYAL | Prima Shipping, Ltd. | ADVANTAGE SUN | Advantage Sun Shipping, Ltd. |

41.     Not only had the said vessels been transferred to new corporate owners, but they had been renamed and reflagged from the Maltese shipping register to that of the Marshall Islands.

42.     Investigation into the ship register/ship mortgage record of the Republic of the Marshall Islands revealed that all of the above 11 crude oil tanker vessels which were formerly owned by one-ship-companies, and in turn, 100% controlled by shareholder GEDEN HOLDINGS, had been transferred in approximately the first 5 months of 2015 - without any notice to or the knowledge of Plaintiff - to new one-ship-companies 100% controlled by a new holding company: ADVANTAGE TANKERS, LLC.  ADVANTAGE TANKERS is ultimately 85% controlled by the daughter and only child of Defendant EMIN KARAMEHMET, *i.e.* Defendant KARAMEHMET WILLIAMS and 15% by Defendant TOKGÖZ.  The said ship mortgage records contain a diagrammatic representation of the said new ownership structure which is hereto attached as **EXHIBIT 3**.

12

## A. *SUCCESSOR CORPORATION RELATIONSHIP*

43.     The grouping of the following corporate entities: ADVANTAGE TANKERS; its subsidiary ADVANTAGE START SHIPPING; ADVANTAGE HOLDINGS; FORWARD HOLDINGS; and 10 other one-ship-company entities that are subsidiaries of ADVANTAGE TANKERS[2] (said grouping hereinafter collectively referred to for the sake of brevity as "Advantage-Group") comprise, respectively, successor corporate business entities of the grouping formerly constituted of: GEDEN HOLDINGS; Blank Shipping, Ltd. GEDEN LINES; SPACE SHIPPING; and 10 other former one-ship-companies[3], as shown in TABLE I (hereinafter collectively referred to, for the sake of brevity, as "Geden-Group").

44.     As particularized in the following paragraphs 45-55, the Advantage-Group corporate entities are successor corporations of the Geden-Group corporate entities in that: a) the former have acquired and are respectively in possession of the trading assets of the latter[4] (hereinafter "the 11 tanker vessels"), as illustrated in the foregoing Table I;  b) they occupy and carry on business from the same business premises, *i.e.* Buyukdere Cad., Yapi Kredi Plaza, A Blok K:12 34330 Levent-Istanbul-Tukey;  c) they transact their business by and through identical personnel as the latter;  d) they share common officers and directors with the latter;  e) they have taken over and are servicing the same customers as were being served by the latter;  f) they have

---

[2]  Foreign limited liability companies: Advantage Solar Shipping, LLC; Advantage Sky Shipping, LLC; Advantage Start Shipping, LLC; Advantage Arrow Shipping, LLC; Advantage Avenue Shipping, LLC; Advantage Award Shipping, LLC; Advantage Atom Shipping, LLC; Advantage Summer Shipping, LLC; Advantage Spring Shipping, LLC; Advantage Sun Shipping, LLC

[3]  Foreign limited liability companies: Profit Shipping, Ltd.; Blue Shipping, Ltd.; Blank Shipping, Ltd.; Target Shipping, Ltd.; True Shipping Ltd.; Value Shipping, Ltd; Bravo Shipping, Ltd; Barbaros Maritime, Ltd; Pink Shipping, Ltd; Reef Shipping Ltd.; Prima Shipping, Ltd.

[4] The said assets are the tankers: PROFIT now renamed ADVANTAGE SOLAR; BLUE now renamed ADVANTAGE SKY; BLANK now renamed ADVANTAGE START; TARGET now renamed ADVANTAGE ARROW; TRUE now renamed ADVANTAGE AVENUE; VALUE now renamed ADVANATGE AWARD; BRAVO now renamed ADVANTAGE ATOM; POWER now renamed ADVANTAGE ANTHEM; PINK now renamed ADVANTAGE SUMMER; REEF now renamed ADVANTAGE SPRING; ROYAL now renamed ADVANATGE SUN.  For the sake of brevity these vessels will be collectively referred to as "the 11 tanker vessels".

