**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | : | **Chapter 15** |
| | : | |
| **GEDEN HOLDINGS, LTD.** | : | **No. 25-90138** |
| | : | |
| **Debtor.** | : | |

**MEMORANDUM IN SUPPORT OF APPLICATION FOR RECOGNITION OF**
**FOREIGN PROCEEDING OF GEDEN HOLDINGS LTD**

Comes now Eclipse Liquidity, Inc. ("Eclipse"), a judgment creditor of the Maltese

company Geden Holdings, Ltd. ("Geden") in court-ordered liquidation in Malta, appearing in this

petition for recognition of the foreign proceeding by the Maltese court-appointed liquidator Dr.

Reuben Balzan, and offers this Memorandum in support of foreign recognition under Chapter 15

of title 11 of the United States Code (the "Bankruptcy Code"), averring as follows:

Eclipse believes that Geden meets all of the requirements for having the Maltese

liquidation recognized by this Court under Chapter 15, and that Advantage Award Shipping LLC's

narrative is immaterial to this foreign recognition proceeding. Given the history between Eclipse,

Geden and Advantage Tankers LLC, Eclipse is in a position to file this Memorandum providing

some context and history that predates the appointment of Dr. Balzan. Moreover, Eclipse is

compelled to correct the inaccurate factual background[1] in Advantage Award Shipping LLC's[2]

(hereinafter "Award") "Objection of Advantage Award Shipping, LLC to Verified Petition for (i)

---

[1] Award's narrative is littered with demonstratively false statements, inaccuracies and half-truths, however, to not belabor issues that are immaterial to the foreign recognition of the Maltese proceeding under Chapter 15, Eclipse will be selective in responding to Award's inaccurate narrative. Should the Court wish to hear additional argument from Eclipse's counsel, Eclipse will be prepared to address same at the recognition hearing on June 4, 2025.

[2] Eclipse is unclear what Award's interest is in this proceeding as Award has failed to state in its Objection what specific interest it has in this proceeding. Eclipse contends that Award does not have standing.

1

Recognition of Foreign Main Proceeding, (ii) Recognition of Foreign Representative, and (iii) Related Relief Under Chapter 15 of the Bankruptcy Code" (hereinafter the "Objection") (Dkt. 23); and Award's Request for Judicial Notice of the Objection (hereinafter the "Supporting Documents") (Dkt. 24).

## INTRODUCTION

Geden meets all of the requirements for having the Maltese liquidation recognized by this Court under Chapter 15, regardless of Award's immaterial and inaccurate factual background included in its Objection.  Despite Award arguing that "Geden's nerve center was in Turkey" and that Malta was a "letter box" jurisdiction and not the center of Geden's main interests, Malta was very much the center of Geden's main interests.  (Dkt. 23 at ¶ 17, ¶ 27).  When one takes into account the character of the business of Geden and its activity, it becomes obvious why Malta was the center of its main interests.

## GEDEN'S NERVE CENTER IS AND ALWAYS HAS BEEN MALTA

Geden owned fifty (50) subsidiaries that owned vessels.  Specifically, each subsidiary was a Maltese company that filed annual consolidated financial statements in Malta; Geden's vessels were financed by various banks and secured by Maltese ship mortgages; each of these vessels was registered in Malta and flew the Maltese flag; Geden paid tonnage taxes in Malta in respect of its Maltese-registered vessels; and Geden did not pay any taxes in Turkey on the income earned by the ships it owned.  Though Geden had managers for its vessels in Turkey by the name of Genel Denizcilik Nakliyati (a/k/a/ "Geden Line"), Geden Line was careful in all transactions to designate themselves as agents only. Geden Line itself has represented and maintained that it acts as a manager for several vessel owners in several countries, including some companies that are situated in Greece, some companies situated in the Marshal Islands, and Advantage Tankers which holds

itself to be situated in Switzerland. Geden Line in its correspondence relating to Geden expressly qualifies its capacity "as agents."

Moreover, Eclipse's monthly bareboat charter hire invoices to Avor Navigation Ltd. were addressed to 198 Old Bakery Street, Valetta, Malta. Geden's own address in Malta was 85 St. John's Street, Valletta, Malta[3]. As disclosed in litigation discovery, Geden maintained large bank accounts with Citibank N.A. London, which reflected transfers in excess of USD 100,000,000, the statements for which were being transmitted by the said bank to Geden Holdings Ltd, 85 St. John Street, Valletta, Malta. Likewise, correspondence dated September 5, 2022 and December 7, 2023 purportedly sent by Geden on its letterhead to its bankers in London and in Turkey, listed its address as Geden Holdings, Ltd., 85 St. John's Street, Valletta, Malta.

