IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 25-90138** |
| **Geden Holdings, Ltd.** | § | |
| | § | **Chapter 15** |
| **Debtor in a Foreign Proceeding** | § | |

**BRIEF IN SUPPORT OF THE VERIFIED PETITION FOR (I) RECOGNITION OF
FOREIGN MAIN PROCEEDING, (II) RECOGNITION OF FOREIGN
REPRESENTATIVE, AND (III) RELATED RELIEF UNDER
CHAPTER 15 OF THE BANKRUPTCY CODE**

Dr. Reuben Balzan (the "Liquidator" or the "Foreign Representative")[1], a licensed advocate in Malta with the law firm Valletta Legal, in his capacity as the authorized representative and court appointed liquidator of the above-captioned debtor (the "Debtor" or "Geden") pursuant to Geden's court ordered liquidation in Malta (the "Malta Proceeding") before the First Hall of the Civil Court (the "Maltese Court"), respectfully submits this *Brief* (the "Brief") *in Support of the Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (together with the official form petition filed at Docket No. 1, the "Petition") for recognition of the Malta Proceeding pursuant to section 1517 of title 11 of the United States Code (the "Bankruptcy Code") as a "foreign main proceeding," or, in the alternative, as a "foreign non-main proceeding" and for additional relief pursuant to sections 1520 and 1521 of the Bankruptcy Code.

---

[1] Capitalized terms not defined herein shall have their meaning ascribed in the *Declaration of Foreign Representative Pursuant to 11 U.S.C. § 1515 and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure and in Support of Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative (III) Emergency Provisional Relief For Issuance of the Automatic Stay, and (IV) Related Relief Under Chapter 15 of the Bankruptcy Code* [Docket No. 6] (the "Declaration") or the *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [Docket No. 2].

# I.
## Preliminary Statement

1.      At the hearing held on June 4, 2025, the Court invited the Foreign Representative to submit additional briefing and a declaration(s) regarding the issue of whether the funding of the retainer (the "Retainer") paid to Okin Adams Bartlett Curry LLP ("Okin Adams") by Gard P&I Club ("Gard") as a loan to Geden in the Malta Proceeding meets the requirement that "only a person that . . . has . . . property in the United States . . . may be debtor under this title." 11 U.S.C. § 109(a).

2.      First, courts have overwhelmingly found that a security retainer held in an IOLTA account of a United States law firm constitutes property within the United States and meets the requirement of section 109(a).  In this case, Okin Adams holds a security retainer in its Texas IOLTA account which is property of Geden in the United States.

3.      Second, while the Retainer was paid by Gard, Eclipse Liquidity, Inc.'s ("Eclipse") insurer, the payment was made through the Malta Proceeding and treated as a loan to Geden.  Once the Foreign Representative decided to pursue the filing of this Chapter 15 Case, Gard agreed to loan funds sufficient to fund Okin Adams's Retainer.

4.      Gard and Eclipse retain all of their rights to seek repayment of the loan in the Malta Proceeding.  Additionally, any unused portion of the Retainer will be remitted to Geden under the control of the Foreign Representative.  Under these circumstances, there is property belonging to Geden located in the United States and the requirements of 11 U.S.C. §109(a) are met.

# II.
## Background

5.      As described in greater detail in both the *Supplemental Declaration of Foreign Representative in Support of Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, (III) Emergency Provisional Relief For Issuance of the*

2

*Automatic Stay, and (IV) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Balzan Declaration") and the *Declaration of Matthew S. Okin* (the "Okin Declaration") attached hereto as **Exhibit A** and **Exhibit B**, respectively, the Foreign Representative and Okin Adams have been working together in analyzing issues and preparing for the filing of this Chapter 15 Case.

6.     Initially, Okin Adams provided materials to the Foreign Representative that explained the chapter 15 process. Once the Foreign Representative decided to pursue this Chapter 15, Eclipse through Gard, its insurer, agreed to fund the Foreign Representative's retention of Okin Adams in the preparation and filing of this Chapter 15 Case, as well as the Foreign Representative's activities and efforts in Malta.

7.     Before the Retainer was paid, Okin Adams sent a letter to Gard that was executed by Gard explaining that (i) Okin Adams represents the Foreign Representative[2], (ii) any invoice for a retainer or bill would be addressed to the Foreign Representative with a copy to Gard, and (iii) there was no plan or intention to preserve a claim to recover the Retainer through the Chapter 15 Case, but that Gard and Eclipse will maintain any and all rights to seek recovery of any amounts paid to Okin Adams through the Malta Proceeding. A copy of the letter is attached to the Okin Declaration as Exhibit A.

