United States Bankruptcy Court
Southern District of Texas
**ENTERED**
August 28, 2025
Nathan Ochsner, Clerk

## IN THE UNITED STATED BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 25-90138 |
| GEDEN HOLDINGS, LTD., | § | |
| | § | |
| Debtor. | § | |
| | § | |
| | § | CHAPTER 15 |

### MEMORANDUM OPINION DENYING
### PETITION FOR RECOGNITION (ECF NO. 1) AND
### DISMISSING MOTION TO STRIKE AS MOOT (ECF NO. 32)

### BACKGROUND

Geden Holdings, Ltd. ("Geden") was registered in Malta on October 14, 2002 (ECF No. 26-1 at 2). Geden owned many subsidiary companies which operated ships in the international shipping market (ECF No. 26-1 at 2). On June 15, 2017, the First Hall of the Civil Court (the "Maltese Court") found Geden unable to pay its debts and ordered the dissolution and winding up of Geden (the "Maltese Proceeding") (ECF No. 26-1). Under Maltese law, after the windup order was entered, Geden was deemed insolvent as of September 16, 2016, the date the windup application was filed (ECF No. 26-8 at 5). On June 15, 2017, Mr. Paul Darmanin (the "First Liquidator") was appointed as liquidator (ECF No. 26-8 at 6). On September 12, 2018, the First Liquidator filed an application requesting the Maltese Court to revoke his assignment as liquidator (the "Application to Resign") and on September 19, 2018, the Maltese Court granted the Application to Resign (ECF No. 26-3).

On December 4, 2023, Dr. Reuben Balzan ("Dr. Balzan") was appointed by the Maltese Court as liquidator ("Liquidator") and foreign

representative ("Foreign Representative") of Geden (ECF No. 26-2) and authorized by the Maltese Court to file for Chapter 15 relief [hereinafter, the "Chapter 15 Case"] (ECF No. 26-8 at 2). The actions that occurred between the granting of the Application to Resign and Dr. Balzan's appointment are the basis for the Chapter 15 Case and the related objection.

On April 28, 2025, Geden filed the Chapter 15 Petition for Recognition of Foreign Proceeding (the "Petition" or "Petition for Recognition") (ECF No. 1), requesting the Court recognize the Maltese Proceeding pursuant to Section 1517 of the United States Bankruptcy Code (the "Bankruptcy Code"). Advantage Award Shipping, LLC ("Advantage Award") filed an objection in response to the Petition (the "Objection") (ECF No. 23). Geden filed a Reply to Advantage Award's Objection (ECF No. 33) and an Emergency Motion to Strike Advantage Award's Objection (the "Motion to Strike") (ECF No. 32). On June 3, 2025, Eclipse Liquidity, Inc. ("Eclipse") filed a Memorandum in Support of the Petition (the "Eclipse Memo in Support of Petition") (ECF No. 36). Before the Court is a contested Petition for Recognition of the Maltese Proceeding and the related Motion to Strike.

On June 4, 2025, the Court heard argument on the issue of recognition of the Maltese Proceeding (ECF No. 40). The Court took extensive testimony from Dr. Balzan (ECF No. 40). The Court admitted exhibits at ECF Nos. 26-1 through 26-8, 25-26, 25-28, 25-29, 25-31, 25-33, and 25-35 (ECF No. 40). The Court took judicial notice of ECF Nos. 25-1 through 25-25, 25-27, 25-30, 25-32, and 25-34. The Motion to Strike was continued to June 25, 2025 (ECF No. 40). Advantage Award's response deadline to the Motion to Strike was set for June 13, 2025, and Geden was given until June 20, 2025, to file a reply. The Court requested Geden provide a declaration with all the facts regarding property loaned to the estate as stated on the record. On June 13, 2025, Advantage Award filed an Objection to the Motion to Strike (ECF No. 45). On June 20, 2025, Geden filed a Reply to the Advantage Award Objection to the Motion to Strike (ECF No. 48) and a Brief on the

property loaned to the estate (ECF No. 47), as requested by the Court at the June 4, 2025, hearing.

On June 25, 2025, the Court heard argument from both parties. The Court took the Motion to Strike and the Petition for Recognition under advisement (ECF No. 51).

## JURISDICTION

28 U.S.C. § 1334 provides the District Courts with jurisdiction over this proceeding. 28 U.S.C. § 157(b)(1) states "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." This Court has jurisdiction over this proceeding as it is a core proceeding the Court can consider under 28 U.S.C. § 157(b)(2)(P). This proceeding has been referred to the Bankruptcy Court under General Order 2012-6. The Court has constitutional authority to enter final orders and judgments. *Stern v. Marshall*, 564 U.S. 462, 486–87 (2011). Venue is proper in this District pursuant to 28 U.S.C. § 1408.

## LEGAL STANDARD

Pursuant to § 1509(a) of the Bankruptcy Code, "[a] foreign representative may commence a case under section 1504 by filing directly with the court a petition for recognition of a foreign proceeding under section 1515." A petition for recognition that is properly filed by a foreign representative and meets the requirements of § 1515 is evaluated for recognition under § 1517. Section 1517 of the Bankruptcy Code provides, in relevant part:

(a) Subject to section 1506, after notice and a hearing, an order recognizing a foreign proceeding shall be entered if—
    (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;

(2) the foreign representative applying for recognition is a person or body; and

(3) the petition meets the requirements of section 1515.