13

virtually the same financing banks financing their business as the latter; g) they have assumed numerous of the latter's obligations, including long term charter parties with Shell Western Supply and Trading, Ltd.; h) there is continuity of shareholders, GEDEN HOLDINGS retains ultimate control over the corporate entities of the Advantage-Group that own the 11 tanker vessels; i) the controlling shareholder of GEDEN HOLDINGS and GEDEN LINES - EMIN KARAMEHMET – continues to maintain a substantial financial interest in the Advantage-Group companies, as GEDEN LINES (which is 100% controlled by him) manages and operates all of its 11 tanker vessels formerly held by the one-ship-companies of the Geden-Group; j) GEDEN LINES exercises complete control over all of the corporate entities of the Advantage-Group as its administrative, operations, technical, commercial, and safety manager; k) following the purported sale of the 11 tanker vessels, GEDEN HOLDINGS formally ceased its ordinary business operations, through its subsidiary one ship companies and wound down its remaining business of operating chartered-in tonnage. l) the transfer of the assets of the Geden-Group to the Advantage-Group was the implementation of a deliberate well planned scheme intended to ring fence assets from claims of unsecured non-lending creditors, such as Plaintiff, and frustrate their recourse.

45.     As part of a business reorganization arrangement conceived and implemented by the management of the Geden-Group, in concert with EMIN KARAMEHMET, KARAMEHMET WILLIAMS, and TOKGÖZ, the one-ship-companies of the Geden-Group "sold" the respective vessels each one of them had owned to its homologous Advantage-Group one-ship-company, with these transactions occurring approximately during the first and second quarter of 2015. The said "sales", were in actual fact part of a "reorganization" and makeover of the ownership structure, whereby newly minted corporate one-ship-companies of the Advantage-Group would take over ownership of the assets with the control, however, remaining with GEDEN HOLDINGS. *See*

"Consent Letter" agreement dated February 6, 2015 between GEDEN HOLDINGS and Shell Western Supply and Trading, Ltd. hereto attached as **EXHIBIT 4** at Bates No. D01248, at ¶ 2 thereof, wherein GEDEN HOLDINGS assures Shell Western Supply and Trading, Ltd that each of the Advantage-Group one-ship-companies would be "wholly owned by the Shareholder", *i.e.* GEDEN HOLDINGS.

46.     Notwithstanding the transfer of ownership of the respective vessels from the Geden-Group one-ship-companies, to the respective Advantage-Group one-ship-companies, all of the time charter parties under which the said respective vessels, before and at the time of the transfer, were being employed by Shell Western Supply and Trading, Ltd. continued seamlessly with the Advantage-Group one-ship-companies. This was accomplished under contractual arrangements with Shell Western, worked out by GEDEN HOLDINGS / GEDEN LINES, KARAMEHMET WILLIAMS, and TOKGÖZ, whereby the said charter parties, several of which had significant unexpired terms, were renewed for a 5-year period, at rates and on such other terms as were agreed on behalf of the Advantage-Group one-ship-companies by GEDEN HOLDINGS. *Id.* at D01248 - D01250.

47.     Notwithstanding the purported transfer of ownership of the respective vessels from the Geden-Group one-ship-companies to the respective Advantage-Group one-ship-companies, GEDEN HOLDINGS represented and warranted to the Geden-Group's sole customer - Shell Western Supply and Trading, Ltd - that it retained ownership over the Advantage-Group one-ship-companies. *Id*. at Bates No. D01248, at ¶ 2 thereof. Said representations and warranties regarding the ultimate ownership and control of the Advantage-Group one-ship-companies by GEDEN HOLDINGS were accepted by Shell Western Supply and Trading, Ltd in agreeing to enter into new time charters with the said Advantage-Group one-ship-companies. *See* relevant extract from

15

the deposition of the General Manager of Shell Western Supply & Trading, Ltd. specifically identifying GEDEN HOLDINGS as the "shareholder" retaining the ultimate control over the Advantage-Group one-ship-companies, hereto attached as **EXHIBIT 5.**