Furthermore, as noted in the Pennsylvania State Court litigation where Eclipse served pleadings on Geden at its address in Malta, Geden's purported lawyers at the time objected that the service was not made in accordance with Maltese formalities and required that Maltese formalities be followed. The bottom line is that Geden did not want to be identified with Turkey in order to avoid Turkish taxes and did not want to be identified with its own country of incorporation because it is subject to the jurisdiction of its courts.

In addition, Geden has its annual financial reports audited by KPMG and filed with the Maltese corporate authorities[4]. According to its own annual financial reports, Geden is a company established in October 2002 and domiciled in Malta. (EXHIBIT B, p. 6 at ¶ 1). The registered office of the Company is situated at 85 St John Street, Valetta, Malta. (*Id.*). The consolidated financial statements of the Company as at and for year ended at 31 December 2013 comprise the

---

[3] *See* invoice to Stealth Maritime Corporation S.A from Avor Navigation Ltd. attached hereto as **EXHIBIT A**.
[4] *See* Geden Holdings Limited and Its Subsidiaries Consolidated Financial Statements for year 2014 attached hereto as **EXHIBIT B**.

Company and its 86 subsidiaries (together referred to as the "Group" and individually as "Group entities"). (*Id.*). Geden and its subsidiaries maintain their books of account and prepare their statutory financial statements in accordance with Profit Tax Ordinance ("PTO") of Republic of Malta in US Dollars ("USD"). (*Id.,* at ¶ 2(a)). According to its annual reports, Geden Line is employed as a manager of the vessels in return for a fee of USD 14,000 per vessel per month. (*Id.,* p. 38).

Finally, Geden as a corporation established in Malta, a country-member of the European Union, was subject to a set of substantive and procedural laws and conventions that provided stability, security, and predictability, to the largely European-based banks that provided the substantial debt-financing that Geden needed in order to carry on its shipping business.

Thus, Award cannot credibly argue that Malta was just a "letter box" jurisdiction, nor is the Objection on these grounds meritorious.

## ADVANTAGE'S ARGUMENT THAT ECLIPSE HAD A DECADE OF UNSUCCESSFUL LITIGATION IS FALSE

What compels and makes necessary correcting the factual background narrative contained in Award's Objection is its methodology of having concocted a factual background in support of its Objection which is demonstratively false. Award's methodology consists of having selected isolated extracts from the records of several cases spanning the better part of the last ten (10) years, involving mostly former creditors of Geden, before its insolvency in Malta, to support its unfounded claim that Eclipse has had a decade of "completely unsuccessful" litigation. (Dkt. 23, ¶ 5). In this regard, Award extracted consensual orders of dismissal from the record of such actions for the purpose of discontinuing ongoing litigation and served them in support of its Objection, falsely arguing that the creditors whose claims were satisfied in full received nothing. (Dkt. 23, ¶ 9). Notably, the majority of plaintiffs identified in Award's Objection are not Eclipse and are not

currently creditors of Geden, as their claims have been settled or otherwise satisfied. Award also kept from the Court the fact that Geden, preceding its Maltese insolvency adjudication, entered into formal settlement agreements with several of the plaintiffs it represents received nothing from the litigation, even though their claims were settled in full under various settlement agreements[5].

A.    <u>Maritime Attachments to Secure and Recover Unpaid Bareboat Hire Were Settled</u>

Award asserts that Eclipse engaged in a decade of unsuccessful litigation.  However, every Rule B attachment case referred to in Award's litigation chart (Dkt. 23, p. 10)[6] commenced by the attaching plaintiffs was fully settled by Advantage Tankers LLC.  Accordingly, Eclipse will highlight for the Court some of the settlements paid by Advantage Tankers LLC as a result of the successful Rule B litigation below, and to demonstrate the inaccuracies contained in Award's factual background.