8.     Okin Adams was retained on December 23, 2024. Among other things, the engagement letter of Okin Adams (the "Engagement Letter") sets forth that (i) Okin Adams only represents the Foreign Representative, (ii) the Retainer is held as security[3] for payment of incurred fees, (iii) Geden is responsible for the payment of the Retainer and accrued fees, and (iv) any

---

[2] Making it clear that Okin Adams does not represent Gard or Eclipse.

[3] The terms of the Engagement Letter provide that the Retainer is a "security retainer." In other words, the Retainer paid to Okin Adams serves as security for the payment of fees and expenses incurred by Okin Adams. The Retainer is not a prepayment of fees.

unused portions of the Retainer will be returned to Geden. A copy of the Engagement Letter is attached to the Okin Declaration as Exhibit B.

9.    Upon the Foreign Representative's decision to retain Okin Adams, the Foreign Representative directed Okin Adams to analyze and prepare this Chapter 15 Case and directed Eclipse, and Gard to proceed with the payment of the Retainer on the Foreign Representative's behalf.

10.    Gard sent the Retainer to Eclipse's attorneys who then sent the Retainer to Okin Adams's IOLTA Account at Frost National Bank, a United States bank in Texas.  Okin Adams received the Retainer on January 7, 2025.

11.    Upon the completion of its preliminary analysis Okin Adams determined that a larger retainer was required to prepare, file, and prosecute this Chapter 15 Case and requested an additional retainer from the Foreign Representative.

12.    Gard sent additional funds to Eclipse's counsel who then sent it to Okin Adams's IOLTA Account at Frost Bank in Texas. Okin Adams received the additional funds on April 22, 2025.  In total, Okin Adams is holding a Retainer in the amount of $185,000—all in its IOLTA Account at Frost Bank in Texas.  None of the Retainer has been applied to any fees or expenses incurred by Okin Adams.

### III.
### Argument

**A.    The Retainer Held in the IOLTA account of Okin Adams Constitutes
Property in the United States.**

13.    The Retainer held in Okin Adams's IOLTA account as a security retainer to ensure payment of its accrued legal fees constitutes "property in the United States" for purposes of section 109(a).

14.     "Under the plain meaning of § 109(a), any amount of property, whether 'a dollar, a dime or a peppercorn located in the United States,' satisfies the threshold for debtor eligibility." *Jones v. APR Energy Holdings Ltd. (In re Forge Grp. Power Pty Ltd.)*, 2018 U.S. Dist. LEXIS 23660, *36 (N.D. Cal. Feb. 12, 2018) (quoting *In re Global Ocean Carriers Ltd.*, 251 B.R. 31 (Bankr. D. Del. 2000) (*quoting In re McTague*, 198 B.R. 428, 429 (Bankr. W.D.N.Y. 1996) (citing *In re ABC Learning Centres Ltd.*, 728 F.3d 301, 308 (3d Cir. 2013)). "Section 109(a) says, simply, that the debtor must have property; it says nothing about the amount of such property nor does it direct that there be any inquiry into the circumstances surrounding the debtor's acquisition of the property, and is thus consistent with other provisions of the Code that reject lengthy and contentious examination of the grounds for a bankruptcy filing." *In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 373 (Bankr. S.D.N.Y. 2014) (holding that a $10,000 held in the United States in the form of a retainer prior to filing of the Second Chapter 15 Petition is sufficient to satisfy the requirements of section 109(a) of the Bankruptcy Code).

15.     It is well established that "[a] debtor's funds held in a retainer account in the possession of counsel to a foreign representative constitute property of the debtor in the United States and satisfy the eligibility requirements of section 109." *In re B.C.I. Fins. Pty Ltd. (In Liquidation)*, 583 B.R. 288, 293-94 (Bankr. S.D.N.Y. 2018) (quoting *In re Poymanov*, 571 B.R. 24, 2017 WL 3268144, at *4 (Bankr. S.D.N.Y. 2017); *see, e.g., In re U.S. Steel Canada Inc.*, 571 B.R. 600, 610 (Bankr. S.D.N.Y. 2017); *In re Inversora Electrica de Buenos Aires S.A.*, 560 B.R. 650, 655 (Bankr. S.D.N.Y. 2016); *In re Berau Capital Res. Pte Ltd.*, 540 B.R. 80, 82 (Bankr. S.D.N.Y. 2015); *In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 373-74 (Bankr. S.D.N.Y. 2014); *accord In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 411-13 (Bankr. S.D.N.Y. 2014);

*Global Ocean*, 251 B.R. at 39 (Bankr. D. Del. 2000) (finding the unearned portion of the retainer paid to the debtor's U.S. bankruptcy counsel was sufficient property to satisfy Section 109).