(b) Such foreign proceeding shall be recognized—

(1) as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests ["COMI"]; or

(2) as a foreign nonmain proceeding if the debtor has an establishment within the meaning of section 1502 in the foreign country where the proceeding is pending.

11 U.S.C. § 1517(a)–(b). Section 1517 is subject to the public policy exception of § 1506, which states, "[n]othing in this chapter prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506. Section 1506 is a narrow exception intended to be invoked only under "exceptional circumstances concerning matters of fundamental importance for the United States." *Lavie v. Ran (In re Ran)*, 607 F.3d 1017, 1021 (5th Cir. 2010) [hereinafter "*Ran-Circuit*"].

Subject to any constraints § 1506 might impose, use of the word "shall" in § 1517(a) makes recognition mandatory in instances where the requirements of § 1517 have been satisfied. *In re Creative Fin. Ltd.*, 543 B.R. 498, 514 (Bankr. S.D.N.Y. 2016) [hereinafter "*Creative Finance*"]; *see In re Millard,* 501 B.R. 644, 653 (Bankr. S.D.N.Y. 2013) ("[b]ecause section 1517(a) is preceded by the word *shall,* it takes away judicial discretion from me in the first instance."). The burden of proof on the requirements of recognition under § 1517 is on the foreign representative. *Ran-Circuit*, 607 F.3d at 1021.

## I. FOREIGN MAIN PROCEEDING.

A "foreign main proceeding" means a foreign proceeding pending in the country where the debtor has the center of its main interests, otherwise referred to as COMI. 11 U.S.C. §§ 1517(b)(1), 1502(4). Chapter 15 does not define COMI. However, a debtor's COMI "lies where the debtor conducts its regular business, so that the place is

ascertainable by third parties." *In re Fairfield Sentry Ltd.*, 714 F.3d 127, 130 (2d Cir. 2013) [hereinafter "*Fairfield Sentry*"].

Because § 1517 is written in the present tense,[1] COMI is determined at the time the Chapter 15 petition is filed. *Fairfield Sentry*, 714 F.3d at 130; *See United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes"). According to the Fifth Circuit Court of Appeals,

> Congress's choice to use the present tense requires courts to view the COMI determination in the present, i.e. at the time the petition for recognition was filed. If Congress had, in fact, intended bankruptcy courts to view the COMI determination through a lookback period or on a specific past date, it could have easily said so. This is particularly significant because Congress is clearly capable of creating lookback periods in the Bankruptcy Code.

*Ran-Circuit*, 607 F.3d at 1025. Therefore, consideration of a debtor's entire operational history and/or COMI determination based on the date of the initiation of the foreign proceeding is not the proper inquiry for the Court. *Fairfield Sentry*, 714 F.3d at 134. However, "to offset a debtor's ability to manipulate its COMI, a court may also look at the time period between the initiation of the foreign liquidation proceeding and the filing of the Chapter 15 petition." *Id.* at 133.

For speed and convenience reasons in situations where COMI is obvious and undisputed, § 1516(c) presumes COMI is the place of the debtor's registered office.[2]  However, this presumption is rebuttable. *Fairfield Sentry*, 714 F.3d at 137. According to the UNCITRAL Guide to Enactment of the Model Law on Cross–Border Insolvency:

---

[1] 11 U.S.C. § 1517(b)(1) (Such foreign proceeding shall be recognized . . . as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests . . ..).

[2] 11 U.S.C. § 1516(c) (In the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests.).

> Article 16 establishes presumptions that allow the court to expedite the evidentiary process; at the same time they do not prevent, in accordance with the applicable procedural law, calling for or assessing other evidence if the conclusion suggested by the presumption is called into question by the court or an interested party.[3]

The court always has the power to make its own determination on recognition under § 1517, notwithstanding § 1516. *In re Basis Yield Alpha Fund (Master)*, 381 B.R. 37, 52 (Bankr. S.D.N.Y. 2008). The legislative history of § 1516 indicates the statutory presumption of § 1516(c) may be of less weight in the event of a serious dispute. *Id.* at 53; *see In re SPhinX, Ltd.,* 351 B.R. 103, 112 (Bankr. S.D.N.Y. 2006) [hereinafter "*SPhinX–Bankruptcy*"], *aff'd* 371 B.R. 10 (S.D.N.Y. 2007). As a result, § 1516 "does not tie the hands of a court to examine the facts more closely in any instances where the court regards the issues to be sufficiently material to warrant further inquiry." *In re Basis Yield Alpha Fund (Master)*, 381 B.R. at 52. "Even in the absence of an objection, courts must undertake their own jurisdictional analysis and grant or deny recognition under Chapter 15 as the facts of each case warrant." *Ran-Circuit*, 607 F.3d at 1021; *see In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 335 (S.D.N.Y. 2008) [hereinafter "*Bear Stearns-District*"]. Furthermore, at no time does the rebuttable presumption relieve the petitioner (here, Geden) of its burden of proof/risk of non-persuasion. *Bear Stearns-District,* 389 B.R. at 334.