48.     Notwithstanding the transfer of ownership of the respective vessels from the Geden-Group one-ship-companies to the respective Advantage-Group one-ship-companies, all day-to-day shore-side operations of the 11 tanker vessels continue to be performed by and through GEDEN LINES, including safety management, security management, crewing, victualing, supplying, technical monitoring and supervision, drydocking, repairs, accounting, insuring, and generally every function necessary in order to keep and maintain the said vessels trading as merchant vessels in the same manner and to the same extent that GEDEN LINES had performed before the said transfer of ownership of the 11 tanker vessels. *See e.g.* Ship Management Agreement for the M/T ADVANTAGE START dated February 10, 2015, hereto attached as **EXHIBIT 6** at pp. 2475-2484; *See* also extracts from the Loan Agreement for the ADVANTAGE START dated March 16, 2015 with CIT Finance LLC (hereinafter "CIT") , hereto attached as **EXHIBIT 7** defining "Manager " as Genel Denizcilik Nakliyati A.S. "commercial and technical manager of each vessel under a Management Agreement and as corporate administrator of each borrower and the Guarantor" (at p. 14 of the loan agreement);  and**,** providing for a "Manager's Undertaking" whereby the manager, GENEL DENIZCILIK, is required to continue acting in these capacities throughout the period of the loan.

49.     The operation and management of the 11 tanker vessels of the Advantage-Group is performed by EMIN KARAMEHMET's GEDEN LINES, using the same employees; working out of the same address (Buyukdere Ca., Yapi Kredi Plaza, A Blok K: 12 34330-Levent-Istanbul-Turkey), as before the transfer of the 11 tanker vessels to the Advantage-Group.

50.     Notwithstanding the transfer of ownership of the 11 tanker vessels from the Geden-Group one-ship-companies to the respective Advantage-Group one-ship-companies, the majority of the lenders that financed the acquisition of the vessels by the Advantage-Group one-ship companies remained the same, with new rollover-like refinancing arrangements and ship mortgaging arrangements having been negotiated and worked out by GEDEN HOLDINGS / GEDEN LINES executives and directors on behalf of ADVANTAGE TANKERS.  *See* **EXHIBIT 4** at ANNEX I.

51.     Notwithstanding the transfer of the 11 tanker vessels from the Geden-Group to the Advantage-Group, GEDEN LINES, which is controlled by EMIN KARAMAHMET, continues to maintain a substantial financial interest in the 11 tanker vessels enjoying a significant economic benefit as operator and manager of the ADVANTAGE TANKERS fleet of approximately USD 4,015,000.00 annually as compensation for its services.

52.     Notwithstanding the transfer of the 11 tanker vessels from the Geden-Group to the Advantage-Group, GEDEN LINES, in its capacity as the sole operator and manager of the 11 tanker vessels, and thereby its controlling shareholder EMIN KARAMEHMET, exercise complete control over all of the operational, technical, and all other business activities of the 11 one-ship-companies of the Advantage-Group.

53.     GEDEN HOLDINGS, GEDEN LINES, ADVANTAGE TANKERS, and the respective one-ship-companies of the Geden-Group and Advantage-Group have in common key management personnel including: the same Chief Executive Officer, who is also a director of GEDEN HOLDINGS, GEDEN LINES and ADVANTAGE TANKERS; and the same Chief Financial Officer, who is also a director of GEDEN HOLDINGS.

54.     Following the "sale" of the 11 tanker vessels, their respective former one-ship-

17

company owners ceased to own vessels.

55. The holding company role of GEDEN HOLDINGS and the one-ship-companies of the Geden-Group, following the transfer of the 11 tanker vessels, was taken over by ADVANTAGE TANKERS and its subsidiary one-ship-companies. ADVANTAGE TANKERS and its subsidiary one-ship-companies thereby have assumed the obligations previously incumbent on GEDEN HOLDINGS and its one-ship-subsidiaries.