Award inaccurately represents that Eclipse and its affiliates were parties to proceedings from which they received nothing.  (Dkt. 23, ¶ 5).  Actually, Eclipse was a party to a single case, brought in 2015 in the United States District Court for the Southern District of Texas, noted by Award as "*Eclipse Liquidity, Inc. v. Avor Navigation Ltd., et al.,* Case No. 4:15-cv-01645 (S.D. Tex. 2015) ("**Eclipse II**")".  (Dkt. 23, ¶ 8).  On the other hand, Geden was a named defendant in every Rule B attachment proceeding, and <u>Award was never a named defendant in any Rule B attachment proceeding</u>[7]. (emphasis added).

Eclipse II involved the attachment of the motor vessel ADVANTAGE ARROW, under Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions

---

[5] The settlement agreements referred to herein contain confidentiality clauses; however, Eclipse will be happy to file them with the Court under seal should the Court wish to review them.
[6] *See e.g.* Eclipse II, Tank I, Psara I, Psara II, Tank II, Psara III, Psara IV, Psara V, Psara VI, Psara VII.
[7] Award was a named defendant in the Pennsylvania State Court litigation by reason of its registration with the Pennsylvania secretary of state and its relationship with Advantage Tankers LLC.

("Rule B")[8].  This is the only claim Eclipse brought against Geden or Advantage Tankers LLC outside the Pennsylvania State Court action to enforce its judgment.

Eclipse's claim in Eclipse II was for unpaid bareboat hire that its bareboat charterer had failed to pay under a bareboat charter party[9].  Contrary to Award's representations, the record of this case shows that it was fully settled with payment of the claims by Advantage Tankers LLC. *See Eclipse Liquidity, Inc. v. Avor Navigation Ltd., et al.,* Case No. 4:15-cv-01645 (S.D. Tex. 2015) at Minute Entry (Dkt. 84); Agreed Order (Dkt. 85); Filed Transcript (Dkt. 88, pp. 14-16) (Counsel for Advantage: "Well, I think from defendants' standpoint the two issues are, one, the availability of [the attached funds] to fund a prospective settlement.  We would be very grateful if Your Honor would consider entering an order releasing those funds, that issue being entirely uncontested, as soon as the Court has an opportunity to do so.  We are on a fairly tight timeline trying to get something done and funded. So that would be greatly appreciated.").

Eclipse's claim in the Southern District of Texas (Eclipse II) was consolidated with the cases of *Tank Punk, Inc. v. Spike Shipping Ltd.,* Case No. 4:15-cv-01675 (S.D. Tex.) ("**Tank I**"), and *Psara Energy, Ltd. v. Space Shipping, Ltd.,* Case No. 4:15-cv-01673 (S.D. Tex.) ("**Psara I**"). (Dkt. 23, ¶ 8).  Psara Energy Ltd.'s and Tank Punk, Inc.'s claims also involved attachment of the motor vessel ADVANTAGE ARROW under Rule B to secure the payment of outstanding bareboat charter hire owed by Geden and its subsidiaries in respect of the motor tankers SPIKE

---

[8] Historically, Rule B attachments served two purposes: (1) they ensured satisfaction if a suit against a shipping company is ultimately successful; and (2) they ensured a defendant's appearance in an action.  *In re Atlas Shipping A/S,* 404 B.R. at 731-732, citing *Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co.,* 85 F.3d 44, 48 (2d Cir. 1996).  Because shipping company assets can circumnavigate the world, the attachment is intended to maintain the status quo pending litigation of a dispute.  *Id.,* (citing *DSND Subsea AS v. Oceanografia, S.A. de C.V.,* 569 F. Supp.2d 339, 348 (S.D.N.Y. 2008)).  Ships are considered effects within admiralty practice governing attachment and garnishment, so vessels are subject to Rule B attachments.  *Frontier Acceptance Corp. v. United Freight Forwarding Co.,* 286 F. Supp. 367 (D.N.J. 1968).
[9] A bareboat charter party is a contractual agreement for the chartering of a vessel for which no crew or provisions are included, *i.e.* the vessel is chartered "bare".

and CV STEALTH.  As a result of these Rule B attachment proceedings, and the posting of a cash bond with the registry of the court by the "Advantage Group" for the release of the vessel against substitute security, payment of the outstanding hire amounts was made to the attaching plaintiffs by Advantage Tankers LLC, and the security (cash bond in the registry of the court) was consensually released as reflected in the foregoing orders of the court.   Accordingly, it is not factually correct that Eclipse and its affiliated companies in the Southern District of Texas took nothing as a result of these Rule B attachment proceedings.  They took substantial security, and their respective claims were fully paid, and the dismissal of same with prejudice was agreed by all parties because these provisional measures aimed at obtaining security for outstanding payments owed had come to an end. (*Id.*).