16.     *In In re JPA No. 111 Co*., the court held that the debtors' counsel's receipt of the funds for purposes of paying for legal services to be rendered to debtors in the bankruptcy case, and the fact that that debtors were entitled to the return of any unused funds at the end of the representation constituted that the retainer was "property located in the United States." *In re JPA No. 111 Co.*, 2022 Bankr. LEXIS 259, *17 (Bankr. S.D.N.Y. Feb. 1, 2022).

17.     This approach is also consistent with how courts have interpreted section 109 for foreign companies outside of the chapter 15 context. *B.C.I. Fins.*, 583 B.R. at 294-295 ("There is a line of authority that supports the fact that prepetition deposits or retainers can supply 'property' sufficient to make a foreign debtor eligible to file in the United States.") (citing *In re Cenargo Int'l PLC*, 294 B.R. 571, 603 (Bankr. S.D.N.Y. 2003); *In re Yukos Oil Co.*, 321 B.R. 396, 407 (Bankr. S.D. Tex. 2005); *In re Global Ocean Carriers*, 251 B.R. at 39). "Several courts have held that nominal amounts of property located in the United States enable a foreign corporation to qualify as a debtor under Section 109(a) of the Bankruptcy Code." *In re Yukos Oil*, 321 B.R. at 407 (finding funds deposited in a bank located in the United States sufficient to satisfy section 109 of the Bankruptcy Code).

18.     It is important to note that there is a minority line of cases out of the Eleventh Circuit that have interpreted the Bankruptcy Code to not apply section 109 to "debtors" that file for foreign recognition under Chapter 15. *See Talal Qais Abdulmunem Al Zawawi v. Diss (In re Talal Qais Abdulmunem Al Zawawi)*, 97 F.4th 1244, 1255 (11th Cir. 2024) (holding that debtor eligibility under Chapter 11 is not a prerequisite for recognition of a foreign proceeding under Chapter 15); *In re MMX Sudeste Mineração S.A.*, 2017 Bankr. LEXIS 4663, *1-2 (Bankr. S.D.

Fla. Nov. 7, 2017) (stating that section 109 of the Bankruptcy Code does not apply to proceedings brought under Chapter 15 of the Bankruptcy Code).

19.     While the Foreign Representative submits that the Retainer meets the requirement of section 109 of the Bankruptcy Code, under the Eleventh Circuit's rule, satisfying section 109 of the Bankruptcy Code would not be necessary.

20.     Here, as evidenced by (i) the Balzan Declaration, (ii) the Okin Declaration, and (iii) the testimony of the Foreign Representative Transcript of Foreign Recognition Hearing ("Transcript"), pgs, 82-85, June 4, 2025, Okin Adams holds the Retainer in its IOLTA account. Moreover, any portion of the Retainer that remains undrawn will revert back to Geden under the control of the Foreign Representative.   This satisfies the "property in the United States" requirement under section 109(a).

**B.     The Funds Loaned to Geden to Fund the Retainer by Gard Constitute
        Property of Geden**

21.     According to the Okin Declaration, the Balzan Declaration, and the testimony of the Foreign Representative Transcript, at pgs. 82-85, Gard paid the Retainer through Eclipse's counsel to Okin Adams on behalf of Geden and the Foreign Representative.

22.     Pursuant to the case law interpreting section 109 in both chapter 15 and chapter 11 contexts, the fact a third-party paid the Retainer to Okin Adams does not change the analysis of whether there is "property in the United States" for purposes of section 109(a).[4]

23.     In fact, "[i]t is not relevant who paid the retainer, so long as the retainer is meant to cover the fees of the attorneys for all the Debtors." *Global Ocean,* 251 B.R. at 39 ("The retainers

---

[4] Note that the majority of courts addressing this issue are in the Southern District of New York.  The Foreign Representative has not been able to locate cases in the Fifth Circuit regarding this issue.  Given the depth of experience in the Second Circuit in dealing with chapter 15 cases, the Foreign Representative believes the cases cited are instructive, persuasive, and reflect the most recent development of the jurisprudence in this regard.

were paid on behalf of all the Debtors and, therefore, all the Debtors have an interest in those funds. It is not relevant who paid the retainer, so long as the retainer is meant to cover the fees of the attorneys for all the Debtors") (citing *In re Indep. Eng'g Co., Inc.,* 232 B.R. 529 (B.A.P. 1st Cir.)*, aff'd,* 197 F.3d 13 (1st Cir. 1999) (corporate debtor held property interest in unearned portion of the retainer paid to debtor's attorney by debtor's principal, where unearned portion of the retainer would be returned to debtor; retainer was thus property of the estate); *see also Poymanov,* 2017 Bankr. LEXIS 2107 at *15-16 (citing *Octaviar*, 511 B.R. at 373)).