Factors for the Court to examine when determining whether to rebut the presumption that COMI is debtor's place of registration or incorporation include:

> the location of the debtor's headquarters; the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); the location of the debtor's

---

[3] U.N. Comm'n on Int'l Trade Law, *Guide to Enactment and Interpretation of the UNCITRAL Model Law on Cross-Border Insolvency*, U.N. Doc. A/CN.9/Guide/2013, at 122 (2013).

> primary assets; the location of the majority of the debtor's
> creditors or of a majority of the creditors who would be affected
> by the case; and/or the jurisdiction whose law would apply to most
> disputes.

*SPhinX–Bankruptcy,* 351 B.R. at 117. The flexibility inherent in Chapter 15 strongly suggests courts should not apply these factors mechanically and instead view the facts of the case in accordance with Chapter 15's emphasis on protecting the reasonable interests of parties in interest pursuant to fair procedures and the maximization of the debtor's value. *Id.* Additionally, the Second Circuit Court of Appeals has held any relevant activities, including liquidation activities and administrative functions, may be considered in the court's COMI analysis. *Fairfield Sentry,* 714 F.3d at 133–34.

## II.   FOREIGN NONMAIN PROCEEDING.

A foreign proceeding should be recognized as a "foreign nonmain proceeding if the debtor has an establishment within the meaning of section 1502 in the foreign country where the proceeding is pending." 11 U.S.C. §§ 1517(b)(2), 1502(5). Establishment is defined as "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. § 1502(2). Compared to the determination of COMI, Chapter 15 provides no evidentiary presumption in the determination of whether a debtor has an establishment in a particular jurisdiction for finding a foreign nonmain proceeding.

A "place of operations" is "a place from which economic activities are exercised on the market (i.e. externally) …." *Lavie v. Ran,* 406 B.R. 277, 284 (S.D. Tex. 2009) [hereinafter "*Ran–District*"] (internal quotations marks omitted). Establishment has been described as a "local place of business," and to have an establishment in a country, the debtor must conduct business in that country. *In re Brit. Am. Ins. Co. Ltd.*, 425 B.R. 884, 914–15 (Bankr. S.D. Fla. 2010) (quoting *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 131 (Bankr. S.D.N.Y. 2007) [hereinafter "*Bear Stearns-Bankruptcy*"], *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008)). "Therefore, the

terms 'operations' and 'economic activity' require showing of a local effect on the marketplace, more than mere incorporation and record-keeping and more than just the maintenance of property." *Brit. Am. Ins. Co.*, 425 B.R. at 915. The court's establishment analysis should focus on whether the debtor has an establishment in the foreign country when the foreign representative files for recognition under Chapter 15. *Ran–District*, 406 B.R. 277 at 285 ("Because courts undertake the establishment analysis when the foreign representative files for recognition, it follows that the court should weigh only the evidence as it exists at the time of filing in the U.S. court.").

## DISCUSSION

At issue is whether the Maltese Proceeding is subject to recognition under § 1517 of the Bankruptcy Code. The Petition for Recognition is contested by the Advantage Award Objection (ECF No. 23). In response to the Objection, Geden filed the Motion to Strike (ECF No. 32). The Motion to Strike raises the issue of whether Advantage Award has standing (as a party in interest or creditor) to object to the Petition for Recognition. Furthermore, Geden alleges the Objection impermissibly attempts to preserve Advantage Award's right to personal jurisdiction while objecting to the substantive relief of the Petition.

The Court first addresses the Petition for Recognition. With respect to the arguments raised in the Motion to Strike, the Court notes recognition under § 1517 is not a "rubber stamp exercise," and the Court must make an independent determination as to whether the Maltese Proceeding meets the definitional requirements of the Bankruptcy Code. *Basis Yield Alpha Fund (Master)*, 381 B.R. at 40; *see Bear Stearns-Bankruptcy*, 374 B.R. at 126. "Even in the absence of an objection, courts must undertake their own jurisdictional analysis and grant or deny recognition under Chapter 15 as the facts of each case warrant." *Ran-Circuit*, 607 F.3d at 1021. In doing so, the Court may "consider any and all relevant facts (including facts not yet presented) . . .." *Basis Yield Alpha Fund (Master)*, 381 B.R. at 40. Therefore, regardless of the

Motion to Strike, the Court must determine whether the Maltese Proceeding meets the requirements of § 1517 of the Bankruptcy Code.

It is undisputed the Maltese Proceeding is a foreign proceeding under § 101(23).[4] Dr. Balzan as the foreign representative applying for recognition is a person or body under § 1517(a)(2), and the petition meets the requirements of § 1515, as required by § 1517(a)(3). The relevant inquiry for the Court is whether the Maltese Proceeding is a foreign main or foreign nonmain proceeding.