56. By reason of the foregoing facts pled in averments ¶¶ 45-55, ADVANTAGE TANKERS and the one-ship-companies it holds, and GEDEN HOLDINGS and the one-ship-companies and single-vessel chartering companies it holds, have either entered into a *de facto* merger; or ADVANTAGE TANKERS and the one-ship-companies it holds are a mere continuation of the business of GEDEN HOLDINGS.

57. In the alternative, the transfer of the assets of the Geden-Group to the Advantage-Group in the manner set out in the foregoing averments ¶¶ 45-55 was a transaction entered into by the parties involved to avoid liabilities.

58. The one-ship companies that formerly owned the 11 tanker vessels were absorbed by the Advantage-Group, as evidenced by the identity of assets, location, management, personnel, and stockholders.

59. Accordingly, ADVANTAGE TANKERS and the one-ship-companies it holds, including ADVANTAGE START SHIPPING, are liable for Plaintiff's claims respectively as the successor corporations of EMIN KARAMEHMET - controlled GEDEN HOLDINGS, SPACE SHIPPING and BLANK SHIPPING, LTD, and the M/T ADVANTAGE START may be attached as security for Plaintiff's claims.

18

### B. FRAUDULENT TRANSFER ALLEGATIONS

60.     Plaintiff realleges ¶¶ 1-59 of the above and foregoing Original Verified Complaint and further avers as follows:

61.     In agreeing to bareboat charter its vessel the CV STEALTH to SPACE, a Maltese corporation without any known tangible assets or business performance record, and to accept the performance guarantee of GEDEN HOLDINGS Plaintiff relied on express affirmative representations of fact made on behalf of GEDEN HOLDINGS / GEDEN LINES by their common CEO and director TOKGÖZ.  Specifically, TOKGÖZ represented that GEDEN HOLDINGS was the parent company of the "special purpose companies", *i.e.* the-one-ship companies which at the time owned the 11 tanker vessels.  A Copy of the March 4, 2010 letter of GEDEN HOLDINGS containing such representations in writing is hereto attached as **EXHIBIT 8**.

62.     The performance guarantee of GEDEN HOLDINGS (**EXHIBIT 2**) contemporaneously issued with the March 4, 2010 letter, is a continual guarantee extending over the entire duration of the performance of the charter party, and indeed, for at least 7 years past the delivery of the vessel, and specifically provides in relevant part that that it is given in consideration of Plaintiff's refraining from arresting or otherwise detaining any of the assets of GEDEN HOLDINGS.

63.     Plaintiff relied on the representations made in the March 4, 2010 letter (**EXHIBIT 8**), particularly the representation that GEDEDN HOLDINGS owned and would continue to own through its one-ship-companies the 11 tanker vessels, and thereby agreed to continue chartering the CV STEALTH to SPACE and accept the performance guarantee of GEDEN HOLDINGS.

64.     GEDEN HOLDINGS purports that during the first 5 months of 2015, it divested itself of its entire interest in the 11 tanker vessels and "sold" same to the Defendants comprising

the Advantage-Group through legitimate arm's length transactions. In actual fact, the Defendants implemented a fraudulent restructuring scheme that had been in their planning and contemplation as pled below[5].

65.    During 2012 and 2013 as a result of a faltering tanker market, the high prices it had paid for the construction of the 11 tanker vessels and the acquisition of other tonnage, the Geden-Group experienced severe economic difficulties and pressing demands by various creditors that included attachment of vessels of the group.  In consultation with the group's lending banks, GEDEN LINES commissioned business restructuring specialist AlixPartners UK LLP to develop a proposed plan for the restructuring of their business.  A report was prepared by AlixPartners, dated March 6, 2013 under the title "Project Hermitage Restructuring".  *See* Report of AlixPartners hereto attached as **EXHIBIT 9**[6]  (hereinafter referred to as "Project Hermitage").