Nonetheless, Award argues that the magistrate judge, Magistrate Stacy, who was assigned to write a report and recommendation on the above consolidated cases in the Southern District of Texas had recommended that "all claims against the Advantage Defendants should be dismissed." (Dkt. 23, ¶ 8). However, Award omits in its argument that the attaching plaintiffs had filed formal objections to Magistrate Stacy's report and recommendation and that the District Judge had not entered an order adopting the recommendation. *See Eclipse Liquidity, Inc. v. Avor Navigation Ltd., et al.,* Case No. 4:15-cv-01645 (S.D. Tex. 2015) at Dkt. 70 and Dkt. 71. Thus, the recommendations of the magistrate judge continued to have the status of recommendations.

Award also omits to mention that Advantage Tankers LLC raised this very same argument in another Rule B attachment proceeding in the United States District Court for the Eastern District of Pennsylvania before Judge Beetlestone in which their counsel argued that the same Southern District of Texas magistrate judge's report had the effect of collateral estoppel.   With regard to this particular argument, Judge Beetlestone rejected Advantage Tankers' collateral estoppel argument and ruled from the bench as follows:

1 THE COURT: Well, let me tell you my thinking on
2 this is that with respect to the collateral estoppel argument,
3 there is no District Court decision. There's no final
4 judgment on the merits. There's de novo review of the R&R.
5 Looking at the R&R, quite apart from that fundamental
6 issue, it appears to apply only to tank punk and there's an
7 issue in my mind as to whether the substantive law would be
8 different in this case given that that is decided under Fifth
9 Circuit law. And there may be some Third Circuit law here.
10 And certainly looking at the law in the Third Circuit,
11 it's quite clear that an R&R is only a recommendation. I
12 believe, in fact, that a Magistrate Judge has no authority to
13 issue an opinion. It is actually beyond the scope of their
14 authority. So, clearly, there's no collateral estoppel, at
15 least at this point. There -- it may be that once the
16 District Court has ruled that that issue will once again be
17 relevant.

*See Psara Energy, Ltd. v. Space Shipping, Ltd.,* Case No. 2:16-cv-04840 (E.D. Pa.) at Dkt. 46, p.
73 (This case involved the Rule B maritime attachment of the vessel ADVANTAGE AVENUE
by plaintiff Psara Energy, Ltd. in the action noted at p. 6 of the Objection and referred to as *Psara
Energy, Ltd. v. Space Shipping, Ltd.,* Case No. 2:16-cv-04840 (E.D. Pa.) ("**Psara III**")).

In Psara III, on September 22, 2016, the court in the Eastern District of Pennsylvania

accepted the parties' joint stipulation for security and ordered that substitute security in the amount

of USD 3,200,000 be deposited in the registry of the court for the release of the ADVANTAGE

AVENUE. (*Id.* at Dkt. 39 and Dkt. 40).  On December 8, 2016, the parties made a settlement

agreement, whereby it was no longer necessary to maintain the substitute security of USD

3,200,000 which was released by Psara Energy, Ltd. on December 23, 2016.

Award wrongly contends that "Nothing came of these actions", referring to Psara III and

also the Rule B attachment of the ADVANTAGE ANTHEM which Award identifies as "*Psara

Energy, Ltd. v. Space Shipping, Ltd.,* Case No. 2:16-cv-01305 (E.D. La.) ("**Psara IV**")." (Dkt.

23 at p. 6).

In Psara IV in the Eastern District of Louisiana, cash substitute security in the amount of

USD 1,700,000 had been deposited in the registry of the court as substitute security for the release

8

of the vessel ADVANTAGE ANTHEM. *See Psara Energy, Ltd. v. Space Shipping, Ltd.,* Case No. 2:16-cv-01305 (E.D. La.) at Dkt. 6 and Dkt. 7. Again, said security was also released by stipulation of the parties. (*Id.* at Dkt. 15). Notwithstanding Award's contentions, quite a bit came out of these actions. The details are contained in a December 8, 2016 settlement agreement between Psara Energy Ltd., Geden and Advantage Tankers LLC.