24.     In *In re JPA No. 111 Co*., the court held that "[t]he existence of funds from which a client is entitled to fund U.S. legal services is sufficient to satisfy Section 109, whoever sent the funds to counsel." *JPA¸* 2022 Bankr. LEXIS 259 at *18 (citing *Globe Ocean*, 251 B.R. at 39).

25.     Geden has funds held in Okin Adams's IOTLA Account at Frost Bank in Texas which may be used to fund fees and expenses incurred in this Chapter 15 Case.  Upon conclusion of this case, any unused funds will be returned to the Foreign Representative.  Accordingly, the Retainer held in Okin Adams's IOLTA account meets the "property in the United States" requirement of section 109(a).

## C.     Potential Claims and Causes of Action Held by Geden Constitute "Property in the United States"

26.     As stated in the Petition and in the Balzan Declaration, the Foreign Representative is concerned about who and why some third party has been controlling Geden in the Pennsylvania State Court Actions and potentially other actions without the knowledge of the Maltese Court or any court-appointed liquidator.  It is possible that claims and causes of action may exist regarding this unauthorized exercise of corporate authority over Geden by a third-party.

27.      It is well established that claims and causes of action, though intangible, constitute "property." *Octaviar*, 511 B.R. at 369-370 (citing *Seward v. Devine*, 888 F.2d 957, 963 (2d Cir.

1989) (stating that property of the estate includes "all interests, such as … tangible and intangible property [and] causes of action" (citing H. R. Rep. No. 595, 95th Cong., 2d Sess. 175, *reprinted* in 1978 U.S. Code Cong. & Admin. News 5787, 5963, 6136 (grammatical changes in original))); *Winick & Rich P.C. v. Strada Design Assocs., Inc. (In re Strada Design Assocs., Inc.)*, 326 B.R. 229, 235 (Bankr. S.D.N.Y. 2005) ("Without doubt, causes of action that accrue under state law prior to the filing of a bankruptcy petition become property of the estate. In addition, causes of action that accrue as a result of the filing are property of the estate." (internal quotations and citations omitted)).

28.     In *Octaviar*, the Foreign Representatives met their burden to establish the existence of Octaviar's property in the form of claims or causes of action in the United States and the Foreign Representatives made it abundantly clear in the First Chapter 15 Petition that, in furtherance of their primary goal of marshaling Octaviar's assets and making distributions to creditors, they were requesting recognition 'to investigate potential assets in the United States in the form of claims or causes of action against entities located in the United States and, if necessary, to prosecute these claims in the United States.'" *Octaviar*, 511 B.R. at 370

29.     In *BCI Fins*, the court held that breaches of fiduciary duty claims were property of the debtors in the United States for purposes of section 109(a). *See BCI Fins.*, 583 B.R. at 296 (after applying a choice of law analysis regarding where breaches of fiduciary duty may reside and concluding that such claims resided in New York, the court determined that these breach of fiduciary duty claims satisfied section 109(a)).

30.     Here, Geden has been defending itself in the Pennsylvania State Court Litigation and potentially elsewhere. Potential claims regarding the unauthorized corporate control over Geden are potential claims that may reside in the United States.

## IV.
### Conclusion

31.    Overwhelmingly, courts have held that security retainers held in the United States by the debtor's attorneys constitute "property in the United States" per section 109(a) of the Bankruptcy Code.   The fact that a third-party paid the retainer on behalf of a debtor does not change the analysis, especially where the debtor retains a reversionary right to any amounts not applied to fees and expenses.  In the present case, Okin Adams holds property of the Chapter 15 Debtor in its Texas trust account.  Those funds revert back to the Foreign Representative if they are not used by Okin Adams, and they therefore meet the requirements for property in the United States set forth in section 109(a).

Respectfully submitted,

**OKIN ADAMS BARTLETT CURRY LLP**

By:    /s/ *Edward A. Clarkson, III*
Matthew S. Okin
Texas Bar No. 00784695
mokin@okinadams.com
Edward A. Clarkson
Texas Bar No. 24059118
eclarkson@okinadams.com
Kelley K. Edwards
Texas Bar No. 24129017
kedwards@okinadams.com
1113 Vine St., Suite 240
Houston, Texas 77002
Tel: 713.228.4100
Fax: 346.247.7158

**ATTORNEYS FOR THE FOREIGN
REPRESENTATIVE**

4931-1529-8637, v. 4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 20, 2025, a true and correct copy of the foregoing Reply was served via the Court's CM/ECF system to all parties consenting to service through the same.

By: <u>  /s/ *Edward A. Clarkson, III*          </u>
Edward A. Clarkson, III

4931-1529-8637, v. 4