## I.   FOREIGN MAIN PROCEEDING.

### A. Application of the § 1516(c) Presumption.

Geden argues the presumption established under § 1516(c)[5] applies to the Petition for Recognition, as Advantage Award has provided no affirmative evidence to rebut the presumption and prove Geden's COMI is anywhere but Malta (Hr'g Tr., 8:3-4 (June 25, 2025)). It is undisputed Geden was registered in Malta in 2002 (ECF No. 26-1 at 2). According to the testimony of Dr. Balzan, when asked on cross examination if Geden was operated out of Turkey, Dr. Balzan replied "I couldn't answer that. I – I have no knowledge of that" (Hr'g Tr., 35:6-7 (June 4, 2025)). Geden argues this is the only testimony addressing Turkey, and it does not rebut the § 1516(c) presumption.

As stated in the Legal Standard, the § 1516(c) presumption is rebuttable, and while it can be used in "easy cases," reliance on the presumption is inappropriate in cases where there is a substantial dispute. *Creative Finance*, 543 B.R. at 517; *see also SPhinX– Bankruptcy,* 351 B.R. at 112 (The legislative history of § 1516 indicates the statutory presumption of § 1516(c) may be of less weight in the event of a serious dispute.). Advantage Award argues because the Chapter 15

---

[4] Hr'g Tr., 11:16-17 (June 25, 2025) – Advantage Award argument (Certainly, we don't oppose that the Malta proceeding is a real proceeding.).

[5] 11 U.S.C. § 1516(c) (In the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests.).

Case is not an "easy case,"[6] and a substantial dispute exists regarding Geden's COMI,[7] the § 1516(c) presumption does not apply. Additionally, Advantage Award argues the Court must follow *Ran-Circuit* and undertake its own jurisdictional analysis, granting or denying recognition as the facts of the Chapter 15 Case warrant. *See Ran-Circuit*, 607 F.3d at 1021. In determining whether the § 1516(c) presumption applies, the Court reviews the evidence submitted by both parties. [8]

Comparison of this Chapter 15 Case with another Chapter 15 petition for recognition of foreign proceeding in the Southern District of Texas helps the Court understand whether this Chapter 15 Case is an "easy case." *See In re Telefónica del Perú S.A.A.*, No. 25-90022 (ARP) (Bankr. S.D. Tex. February 25, 2025) [hereinafter "*Telefónica del Perú*"]. For example, where debtor's registered offices are in Lima, Peru, and debtor has extensive connections with Peru,[9] debtor argued the § 1516(c)

---

[6] Hr'g Tr., 13:15-20 (June 25, 2025) – Advantage Award argument (I think by the fact that this is now our second hearing and there has already been a small mountain of papers filed in this case. I don't think anybody here would characterize this exactly -- I don't think anybody would characterize this as the easy case that the Court in *Creative Finance* was referring to.).

[7] Hr'g Tr., 13:24-14:5 (June 25, 2025) – Advantage Award argument (Again, I don't think that anybody could really characterize our disputing about COMI and the fact that I'm going to spend a decent chunk of time this afternoon talking about it is anything other than raising a substantial dispute. And the Court certainly can wrestle with the issue of whether or not there is sufficient evidence to have rebutted that presumption.).

[8] For example, see evidence of a dispute at ECF No. 26-5 at 31-33 (The Irrevocable Performance Guarantee, entered between Geden and Eclipse is on Geden letterhead that includes an address in Malta, but Geden mailing address listed in the document is in Istanbul, Turkey.).

[9] Chapter 15 debtor is incorporated in Peru and, at all times since its incorporation, has maintained its registered offices and employees in Peru; chapter 15 debtor is operationally and functionally centered in Lima, Peru, organized under a centralized and interconnected senior management and, is subject to combined cash management and accounting functions in Peru; chapter 15 debtor's statutory books, records, and corporate documents are kept in Peru, have been public, and are therefore ascertainable by creditors and third parties; strategic and key operating decisions and key policy decisions for the Chapter 15 debtor are made by management located in Lima, Peru; the Chapter 15 debtor's corporate accounting, accounts payable, insurance procurement, accounts receivable, financial planning, internal auditing, marketing,

presumption should apply. *Petitioner's Declaration and Verified Petition for Recognition*, ECF No. 2-1 at 26-28 (Bankr. S.D. Tex., February 25, 2025) (filed in *Telefónica del Perú*, No. 25-90022). Based on the facts of *Telefónica del Perú*, the Court found debtor's COMI in Peru and the Peruvian proceeding to be a "foreign main proceeding" subject to recognition under §§ 1502(4) and 1517(b)(1). *Telefónica del Perú,* No. 25-90022, ECF No. 87 at 4 (Bankr. S.D. Tex., June 25, 2025) (order available on CM/ECF).

Here, Geden's complicated operational history, as discussed in more detail below, strengthens the need for the Court to make its determination based on specific facts. The Court cannot rely on the § 1516(c) presumption and must examine the facts of the Chapter 15 Case to determine whether to grant or deny the Petition for Recognition.

### B. Factual Analysis of the Chapter 15 Case.

The Court analyzes the facts of the Chapter 15 Case to determine Geden's COMI as of April 28, 2025 (the "Petition Date") (ECF No. 1). *See Fairfield Sentry*, 714 F.3d at 130.