66.    Project Hermitage recommended the replacement of GEDEN HOLDINGS as the group's holding company by another new business entity - a "newco" - which, under the recommended plan, "[p]rovides for recategorization of exposure from "Geden Holdings Ltd." to Newco where equity is "in-the-money" and shareholders are better incentivized to provide ongoing support." *See* **EXHIBIT 9** at Bates No. P-001870.   The plan of Project Hermitage also recommended the sale of the vessels or the one-ship-companies to "Newco"; the continuation of

---

[5]  In a similar manner GEDEN HOLDINGS purportedly "sold" its fleet of product carrier tankers to new buyers while it continued to maintain control over their operation and to profit from trading same under FUTURE HOLDINGS, LTD. a management company controlled by Defendants KARAMEHMET-WILLIAMS and TOKGÖZ.

[6]  The Alix Partners' report specifically states: "This report ("Report") was prepared by AlixPartners UK LLP ("AlixPartners") exclusively for the sole benefit and internal use of GENEL Denizcilik Nakliyati A.S. – GEDEN Lines (the "Company") pursuant to a client relationship between AlixPartners and the Company stipulated in the agreement for the provision of consulting services dated 22 November 2012 (the "Engagement Letter"). EXHIBIT 10 at Bates No.  P-001832.  As to the factual content of the AlixPartners report it provides in relevant part: "The information contained in this Report is based upon financial and other data provided to AlixPartners and the representation made to AlixPartners by the management and staff of the Company" *Id*. at Bates No. P-001833. *Emphasis added.*

the management of the vessels by GEDEN LINES; the rollover financing of the existing debt to the financing banks; the retention of the equity of GEDEN HOLDINGS; the transfer of the surplus of equity in the assets to Newco (**EXHIBIT 9** (flow chart) Bates No. P-001846); and the ring-fencing of potential sources of disruption (such as arrests and sister-ship arrests). *Id*. at Bates No. P-001870.

67.    Even though the recommendations of Project Hermitage were not adopted by Defendants in their exact proposed form, they were nonetheless substantially adopted and implemented as evidenced by the following events:  a) GEDEN HOLDINGS / GEDEN LINES, acting by and through their common chief executive officer and chief financial officer, caused the incorporation of Advantage Tankers, LLC, in the Marshall Islands, *i.e.* the "Newco" contemplated by Project Hermitage[7];  b)  GEDEN HOLDINGS / GEDEN LINES, by and through their common chief executive officer and chief financial officer, made arrangements for the rollover financing of the loans of GEDEN HOLDINGS' one-ship-companies with ADVANTAGE TANKERS taking on the role of corporate guarantor; c) GEDEN HOLDINGS / GEDEN LINES, acting by and through their common chief executive officer and chief financial officer, caused the one-ship-companies controlled by GEDEN HOLDINGS to "sell" their vessels to newly minted Marshall Islands corporate entities that comprise the Advantage-Group shown in the foregoing TABLE I; d) GEDEN HOLDINGS / GEDEN LINES, acting by and through their common chief executive officer and chief financial officer, arranged for the management of the 11 tanker vessels to continue being performed by GEDEN LINES under new 5 year contracts; e) by transferring all of the tangible operating assets of GEDEN HOLDINGS to the ADVANTAGE TANKERS one-ship-

---

[7] At all times material hereto, all  Defendants have the same Chief Executive officer - Tugrul Tokgoz- and the same Chief Financial Officer -Mehmet Matt - who also hold overlapping roles as directors and /or officers of the respective corporate Defendants of the one-ship-companies controlled by ADVANTAGE TANKERS.

companies, *i.e.* the 11 tanker vessels, GEDEN HOLDINGS effectively "ringfenced" them, thereby blocking creditors of GEDEN HOLDINGS from seeking recourse against its assets.

68. Project Hermitage specifically referred to the bareboat charter of the CV STEALTH and other chartered-in tonnage of other owners in the following terms: "Group D, Geden Oldco: 11 Group D vessels make up the residual fleet and are not part of the Company's future. These include the vessels funded by FSL, Icon, Octavian and Stealth when traditional financing was unavailable." With specific reference to Plaintiff's vessel the CV STEALTH Project Hermitage notes: "not ours". *See* **EXHIBIT 9** at P-001856.