Lastly, the two cases brought in the Eastern District of Texas for the recovery of unpaid bareboat charter hire as noted in the Objection were *Psara Energy, Ltd. v. Space Shipping Ltd.,* Case No. 1:15-cv-00355 (E.D. Tex.) ("**Psara II**") and *Tank Punk, Inc. v. Spike Shipping Ltd.,* Case No. 1:15-cv-00461 (E.D. Tex.) ("**Tank II**"). (Dkt. 23 at p. 4). Both of these claims were also settled, with Advantage Tankers LLC making payment to the attaching plaintiffs.

B.    <u>Maritime Attachments to Secure the Claim of Psara Energy Ltd. for the Redelivery of the Vessel CV STEALTH from Bareboat Charter in Constructive Total Loss Condition</u>

Award incorrectly states in its Objection that "unchastened by their failure to make anything stick in seven different actions in four different federal courts, Eclipse persisted with its vexatious campaign of frivolous litigation by commencing two more actions in the Eastern District of Texas and the Eastern District of Louisiana in 2018." (Dkt. 23 at p. 6, referring to Psara V and Psara VI). However, Award does not inform the Court that Psara V, Psara VI, and Psara VII all concerned Psara Energy Ltd.'s claim for the constructive total loss ("CTL") of its vessel the CV STEALTH, and that the only reason why Psara Energy commenced multiple Rule B attachments relating to the CV STEALTH is because Psara Energy was under-secured for its claim[10]. Thus, Eclipse provides below additional context and information regarding the CV STEALTH litigation.

---

[10] Rule B allows an attaching plaintiff to attach property in multiple Rule B actions until its claim is fully secured.

The vessel CV STEALTH which had been on bareboat charter to Geden's wholly owned subsidiary Space Shipping Ltd., with Geden being its subsidiary's performance guarantor, was redelivered in severely damaged condition to Psara Energy Ltd. on or about October 10, 2017, rendering her a CTL.  Space Shipping Ltd. denied any responsibility for the claim and Psara Energy pursued its claim in London maritime arbitration.   As Geden claimed to have sold off all of its vessels to Advantage Tankers LLC and had no tangible assets for the enforcement of its claim, Psara Energy again sought security for these maritime claims by attaching vessels of Geden's successor corporation, Advantage Tankers LLC.

The first of these vessels to be attached was the ADVANTAGE ARROW in *Psara Energy, Ltd. v. Space Shipping, Ltd.*, Case No. 1:18-cv-00178 (E.D. Tex.) ("**Psara V**"). (Dkt. 23, p. 6).  The ADVANTAGE ARROW was released against a surety bond in the amount of USD 4,000,000. *See Psara Energy, Ltd. v. Space Shipping, Ltd.*, Case No. 1:18-cv-00178 (E.D. Tex.) at Dkt. 24. Because the amount of the bond for the release of the vessel did not even come close to securing the CTL claim of the owner of the CV STEALTH, they made a further attachment of another vessel of Advantage Tankers LLC, the ADVANTAGE START, in the United States District Court for the Eastern District of Louisiana in *Psara Energy, Ltd. v. Space Shipping, Ltd.,* originally filed as Case No. 2:18-cv-04111 (E.D. La.). (Dkt. 23, p. 6).  The amount of the security ordered by the district court in that action was a meager USD 800,000.  *See Psara Energy, Ltd. v. Space Shipping, Ltd.*, Case No. 2:18-cv-04111 (E.D. La.) at Dkt. 24.   The Eastern District of Louisiana case was transferred to the case pending in the Eastern District of Texas.

With the amount of USD 4,800,000 still insufficient to cover the CTL claim of the CV STEALTH in the London arbitration where it was pending, Psara Energy commenced a further Rule B proceeding in the Northern District of California with the attachment of the motor tanker

ADVANTAGE SPRING, as noted by Award in the case styled "*Psara Energy, Ltd. v. Space Shipping, Ltd.*, originally filed as Case No. 3:20-cv-04102 (N.D. Cal.), transferred to Case No. 1:20-cv-00293 (E.D. Tex.) ("**Psara VII**").  (Dkt. 23, p. 7).  To obtain the release of the ADVANTAGE SPRING from the attachment of Psara Energy in the Northern District of California, security was ordered by the Court in the amount of USD 4,3225,000 in the form of a surety bond, and the case was transferred to the Eastern District of Texas to be consolidated with Psara V.