Geden argues Geden was registered as a corporation under Maltese law, the Maltese Court has been administering the Maltese Proceeding since 2017, and Dr. Balzan, the Foreign Representative, Liquidator, and sole person in control of Geden resides and works in Malta (ECF No. 33 at 6; Hr'g Tr., 9:4-17 (June 25, 2025)). Geden argues over the last nine years, Geden has had no other operations in any other jurisdiction and even before Dr. Balzan arranged funding and sought

---

treasury, real estate, research and development, and tax services are provided in Lima, Peru; the Chapter 15 debtor's finance, legal, human resources, payroll, billing, freight management, procurement and engineering services are carried out in Lima, Peru; key information technology and systems used by the Chapter 15 debtor are provided from Lima, Peru; the Chapter 15 debtor's cash management functions are maintained and directed from Lima, Peru; management and senior staff of the Chapter 15 debtor regularly attend meetings in Lima, Peru; the Chapter 15 debtor's assets are located in Peru; and capital expenditure decisions affecting the Chapter 15 debtor are managed in Lima, Peru (Case No. 25-90022, ECF No. 2-1 at 26-28).

authority from the Maltese Court to bring the Chapter 15 Case, Malta was already Geden's only remaining locus of business activity (ECF No. 33 at 6-7). Additionally, Geden argues because the Maltese Proceeding was commenced in Malta, and it is possible Maltese law will apply to many of the actions Dr. Balzan will take, the law of Malta will apply to most disputes (Hr'g Tr., 9:21-24 (June 25, 2025)).

The Court must also address the Eclipse Memo in Support of Petition. As stated in *SPhinX–Bankruptcy*,

> Because their money is ultimately at stake, one generally should defer, therefore, to the creditors' acquiescence in or support of a proposed COMI. It is reasonable to assume that the debtor and its creditors (and shareholders, if they have an economic stake in the proceeding) can, absent an improper purpose, best determine how to maximize the efficiency of a liquidation or reorganization and, ultimately, the value of the debtor[.]

*SPhinX–Bankruptcy,* 351 B.R. at 117. Here, however, Eclipse (a creditor) is funding the fees of Dr. Balzan's counsel,[10] and as discussed in more detail below, Eclipse is also a participant in litigation involving Geden in Pennsylvania state court. Therefore, the Court declines to defer to Eclipse's support of COMI in Malta. Instead, the Court independently examines the facts provided by Eclipse to determine whether to grant or deny the Petition for Recognition.

According to the Eclipse Memo in Support of Petition, Geden owned fifty subsidiaries that owned vessels, and each subsidiary was a Maltese company that filed annual consolidated financial statements in Malta (ECF No. 36 at 2). The vessels were financed by various banks, secured by Maltese ship mortgages, registered in Malta, and flew the Maltese flag (ECF No. 36 at 2). Geden paid tonnage taxes in Malta on Maltese-registered vessels, but Geden did not pay any taxes in Turkey on the income earned by the vessels it owned (ECF No. 36 at 2).

---

[10] Hr'g Tr., 43:2-4 (June 4, 2025) – Advantage Award cross examination of Dr. Balzan (Q. just to be clear, Eclipse is funding the fees of your counsel as of today, correct? A. Yes.).

Furthermore, while Geden Line, located in Turkey, served as a manager for Geden vessels, all transactions designated Geden Line as agents only (ECF No. 36 at 2). Geden Line represents it acts as a manager for several vessel owners in several countries (ECF No. 36 at 2). Additionally, Eclipse states Geden's Malta address was 85 St. John's Street, Valletta, Malta, and Geden bank statements from Citibank N.A. London were transmitted to that same address (ECF No. 36 at 3). According to Eclipse, "correspondence dated September 5, 2022 and December 7, 2023 purportedly sent by Geden on its letterhead to its bankers in London and in Turkey, listed its address as Geden Holdings, Ltd., 85 St. John's Street, Valletta, Malta" (ECF No. 36 at 3). Eclipse provides no evidence of this correspondence. Lastly, Eclipse states Geden filed its audited annual financial reports with the Maltese corporate authorities. However, the only audited annual financial report provided by Eclipse is from 2014 (ECF No. 36-2).

As discussed, the Court must determine COMI as of the Petition Date. *Ran-Circuit*, 607 F.3d at 1025. Consideration of Geden's entire operational history and/or COMI determination based on the date of the initiation of the Maltese Proceeding is not the proper inquiry for the Court. *Fairfield Sentry*, 714 F.3d at 134. Therefore, the only evidence presented by Geden or Eclipse with respect to the relevant time period is Dr. Balzan's presence in Malta and work as Foreign Representative and Liquidator in Malta.