69. The actions of the Defendants in implementing the recommendations of Project Hermitage in the manner described in the foregoing manifests the design, plan, and intent of the Defendants to deal with their assets in a fraudulent manner to the detriment and prejudice of their creditors, specifically including Plaintiff as noted in ¶ 68 *supra*.

70. Defendant SPACE SHIPPING, LLC's sole business is to act as the nominee of GEDEN HOLDINGS in the performance of the bareboat charter. As pled in the foregoing, Plaintiff entered in the bareboat charter relying on the representations and warranties that GEDEN HOLDINGS was the owner of the 11 tanker vessels and several other vessels, and on its performance guarantee.

71. At all times material hereto and as pled in the foregoing, GEDEN HOLDINGS, through the machinations of its equity holder EMIN KARAMEHMET, "restructured" the ownership of its assets, by arranging their transfer to ADVANTAGE TANKERS, a company 85% controlled by his only child KARAMEHMET WILLIAMS, and 15% by his hand-picked CEO of GEDEN LINES and GEDEN HOLDINGS - TOKGÖZ. As a result, Plaintiff was left without any of the recourse that it had agreed to forego (*i.e.* the attachment of Geden Holdings' owned vessels)

22

in consideration for GEDEN HOLDING's performance guarantee.

72.     Notwithstanding the fraudulent restructuring of the ownership of its shipping assets, GEDEN HOLDINGS provided in confidence express assurances to Shell Western Supply & Trading, Ltd. that it remained the controlling shareholder of the same 11 tanker vessels through its complete control of the Advantage-Group one-ship-companies.

73.     Though Defendants KARAMEHMET WILLIAMS and TOKGÖZ have warranted to the lenders of the Advantage-Group that they hold respectively 85% and 15% of the ultimate beneficial interest in ADVANTAGE TANKERS, which, in turn, warrants it controls 100% of the 11 tanker vessels, (See **EXHIBIT 3**), TOKGÖZ, who is the Chief Executive Officer of ADVANTAGE TANKER and a director of GEDEN HOLDINGS, has also warranted to Shell Western Supply & Trading, Ltd. that it is actually GEDEN HOLDINGS controlling the Advantage-Group corporate entities that own the same vessels, even after their purported transfer to the Advantage-Group. Based on the foregoing and the conflicting representations of Defendants, the ownership of the ADVANTAGE START (ex BLANK) was fraudulently transferred to the detriment of unsecured creditors.

74.     Plaintiff invokes the power of this honorable court as a court of admiralty "…to protect its jurisdiction from being thwarted by a fraudulent transfer, [by] …. authorizing an attachment to secure an independent maritime claim." *Swift Co Packers v. Compania Colombiana Del Caribe,* 339 U.S. 684, 694-695 (1950).

75.     Based on the expressed rationale underlying the transfer of the 11 tanker vessels from GEDEN HOLDINGS to ADVANTAGE TANKERS noted in the foregoing, *i.e.* the "ringfencing" of the assets in order to avoid "arrests";  the close family relationship between EMIN KARAMEHMET and KARAMEHMET WILLIAMS that constitutes the latter an insider of the

former in relation to his status as 100% shareholder of Plaintiff's obligors GEDEN HOLDINGS / GEDEN LINES and SPACE; the transfer of what was substantially all of the assets of the said obligors of Plaintiff; the failure of the Defendants to disclose to Plaintiff the impending transfer of the assets from the Geden-Group to the Advantage-Group; the Defendants express intent to fraudulently restructure the ownership of the corporate holding structures for the benefit of the equity holders and to the detriment of unsecured non-lending creditors; and all of the factual circumstances pled in the foregoing ¶¶ 60-73, there are reasonable grounds and probable cause to believe that the said transfer was intended to hinder, delay, or defraud the creditors of SPACE and same may and should be set aside as a fraudulent conveyance.