By this point, the Court should note that Award has mischaracterized several of the actions in federal courts taken by Psara Energy Ltd. and Tank Punk Inc. as actions taken by Eclipse Liquidity Inc.  *See e.g.* Dkt. 23 at pp. 6- 8 attributing five (5) attachment suits of Psara Energy, Ltd., the erstwhile owner of the CV STEALTH, to Eclipse Liquidity, Inc., the former owner of the AVOR.  It is evident that Award has got its parties, vessels, and legal actions confused.  Again, Award was not a party to any of these actions.

Another point that Award appears to be confused about is the basis for the dismissal of the suits Psara Energy Ltd. brought to secure its CTL claim for the CV STEALTH.  Thus, with the consolidated claims in the Eastern District of Texas, Award asserts: "Again, Eclipse prevailed in neither action. The court dismissed both actions with prejudice in February 2021." (Dkt. 23, p. 6) (citing to its own Exhibit 16 in Fn. 18).  However, this is not what Judge Crone states in the order that comprises Award's Exhibit 16, which provides:

> Pending before the court is the Plaintiff's "Notice of Voluntary Dismissal." Doc. No. 90. The parties have reached a settlement agreement. Accordingly, the above case is **DISMISSED WITH PREJUDICE** with each party to bear its own costs of court. The court retains jurisdiction to enforce any settlement. The Clerk is directed to close the case and deny all pending motions as moot.

*Id.,* (emphases added).

Similarly, with reference to the Northern District of California suit which was transferred

to the Eastern District of Texas, Award asserts: "This action, too, was dismissed with prejudice in February 2021." (Dkt. 23, p. 6) (citing to its Exhibit 21 in Fn. 21).   However, again this is not what Judge Crone states in her order that comprises Award's Exhibit 21, which provides:

> Pending before the court is the Plaintiff's "Notice of Voluntary Dismissal." Doc. No. 65. <u>The parties have reached a settlement agreement</u>. Accordingly, the above case is **DISMISSED WITH PREJUDICE** with each party to bear its own costs of court. The court retains jurisdiction to enforce any settlement. The Clerk is directed to close the case and deny all pending motions as moot.

*Id.,* (emphases added).

Eclipse is aware of such settlement(s) that ultimately disposed of the claims of Psara Energy Ltd. and is prepared to make it available to the Court under seal should the Court wish to review it.

Accordingly, every Rule B attachment case commenced by the attaching plaintiffs was successful and eventually fully settled by Advantage Tankers.

C.     <u>The History of Claims in The Courts of Pennsylvania</u>

Given the numerous misstatements of fact by Award in its Objection concerning the Pennsylvania State Court litigation and the status of Geden, Eclipse provides additional information and context below. The history of the claims of Eclipse in Pennsylvania commenced in October 2017 for the purpose of recognizing and enforcing a judgment of the High Court of Justice in London against Geden.  Eclipse chose to enforce its judgment in Pennsylvania because Geden was registered under Pennsylvania law to carry on business there.

Eclipse prevailed in the recognition action in the Pennsylvania Court of Common Pleas, and also prevailed in Geden's appeal of the recognition in the Pennsylvania Superior Court.  At no time during these proceedings or at any time thereafter, did the attorneys appearing on behalf of Geden disclose that this Maltese Company had been adjudicated insolvent by the competent court of its own country of incorporation in Malta.

The managers of Eclipse - Stealth Maritime Co. S.A.- throughout this time in 2020 and 2021 were engaging in pursuing claims against Geden and its wholly owned subsidiaries involving vessels, other than the AVOR, that Geden had bareboat chartered and was dealing with Geden's purported directors, employees and legal advisors.  At no time did anyone from Geden's side disclose that Geden had been adjudicated insolvent by the courts of Malta, since June 15, 2017 and lacked the capacity to act as a corporate entity.