According to the Declaration of Dr. Balzan, based on his knowledge, the First Liquidator did not receive any documents or other information from Geden (ECF No. 26-8 at 6). In the Application to Resign, the First Liquidator stated he contacted ex-representatives of Geden and held a meeting with them and their foreign lawyers in Malta (ECF No. 26-3). The ex-representatives and shareholders of Geden were unwilling to participate in the process or cover the expenses, making it impossible for the First Liquidator to determine if there were any conflicts or accept the appointment (ECF No. 26-3). As a result, the Maltese Court granted the Application to Resign. The First Liquidator's

appointment lasted from June 15, 2017, to September 19, 2018 (ECF No. 26-3; ECF No. 26-8 at 6). Dr. Balzan testified he assumes no liquidation activities took place between the time the Maltese Court granted the Application to Resign, and December 2023, when Dr. Balzan was appointed Foreign Representative and Liquidator.[11]

Advantage Award argues because there is no dispute Geden was not operational for many years prior to the Petition Date, the only material activities that could create COMI in Malta are the actions of Dr. Balzan (Hr'g Tr., 18:5-19 (June 25, 2025)). Advantage Award relies on the interpretation of *Fairfield Sentry* as set out in *Creative Finance*:

> The effect of [the *Fairfield Sentry*] holding is that in instances in which a foreign representative has engaged in significant pre-U.S. filing work to operate (or even liquidate) the foreign debtor in the jurisdiction where the foreign insolvency proceeding was commenced (even if in a letterbox jurisdiction), the COMI can be found to have shifted from the foreign debtor's original principal place of business to the new locale… *Fairfield Sentry* now provides a means for U.S. recognition of letterbox jurisdiction insolvency proceedings—so long as the estate fiduciaries in those jurisdictions do enough work.

*Creative Finance*, 543 B.R. at 518. Advantage Award argues that before liquidation, Geden's business activities were based out of Turkey and Malta was a letterbox jurisdiction, so the Court must determine whether Dr. Balzan did enough work to shift Geden's principal place of business to Malta (ECF No. 23 at 13). At the June 4, 2025, hearing, Advantage Award stated, "I don't think you're going to hear the parties dispute the fact that at one point the COMI would have -- for Geden would have been in Turkey" (Hr'g Tr., 20:18-21 (June 4, 2025)). Counsel for Geden responded they have "not conceded the COMI would have been in

---

[11] Hr'g Tr., 41:16-22 (June 4, 2025) – Advantage Award cross examination of Dr. Balzan (Q. And it's also fair to say that to your knowledge, between September 19th, 2018 and when you were appointed as liquidator in December 2023, there were no liquidation activities occurring in Malta either, correct? A. Correct. I know that there was no liquidator appointed, so presumably I have to make -- I have to assume that no liquidation activities were taking place.).

Turkey or Istanbul specifically prior to the liquidation being filed" (Hr'g Tr., 22:23-25 (June 4, 2025)), and the complaint attached to the Declaration of Dr. Balzan was only offered to show Dr. Balzan looked at the document, not for the truth of the matter (Hr'g Tr., 37:13-19 (June 25, 2025)).  Because the Court determines COMI as of the Petition Date, whether Geden's COMI was previously in Turkey is irrelevant.  *See Ran-Circuit*, 607 F.3d at 1025 ("If Congress had, in fact, intended bankruptcy courts to view the COMI determination through a lookback period or on a specific past date, it could have easily said so.").  For the Chapter 15 Case to qualify as a foreign main proceeding, the relevant inquiry is whether Dr. Balzan engaged in significant pre-Petition work to operate or liquidate Geden in Malta.  *See Creative Finance*, 543 B.R. at 518; *Fairfield Sentry,* 714 F.3d at 133–34 (The Second Circuit Court of Appeals has held "any relevant activities, including liquidation activities and administrative functions, may be considered in the court's COMI analysis.").  To ensure no manipulation of Geden's COMI has occurred, the Court may also look at the period between the initiation of the foreign liquidation proceeding and the Petition Date.

According to the Declaration of Dr. Balzan, upon his appointment as Liquidator and Foreign Representative in December 2023, he learned Geden had been actively defending itself in Pennsylvania state court for many years (the "Pennsylvania State Court Litigation") (ECF No. 26-8 at 7).  Subsequently, Dr. Balzan appealed the Pennsylvania State Court Litigation.[12]  Mr. Gaitas, who was also representing Eclipse in the Pennsylvania State Court Litigation against Geden, represented Dr. Balzan in the appeal.[13]  On March 25, 2024, in response to Dr. Balzan's appeal of the Pennsylvania State Court Litigation, the Superior Court

---

[12] ECF No. 26-8 at 13; Hr'g Tr., 72:10-14 (June 4, 2025) – Advantage Award cross examination of Dr. Balzan (Q. So after you were appointed as Geden's liquidator in Malta, you then sought to appeal the Pennsylvania trial court's dismissal of all counts against Geden on behalf of Geden, correct? A. Correct.).