## V. APPLICATION FOR ATTACHMENT UNDER SUPPLEMENTAL ADMIRALTY RULE B

76.     None of the Defendants are or were at the time of the filing of this suit present within the District or can be found in the District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Law Claims and under the laws of Louisiana governing personal jurisdiction. *See* Attorney Declaration of George Gaitas attached hereto as **EXHIBIT 10**. Nevertheless, Defendants have within the District tangible or intangible personal property in the hands of parties who may be named garnishees in the process of maritime attachment and garnishment consisting of debts, credits, or effects.

77.     More specifically, there is presently, or imminently due to arrive, in the Eastern District of Louisiana, the Motor Tanker ADVANTAGE START, a tanker vessel registered in the Marshall Islands, with IMO No. 9466570 and international call sign V7KY9 , as pled in the foregoing.

78.     Defendants have used and continue to use the purportedly corporate separateness, and incorporated status of their surrogate entities ADVANTAGE START, ADVANTAGE

TANKERS, ADVANTAGE HOLDINGS, and FORWARD HOLDINGS abusively, to wit: to engage in fraudulent corporate restructuring and asset reallocation practices in order to escape their lawful obligation to repair or pay the cost of repairs of the CV STEALTH and also pay bareboat charter hire until the redelivery of the CV STEALTH to Plaintiff - her lawful owner.

79.     Plaintiff has maritime claims against the Defendants arising out of the breach of a maritime contract (*i.e.* – the bareboat charter party of the CV STEALTH dated February 23, 2010, and the performance guarantee dated April 4, 2010).

80.     The amounts of Plaintiff's claims as reasonably as it can be estimated is as follows:

A.     The repaired cost of the CV STEALTH…………….…..$     18,000,000.00

B.     Unpaid Charter Hire due and owing……………………..$     510,208.33

C.     Awarded legal costs…………………………….............$     6,515.50

C.     Interest at 6% compounded quarterly for 1 year………..$     943,340.00

E.     Recoverable Legal Fees and Costs……………………… $     400,000.00

**Total Claim…………………………………………………………$ 19,860,063.80**

Therefore, Plaintiff's total claim for breach of the maritime contracts against Defendants is in the aggregate sum of **USD 19,860,063.80 (NINETEEN MILLION EIGHT HUNDRED SIXTY THOUSAND SIXTY THREE DOLLARS AND EIGHTY CENTS)**

**WHEREFORE PREMISES CONSIDERED**, Plaintiff prays as follows:

A.     That process in due form of law, according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction be issued against Defendants and said Defendants be cited to appear and answer the allegations of this Original Verified Complaint;

B.     That since the Defendants cannot be found within this District pursuant to Supplemental Rule B, all of the assets of the Defendants presently within this District, or assets

expected in this District during the pendency of this action, including, but not limited to the M/T ADVANTAGE START and/or any assets within the possession, custody or control of any other garnishee upon whom a copy of the Process of Maritime Attachment and Garnishment issued in this action may be served, be attached and garnished in an amount sufficient to answer Plaintiff's claim;

C.     That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

D.     That judgment be entered against each of the Defendants and each of them in the sum of Nineteen Million Eight Hundred Sixty Thousand Sixty Three Dollars and eighty cents **(USD 19,860,063.80) (NINETEEN MILLION EIGHT HUNDRED SIXTY THOUSAND SIXTY THREE DOLLARS AND EIGHTY CENTS)** together with interest and costs, be applied in satisfaction thereof;

E.     That the Court grant such other and further relief as it deems, just, equitable and proper.

Respectfully submitted,

GAITAS, KENNEDY & CHALOS, P.C.

By:     /s/George A. Gaitas
       George A. Gaitas
       Louisiana State Bar No. 05879
       Federal Bar No. 705176
       Sean D. Kennedy
       Louisiana State Bar No. 31809
       Federal Bar No. 1007545
       Jonathan M. Chalos
       Federal Bar No. 3008683
       *Pro Hac Vice forthcoming*
       E-mail:gaitas@gkclaw.com
              kennedy@gkclaw.com

chalos@gkclaw.com

*Attorneys for Plaintiff*
Psara Energy, Ltd.