Indeed, from its engagement in the transaction of business and its settlement of the CV STEALTH claim, Geden appeared to be a live company aggressively pursuing its own interests, acting by people identified as its own corporate directors.  Contrary to what Award argues in its Objection (Dkt. 23 at ¶ 14 and Fn. 38) that at ¶ 55 in the defendants' answer to the 2020 Action, it stated that "Defendants admit that Geden Holdings is in receivership in Malta, but except as specifically admitted, deny the remaining allegations contained in Paragraph 55 of the complaint"[11],  Geden, through its former CEO and director, Tugrul Tokgoz, was negotiating direct with the managers of Eclipse for the settlement of other claims arising from a default of Geden and Avor Navigation Ltd.   The negotiations were also conducted through solicitors that were representing the respective parties.  There was no receiver or receivership involved.  Rather, Geden

---

[11] The specific allegation of the Pennsylvania state court complaint to which "Geden" provided this answer was: "55. *By contrast Geden Holdings has ceased carrying on business, and it proclaims that it has no assets, no funds, and that it has become an empty shell.*"  The wording of this paragraph was copied almost verbatim from the testimony under oath of the CEO and director of Geden, Tugrul Tokgoz, in his examination on Sept 11, 2019 in case A50/18, *In the matter between Icon Amazing LLC and others, and Advantage Sky Shipping LLC and others*, in the Kuazulu-Natal High Court, Durban, S. Africa, where he testified "Geden Holdings Limited -had disposed of all of its one-ship companies, all the ships All-most or all.  I don't know if the Vasca..[indistinct] had been sold but one by one, one by one ...[indistinct] six, seven ships.  we sold the ships, yes. And Geden Holdings, now registered in Malta, had become an empty shell.---Has no assets, that is correct , M'Lord.  No assets, no money-" Transcript of proceedings in S.A. High Court at p. 8:5-10.

itself entered this settlement agreement signed on its behalf by its solicitor; a time during which Geden had no legal capacity.

Thereafter, the status of Geden as an adjudicated insolvent company was revealed accidentally by Geden's attorneys' raising the preliminary objection that Geden had not been properly served in the jurisdiction of its corporate domicile, Malta.  (Dkt. 24-25 at pp. 5-7).  This raised two critical questions: (1) the identity of the parties who had appeared in the Pennsylvania State Court proceedings, and (2) the authority of counsel appearing on behalf of Geden.

The Pennsylvania trial court pronounced this issue "moot" because it lacked subject matter jurisdiction to enforce Eclipse's judgment.  Likewise, the Superior Court of Appeals held the liquidator, as a prevailing party, is not entitled to appeal.  Accordingly, the fact remains that neither Eclipse nor Geden's liquidator know who was controlling Geden in the Pennsylvania State Court litigation.

Moreover, it is evident on the face of the Pennsylvania State Court Proceedings that the trial court declined to adjudicate the merits of the legal issues and instead dismissed all claims based on its reasoning that it lacked subject matter jurisdiction for Eclipse's failure to join indispensable parties.  In the Court of Common Pleas Opinion in case 816, which is set out in full in Award's Exhibit 26, the court provides its rationale for dismissing Eclipse's case as follows: "Because they are necessary and indispensable non-parties, this court is deprived of subject matter jurisdiction to decide plaintiff's claims in this action."  (Dkt. 24-26, p. 14).

Thus, the Court of Common Pleas' position on the effect of its dismissal of the action on grounds of lack of subject matter jurisdiction has no effect whatsoever as an adjudication on the merits, noting:

> Both Eclipse and Geden raise an issue on appeal a supposed incompatibility
> between this court's discussion in its Opinion that it lacks personal jurisdiction over

14

defendant Advantage Award Shipping, LLC, and its determination in that same Opinion that it lacks subject matter jurisdiction over both lawsuits. Appellants are correct that a determination of lack of subject matter jurisdiction eliminates any need for, or ability of, this court to rule on any other issues raised by the parties; the Court's Orders dismissing these cases for lack of subject matter jurisdiction demonstrate the supremacy of this issue.

Dkt. 24-26, p. 5.

## CONCLUSION

Eclipse respectfully submits this Memorandum in order to provide more accurate information for the Court's consideration in the petition for the recognition of the insolvency proceedings in Malta, which should be recognized under Chapter 15.

Respectfully submitted,

By:    GAITAS & CHALOS, P.C.

/s/George A. Gaitas
George A. Gaitas
Federal Bar No. 705176
Jonathan M. Chalos
Federal Bar No. 3008683
1908 N. Memorial Way
Houston, Texas 77007
Telephone: 281-501-1800
Fax: 832-962-8178
E-mail:        gaitas@gkclaw.com
               chalos@gkclaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2025 a copy of the foregoing was served on all counsel and/or parties of record through the Court's cm/ecf system.

/s/George A. Gaitas
George A. Gaitas