[13] Hr'g Tr., 72:15-20 (June 4, 2025) – Advantage Award cross examination of Dr. Balzan (Q. And you represented [sic] Mr. Gaitas to represent you in that action, correct? A. Correct. Q. And at the same time, Mr. Gaitas was representing Eclipse who was suing Geden in that action, correct? A. Correct.).

of Pennsylvania issued a show cause order (the "Show Cause Order"), directing Dr. Balzan to show cause why he has standing to appeal the order entered in Geden's favor (ECF No. 25-27).  On April 8, 2024, Dr. Balzan filed a response to the Show Cause Order (ECF No. 25-28).  The Superior Court of Pennsylvania found Dr. Balzan lacked standing to appeal the order entered in Geden's favor and on April 26, 2024, Dr. Balzan's appeal was dismissed (ECF No. 25-30).  On June 4, 2024, Dr. Balzan filed a Petition for Allowance of Appeal to the Supreme Court of Pennsylvania (ECF No. 25-31).  On June 21, 2024, Dr. Balzan filed a Petition to the Supreme Court of Pennsylvania for Extraordinary Jurisdiction (ECF No. 25-33).  On December 3, 2024, the Supreme Court of Pennsylvania denied Dr. Balzan's Petition for Extraordinary Jurisdiction (ECF No. 25-34).  On January 21, 2025, the Supreme Court of Pennsylvania denied Dr. Balzan's Petition for Allowance of Appeal (ECF No. 25-32).  As a result, Advantage Award argues the only action Dr. Balzan took during the relevant period was his unsuccessful attempt to intervene in the Pennsylvania State Court Litigation (Hr'g Tr., 26:8-11 (June 25, 2025)).

Geden filed the Petition for Recognition on April 28, 2025 (ECF No. 1).  Dr. Balzan testified he reviewed the pleadings and documents submitted in the Pennsylvania State Court Litigation during the Chapter 15 Case, but he could not recall if he reviewed the pleadings and documents prior to the Chapter 15 Case.[14]  Dr. Balzan testified he asked Eclipse, who is funding the fees of Dr. Balzan's counsel,[15] for information, but did not recall if he asked Eclipse to provide him with

---

[14] Hr'g Tr., 67:17-23 (June 4, 2025) – Advantage Award cross examination of Dr. Balzan (Q. Did you ever review any pleadings, any documents that were submitted by any of the defendants in the Pennsylvania actions? A. You mean going all the way back to 2020 or prior to that? Q. Going back to 2020. A. I mean, I have reviewed them now during these Chapter 15 proceedings. I don't recall if I had already reviewed them prior to the Chapter 15 proceedings....).

[15] Hr'g Tr., 43:2-4 (June 4, 2025) – Advantage Award cross examination of Dr. Balzan (Q. just to be clear, Eclipse is funding the fees of your counsel as of today, correct? A. Yes.).

copies of documents Eclipse may have obtained from Geden in any prior litigation.[16]

According to the testimony of Dr. Balzan, general responsibilities as liquidator in a Maltese proceeding include identifying creditors and assets, paying creditors, paying taxes, and holding creditor meetings (Hr'g Tr., 32:5-24 (June 4, 2025)).  However, Dr. Balzan testified in his role as Liquidator of the Maltese Proceeding, he has not paid any taxes, brought any legal actions outside of the Chapter 15 Case, convened any creditors meetings, or reached out to any former officers of directors of Geden (Hr'g Tr., 33:2-34:1 (June 4, 2025)).   Furthermore, since his appointment as Liquidator and Foreign Representative sixteen months ago, Dr. Balzan has not sought discovery of any parties in a country other than the United States.[17]

In support of Advantage Award's argument that Dr. Balzan has not engaged in material activities sufficient to establish COMI in Malta, Advantage Award compares the actions of Dr. Balzan with the actions of the liquidator and foreign representative in *Creative Finance* (Hr'g Tr., 18:20-25 (June 25, 2025)).  In *Creative Finance*, the liquidator did not collect any assets, liquidate any assets, shut down any businesses,

---

[16] Hr'g Tr., 66:25-67:16 (June 4, 2025) – Advantage Award cross examination of Dr. Balzan (Q. Is it true that you have never asked Eclipse to provide you with discovery - - documents that they obtained in discovery in any prior litigation regarding Geden, Advantage, or anybody related to that? A. No, it's probably not entirely true. When I was contacted -- when I was in contacts with their lawyers, I -- I was asking for information. So I'm -- I know I did ask for information to be able to form my own opinion on whether -- of what was happening and the action I should be taking -- taking as liquidator, so I did ask them for information. Q. But did you ask them to provide you with copies of any documents they may have obtained, for example, from Geden Holdings, Limited, in any litigation that they had instituted prior? A. I don't recall (indiscernible) for that specific information, but I do recall that I (indiscernible) for information.).

[17] Hr'g Tr., 77:8-21 (June 4, 2025) – Advantage Award cross examination of Dr. Balzan (Q. In those 16 months between when you were appointed and today, you have not sought discovery of any parties in a country other than the United States, correct? A. Correct.).

or pay any taxes. According to the testimony of Dr. Balzan, he has also not completed any of these actions (Hr'g Tr., 19:3-18 (June 25, 2025)).

In response, Geden argues the Chapter 15 Case is distinguishable from *Creative Finance*[18] because Geden is not trying to manipulate COMI, and the court in *Creative Finance* used evidence of the inaction of the liquidator to respond to the idea COMI was being manipulated by *Creative Finance* insiders (Hr'g Tr., 39:24-40:1 (June 25, 2025)). However, the court in *Creative Finance* explicitly states "bad faith…was not germane to this Court's recognition analysis…. [R]ecognition turned solely on the requirements of section 1517, and the Liquidator's failure to show a COMI (or establishment) in the BVI, by reason of his minimal effort in managing the Debtors' affairs." *Creative Finance*, 543 B.R. at 522. Therefore, this Court finds it appropriate to analyze the actions of Dr. Balzan in light of the actions the court in *Creative Finance* determined were not material activities sufficient to find COMI in the jurisdiction where the activities took place.

The court in *Creative Finance* held if compliance with the statutory duties of the liquidator required material effort, COMI could have been established. *Creative Finance*, 543 B.R. at 511. However, even the most basic business activities, "such as getting bank records, ledgers, journals and backup documents for cash receipts and expenditures," were not undertaken. *Id*. As a result, the activities of the liquidator fell short of anything that could be characterized as material effort. *Id*. Here, Dr. Balzan testified he has not satisfied what he considers to be the general responsibilities of a liquidator in a Maltese proceeding (Hr'g Tr., 32:5-24; 33:2-34:1 (June 4, 2025)).[19] Therefore, the actions of Dr. Balzan are insufficient to establish Geden's COMI in

---

[18] This Chapter 15 Case is distinguishable from *Creative Finance* in that the Court does not attribute any bad faith to Dr. Balzan. To the contrary, Dr. Balzan has acted with the utmost good faith and professionalism, as demonstrated by his candid testimony.

[19] Dr. Balzan's testimony may be explained by the fact his appointment came after many years of inactivity in the Maltese Proceeding. Nevertheless, while inactivity and the passage of time may be an explanation, it is not an excuse.

Malta as of the Petition Date. Additionally, there is no evidence COMI has been manipulated by Geden. *See Fairfield Sentry*, 714 F.3d at 133 ("To offset a debtor's ability to manipulate its COMI, a court may also look at the time period between the initiation of the foreign liquidation proceeding and the filing of the Chapter 15 petition."). Based on the facts of the Chapter 15 Case, the Maltese Proceeding is not recognized as a foreign main proceeding subject to recognition under the Bankruptcy Code.

## II.   FOREIGN NONMAIN PROCEEDING.

In contrast to COMI, the existence of an "establishment" is a factual question, with no presumption in its favor. *Ran-Circuit*, 607 F.3d at 1026 (quoting *Bear Stearns-District*, 389 B.R. at 338). For Geden to have an "establishment" in Malta, Geden must have (1) had a place of operations in Malta and (2) been carrying out a nontransitory economic activity in Malta as of the Petition Date. *See Ran-Circuit*, 607 F.3d at 1027.

According to Geden, control of Geden rests with the Maltese Court and Dr. Balzan, all economic activity of Geden should be under the Maltese Court and Dr. Balzan, and major decisions in the Maltese Proceeding must be approved by the Maltese Court (ECF No.33 at 7). As a result, Geden argues the material and substantive activities of Dr. Balzan in Malta demonstrate Geden has a local and non-transitory place of business, and therefore, an establishment, in Malta (ECF No. 33 at 7-8). However, based on the same evidence that led the Court to conclude the Maltese Proceeding is not a foreign main proceeding, the Maltese Proceeding is also not a foreign nonmain proceeding under §§ 1502 and 1517 of the Bankruptcy Code. There is no evidence Geden had a place of operations in Malta as of the Petition Date. There is no evidence Geden was conducting business in Malta as of the Petition Date. *Brit. Am. Ins. Co.*, 425 B.R. at 914–15. Finally, there is no evidence the actions of Dr. Balzan had an effect on the Malta marketplace as of the Petition Date, or rose beyond mere incorporation, record-keeping, or

maintenance of property.[20]  *Id.* at 915 ("[T]he terms 'operations' and 'economic activity' require showing of a local effect on the marketplace, more than mere incorporation and record-keeping and more than just the maintenance of property.").  Based on the facts of the Chapter 15 Case, the Maltese Proceeding is not recognized as a foreign nonmain proceeding subject to recognition under the Bankruptcy Code.

### III.    THE MOTION TO STRIKE.

Because the Petition for Recognition is denied and the Maltese Proceeding is not recognized under Chapter 15 of the Bankruptcy Code, the Motion to Strike is moot.  Therefore, the Court does not need to address the issues of standing or personal jurisdiction raised by Geden in the Motion to Strike.

### CONCLUSION

For the reasons stated, the Maltese Proceeding is not recognized as a foreign main or foreign nonmain proceeding under the Bankruptcy Code. Therefore, the Petition for Recognition is DENIED.

Because the Petition for Recognition is denied, the associated Motion to Strike is DISMISSED AS MOOT

A SEPARATE ORDER WILL ISSUE.

SIGNED 08/28/2025

Alfredo R Pérez
United States Bankruptcy Judge

---

[20] Hr'g Tr., 27:22-28:4 (June 25, 2025) – Advantage Award argument (Geden did not keep records or an office in Malta or maintain property in Malta.).